**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                   :
In re:                                             :          Chapter 11
                                                   :
SYNERGY PHARMACEUTICALS INC., et al.,              :          Case No. 18-14010 (JLG)
                                                   :
           Debtors.[1]                             :          (Jointly Administered)
                                                   :
---------------------------------------------------------------- x

### FIRST INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion **[Docket No. 15]** (the "**Motion**")[2] of Debtors Synergy Pharmaceuticals Inc. ("**Synergy Pharmaceuticals**" or "**Borrower**") and Synergy Advanced Pharmaceuticals, Inc. ("**Synergy Advanced**" or "**Guarantor**") and together with Synergy Pharmaceuticals, the "**Debtors**") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), seeking, among other things:

(1)    authorization for the Borrower to obtain, and for the Guarantor to guarantee, unconditionally, on a joint and several basis, and on and subject to the terms and conditions set forth in the DIP Loan Documents, postpetition financing consisting of a senior secured, super-priority multiple delayed draw term loan credit facility

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Synergy Pharmaceuticals, Inc. (____) and Synergy Advanced Pharmaceuticals, Inc. (_____).

[2]    Capitalized terms used but not defined in this First Interim Order shall have the same meanings ascribed to such terms in the DIP Term Sheet or, if not defined therein, in the Motion.

(the "**DIP Facility**") on the terms and conditions set forth in the to-be-filed *DIP Term Loan Agreement* (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, (the "**DIP Credit Agreement**", and together with the DIP Term Sheet and any other related agreements, documents, security agreements, or pledge agreements, the "**DIP Loan Documents**"), which shall contain only those conditions to borrowing, representations, warranties, covenants and events of default expressly set forth in that certain Binding Term Sheet annexed hereto as **Exhibit A** (together with all exhibits attached thereto, the "**DIP Term Sheet**"), made by and among the Borrower, the Guarantor, CRG Servicing LLC, as administrative agent and collateral agent (in such capacities, together with its successors and assigns, the "**DIP Loan Agent**") and each of the lenders party thereto (the "**DIP Lenders**" and, together with the DIP Loan Agent, the "**DIP Secured Parties**"), and be otherwise consistent with the Documentation Principles in an aggregate principal amount of approximately **$155,000,000** (the "**DIP Loans**"), comprised of (i) approximately **$110,000,000** of loans (the "**Roll-Up DIP Loans**") representing a partial "roll-up" of the Prepetition Secured Obligations, equal to the sum of (a) outstanding principal, plus (b) accrued and unpaid interest, including accrued and unpaid postpetition interest at the Default Rate specified in the Prepetition Loan Agreement from the Petition Date through and including the date of the entry of the Second Interim Order and (c) any and all unreimbursed costs, fees and expenses of the DIP Secured Parties (in their capacities under the Prepetition Loan Documents); (ii) **$45,000,000** of "new money" loans (the "**New Money DIP Loans**"), which will be advanced by the DIP Lenders to the Borrower, subject to the terms and conditions of the DIP Loan Documents, to be used by the Borrower in accordance with the second interim order (the "**Second Interim Order**") and the Budget, as follows: (A) upon entry of the Second Interim Order, the DIP Lenders shall advance **$11,500,000** (the "**Initial DIP Advance**"), and (B) upon entry of the Final Order, the DIP Lenders shall advance the remaining **$33,500,000** (the "**Final DIP Advance**");

(2)      upon entry of this interim order (the "**First Interim Order**"), authorization for the Debtors to use the DIP Secured Parties' (each in their respective capacities under the Prepetition Loan Documents) Cash Collateral and all other Prepetition Collateral in which the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) have an interest during the period from entry of this First Interim Order to the entry of the Second Interim Order (the entry of which shall be no later than December 21, 2018) (the "**Initial Interim Cash Collateral Period**");

(3)      as adequate protection for the use during the Initial Interim Cash Collateral Period of the Cash Collateral securing the Prepetition Secured Obligations, granting to the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) superpriority administrative expense claim status and replacement liens on all assets of the Debtors (other than (x) Avoidance Actions

and any proceeds thereof and (y) the Debtors' interests in directors and officers insurance policies and any proceeds thereof (the items described in the foregoing clauses (x) and (y), together, the "**Initial Interim Period Excluded Collateral**");

(4)     authorization for Debtors, immediately upon entry of the Second Interim Order, to execute, deliver, and enter into the DIP Loan Documents, which shall be consistent with the terms of the DIP Term Sheet, and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(5)     authorization for the Debtors, immediately upon entry of the Second Interim Order, to implement a partial "roll-up" of the Prepetition Secured Obligations, including accrued and unpaid postpetition interest at the Default Rate specified in the Prepetition Loan Agreement from the Petition Date through and including the date of the entry of the Second Interim Order, subject to the terms and conditions of the DIP Loan Documents, in accordance with the Second Interim Order and the Final Order and to deem the rolled-up Prepetition Secured Obligations so "rolled up" to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents;

(6)     authorization for the Debtors, immediately upon entry of the Second Interim Order, to use proceeds of the Initial DIP Advance as permitted in the DIP Loan Documents and consistent with the Second Interim Order and the Budget (subject to Permitted Variances as provided in the DIP Term Sheet);

(7)     immediately upon entry of the Second Interim Order, subject to the Carve Out, with respect to all claims of the DIP Loan Agent and DIP Lenders under the DIP Facility with respect to the DIP Loans and the DIP Obligations, grant to the DIP Loan Agent and the DIP Lenders:

    a.   pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority claim status in the Cases, which claims shall be payable from and have recourse to all DIP Collateral;

    b.   pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first priority lien on all DIP Collateral, other than the Initial Interim Period Excluded Collateral and other than property of the Debtors that is subject to valid and perfected liens in existence at the time of the commencement of the Cases or to valid liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code (the "**Prior Senior Liens**");

    c.   pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior lien on all property of the Debtors that is subject to a Prior Senior Lien; and

    d.   pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all of the property of the Debtors (including, without limitation, inventory, receivables, equipment, machinery, intellectual property, general intangibles, real property, capital stock of subsidiaries, membership interests in limited liability companies) that is subject to the existing liens that secure the obligations of the Debtors to the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) under or in connection with the Prepetition Loan Documents and the Prepetition Secured Obligations;

(8)    approval of certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(9)    with respect to the indebtedness represented by the Prepayment Premium and the Back-End Facility Fee, acknowledgment by the Debtors that such indebtedness constitutes a valid and enforceable prepetition secured claim on behalf the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents);

(10)    immediately upon entry of the Second Interim Order, authorization for the Debtors to continue to use, subsequent to the Initial Interim Cash Collateral Period, the Cash Collateral securing the Prepetition Secured Obligations and all other Prepetition Collateral in which the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) have an interest consistent with the Second Interim Order and the Budget;

(11)    as adequate protection for the use, subsequent to the Initial Interim Cash Collateral Period, of the Cash Collateral and other Prepetition Collateral securing the Prepetition Secured Obligations and the priming of the Prepetition Liens by virtue of the making of the New Money DIP Loan, immediately upon entry of the Second Interim Order, granting to the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) with respect to the Remaining Prepetition Secured Claim, to the extent of any diminution in the value of the Prepetition Collateral:

    a.   superpriority administrative expense claim status;

    b.   replacement liens on all DIP Collateral, junior only to (x) the liens of the DIP Loan Agent and the DIP Lenders and (y) Prior Senior Liens;

4

       c.  commencing on the date upon which the Second Interim Order is entered by the Court, payment on a monthly basis of postpetition interest accruing on such date at the Default Rate as specified and defined in the Prepetition Loan Agreement;

       d.  and reimbursement of all fees, costs and expenses incurred in connection with defending the validity and enforceability of the Prepetition Secured Obligations, the Prepetition Liens or the Remaining Prepetition Secured Claim;

(12)    subject to and effective upon entry of the Final Order, granting to the DIP Secured Parties a security interest in and continuing lien on all of the Debtors' rights, title and interest in, to and under the Avoidance Actions (other than Avoidance Actions acquired by the purchaser under an Acceptable 363 Sale), and all proceeds thereof;

(13)    subject to and effective upon entry of the Final Order, the waiver of the Debtors' right to assert a 506(c) claim on account of amounts covered by the Carve Out;

(14)    subject only to and effective upon entry of a Final Order, the waiver of the Debtors' right to assert claims to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code.

(15)    modification of the automatic stay to the extent hereinafter set forth;

(16)    the setting of (a) no later than December 21, 2018, a second interim hearing on the Motion (the "**Second Interim Hearing**") to consider entry of the Second Interim Order authorizing, among other things, approval of (i) the DIP Loan Documents, (ii) the Initial DIP Advance, and (iii) the Roll-Up, provided that (x) on or before December 18, 2018, the DIP Loan Documents have been executed and delivered by the parties thereto, and (y) on or before December 21, 2018, the Debtors have filed an Acceptable Plan (as defined in the DIP Term Sheet) and disclosure statement, and (b) a final hearing on the Motion ("**Final Hearing**") to consider entry of a final order (the "**Final Order**") authorizing, among other things, the borrowing under the DIP Loan Documents on a final basis no later than January 15, 2019, as set forth in the Motion and the DIP Credit Agreement filed with the Court; and

(17)    granting the Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on December _____, 2018, (the "**Interim Hearing**"), and upon the record made by the Debtors at the Interim Hearing,

including the Motion, the First Day Declaration, and the filings and pleadings in the above-
captioned chapter 11 proceedings (the "**Cases**"), the Court having found that the relief requested
in the Motion is fair and reasonable and is in the best interests of Debtors, their estates
(collectively, the "**Estates**", their stakeholders and other parties in interest, and represents a
sound exercise of the Debtors' business judgment and is essential for the continued operation of
the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the
Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates
pending the Second Interim Hearing and the Final Hearing; and appropriate notice of the Motion,
the relief requested therein, and the Interim Hearing (the "**Notice**") having been served by the
Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Bankruptcy Rules on
(i) counsel to the DIP Loan Agent, (ii) the U.S. Trustee, (iii) the holders of the twenty (20)
largest unsecured claims against the Debtors' estates, (iv); the Internal Revenue Service, (v) the
Securities and Exchange Commission, (vi) the Stalking Horse Bidder and (vii) certain other
parties identified in the certificate of service filed with the Court, including, without limitation,
all creditors who have filed or recorded prepetition liens or security interests against any of the
Debtors' assets, and the opportunity for a hearing on the Motion was appropriate and no other
notice need be provided; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    <u>Petition Date</u>.  On December 12, 2018 (the "**Petition Date**"), each Debtor filed a
voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate
their businesses and manage their properties as debtors-in-possession pursuant to
sections 1107(a) and 1108 of the Bankruptcy Code.

B.    <u>Disposition</u>.  The Motion is granted on an interim basis in accordance with the terms of this First Interim Order.  Any objections to the Motion with respect to the entry of this First Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled.

C.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003 and 9014 and Local Bankruptcy Rule 4001.

D.    <u>Committee Formation</u>. As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "**Committee**") or any other statutory committee has been appointed in the Case.

E.    <u>Notice</u>.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this First Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and 4001(c).

F.    <u>Debtors' Acknowledgments and Agreements</u>.  In requesting the DIP Facility, and in exchange for, and as a material inducement to, the DIP Lenders to enter into the DIP Term Sheet and provide the DIP Facility and to allow use of their Cash Collateral, after consultation with their attorneys and financial advisors, subject to the rights of the Committee or other

parties-in-interest as and to the extent set forth in Section 3.1 of this First Interim Order, the

Debtors permanently and irrevocably admit, stipulate, acknowledge and agree that:

       (i)    <u>Prepetition Loan Documents</u>.  Prior to the commencement of the Cases,

the DIP Secured Parties (each in their respective capacities under the Prepetition Loan

Documents) made loans, advances and provided other financial accommodations to the Borrower

pursuant to the terms and conditions set forth in: (1) that certain *Term Loan Agreement*, dated as

of September 1, 2017, by and among the Borrower, the Guarantor, the DIP Loan Agent and the

DIP Lenders (each in their respective capacities under the Prepetition Loan Documents) (as the

same has heretofore been amended, supplemented, modified, extended, renewed, restated and/or

replaced at any time prior to the Petition Date, the "**Prepetition Loan Agreement**"); and (2) all

other agreements, documents and instruments executed and/or delivered with, to, or in favor of

the DIP Secured Parties (each in their respective capacities under the Prepetition Loan

Documents), including, without limitation, all security agreements, notes, guarantees, mortgages,

Uniform Commercial Code financing statements and all other related agreements, documents

and instruments executed and/or delivered in connection therewith or related thereto (all of the

foregoing, together with the Prepetition Loan Agreement, as all of the same have heretofore been

amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior

to the Petition Date, collectively, the "**Prepetition Loan Documents**").  Copies of the operative

Prepetition Loan Documents are on file with counsel to the Debtors and available upon

reasonable request.

       (ii)    <u>Prepetition Obligations</u>.  As of the Petition Date, the Debtors were

indebted to the DIP Secured Parties (each in their respective capacities under the Prepetition

Loan Documents) under the Prepetition Loan Documents in the aggregate principal amount of

approximately $147,100,000.00, which amount is the sum of: (a) principal in the amount of $107,551,191.90, (b) accrued and unpaid interest in the amount of $2,322,806.99, (c) accrued and unpaid default interest in the amount of $250,952.78, (d) a prepayment premium in the amount of $34,954,137.37 (the "**Prepayment Premium**")[3], (e) a back-end facility fee in the amount of $2,151,023.84, (the "**Bank-End Facility Fee**"[4], together with the Prepayment Premium, the "**Remaining Prepetition Secured Claim**"), and (f) unreimbursed costs, fees and expenses in accordance with the Prepetition Loan Documents (the forgoing clauses (a) through (f) are collectively referred to herein as the "**Prepetition Secured Obligations**").    The Prepetition Secured Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Secured Obligations.

(iii)    Prepetition Collateral.  As of the Petition Date, the Prepetition Secured Obligations were fully secured pursuant to the Prepetition Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by the Debtors to the DIP Secured Parties (each in their respective capacities under the Prepetition Loan

---

[3] The Prepayment Premium is calculated in accordance with Section 3.03(a)(j)(B) of the Prepetition Loan Agreement.

[4] The Bank-End Facility Fee is set forth in the Fee Letter dated September 21, 2017.

Documents) under the Prepetition Loan Documents (the **"Prepetition Liens"**), upon all or substantially all of the Debtors' assets and property, other than the Excluded Assets (as defined in the Prepetition Loan Documents) (the "**Prepetition Collateral"**), subject only to liens specifically permitted under the Prepetition Loan Agreement, if any, to the extent that such security interests, liens or encumbrances are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior to and have not been or are not subject to being subordinated to DIP Secured Parties' (each in their respective capacities under the Prepetition Loan Documents) liens on and security interests in the Prepetition Collateral under the Prepetition Loan Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "**Permitted Encumbrances**").

(iv)     <u>Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Obligations</u>. The Debtors further acknowledge and agree that, as of the Petition Date, (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, and properly perfected and were granted to, or for the benefit of, the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents); (b) the Prepetition Liens were senior in priority over any and all other liens on Prepetition Collateral, other than any Permitted Encumbrances; (c) the Prepetition Secured Obligations constitute legal, valid and binding obligations of the Debtors enforceable in accordance with the terms of the Prepetition Loan Documents; (d) the Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the DIP Secured Parties' (each in their respective capacities under the Prepetition Loan Documents) liens, claims or security interests in the

10

Prepetition Collateral; and (e) the Debtors waive, discharge, and release any right to challenge the extent and priority of the Prepetition Liens.

(v)     Value of Prepetition Liens and Prepetition Claims. The aggregate value of the Prepetition Collateral as of the Petition Date exceeds the aggregate amount of the Prepetition Secured Obligations and the claims of the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) arising under, or secured by, the Prepetition Loan Documents constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(vi)    No Control.  None of the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Loan Documents.

(vii)   No Claims or Causes of Action. No claims or causes of action exist against, or with respect to, the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date.

(viii)  Cash Collateral.  All of the Debtors' cash, and all cash equivalents, including any cash in deposit accounts (whether subject to control agreements or otherwise), whether as Prepetition Collateral or which represent income, proceeds, products, rents, or profits of other Prepetition Collateral, constitutes "cash collateral" of the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

11

G.    <u>Findings Regarding the Use of Cash Collateral</u>.

(i)    <u>Use of Cash Collateral</u>.  The DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) consent to the Debtors' use of their Cash Collateral, in accordance with the Budget, during the Initial Interim Cash Collateral Period, unless such is extended beyond the Initial Interim Cash Collateral Period by entry of the Second Interim Order or otherwise extended by the DIP Loan Agent, in its sole and absolute discretion; provided, however, that the Debtors shall operate their cash management system consistent with the interim or final order (as applicable) entered by the Bankruptcy Court granting the Debtors' "first-day" motion to continue the use of its cash management system (such interim or final order, as applicable, the "**Cash Management Order**").

(ii)    <u>Budget</u>.  The Debtors have prepared and delivered to the DIP Secured Parties a rolling 13-week budget (the "**Budget**") for the period commencing on the Petition Date through and including March 31, 2019, a copy of which is attached hereto as **Exhibit B**.  The Budget sets forth all forecasted (i) cash receipts of the Debtors (the "**Cash Receipts**"), (ii) cash operating disbursements of the Debtors (the "**Cash Operating Disbursements**") and (iii) non-operating, bankruptcy-related cash disbursements of the Debtors (the "**Cash Bankruptcy Disbursements**") of the Debtors, which Budget shall be approved by the DIP Loan Agent in its sole and absolute discretion and may be modified by the DIP Loan Parties with the written consent of the DIP Loan Agent in its sole and absolute discretion without further order of the Court, provided that (A) the total amount of funding provided pursuant to the Budget shall not exceed the total amount of the DIP Facility authorized by each of this First Interim Order, the Second Interim Order and the Final Order, as applicable and (B) the reasonable and documented professional fees and expenses incurred by the DIP Secured Parties shall not be subject to a cap.

12

Compliance with the Budget will be measured every week starting with the third week following the Petition Date for the period beginning as of the week of the Petition Date and ending the week prior to the week on which compliance is measured. For purposes of illustration, on the third week following the Petition Date, the Debtors' compliance with the Budget for the first two weeks following the Petition Date shall be measured. Each date on which compliance with the Budget is measured is referred to herein as a "**Testing Date**". The Debtors believe that the Budget is reasonable under the facts and circumstances. The DIP Secured Parties are relying upon the Debtors' agreement to comply with the Budget and this First Interim Order in determining to allow the use of their Cash Collateral during the Initial Interim Cash Collateral Period.

       (iii)    <u>Variance</u>. As of any applicable Testing Date, (a) the cumulative Cash Receipts may vary from the Budget by no more than (1) 20.00% for the first four-week period (and each week thereof) beginning as of the week of the Petition Date, (2) 15% for the first five-week period beginning as of the week of the Petition Date and (3) 10% for the first six-week period and all subsequent weeks of the period beginning as of the week of the Petition Date (the "**Cash Receipt Variance**"), (b) the cumulative Cash Operating Disbursements may vary from the Budget by no more than the following: (1) 20.00% for the first four-week period (and each week thereof), beginning as of the week of the Petition Date, (2) 15.00% for the first five-week period beginning as of the week of the Petition Date, and (3) 10.00% for the first six-week period and all subsequent weeks of the period beginning as of the week of the Petition Date (the "**Cash Operating Variance**"), and (c) the cumulative Cash Bankruptcy Disbursements for the thirteen (13)-week period beginning as of the week of the Petition Date shall not exceed the amount of set forth in the Budget with respect thereto (the "**Cash Bankruptcy Disbursement Cap**"),

subject to a variance of no more than 10% (the "**Cash Bankruptcy Disbursement Variance**" and together with the "**Cash Receipt Variance**" and the Cash Receipt, the "**Permitted Variances**"). The Debtors shall be deemed to be in compliance with the Budget for all purposes under the DIP Term Sheet, the DIP Loan Documents, and this First Interim Order unless, as of any applicable date of determination, the Debtors' (x) cumulative Cash Receipts, (y) cumulative Cash Operating Disbursements, or (z) cumulative Bankruptcy Disbursements, as applicable, vary from the Budget by more than the applicable Permitted Variance as measured on any applicable Testing Date (it being understood and agreed that no Testing Date with respect to Cumulative Bankruptcy Disbursements shall occur prior to the end of the 13-week period beginning the week of the Petition Date); provided, however, that with respect to cumulative Cash Receipts, the DIP Loan Parties shall not be deemed to have failed to comply with the Budget unless the Debtors' cumulative Cash Receipts fall beneath the amounts set forth in the Budget as measured on any two consecutive Testing Dates during the first four week period beginning as of the Petition Date. After the first three weeks following the Petition Date, the Debtors shall provide the DIP Loan Agent with weekly and cumulative variance reporting on a line item basis for Cash Receipts, Cash Operating Disbursements and Cash Bankruptcy Disbursements, which reporting shall detail the variance, if any, of actual cash disbursements and actual cash receipts from the Budget and provide an explanation of any per line item variance greater than 5.00% (the "**Variance Report**"). All references to the Budget in this First Interim Order, the Second Interim Order or Final Order shall be construed to be qualified by the phrase "subject to Permitted Variances."

(iv)     Adequate Protection. The DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) are entitled pursuant to sections 361, 362, 363

14

and 364 of the Bankruptcy Code, to receive adequate protection against any diminution in value of their respective interests in the Prepetition Collateral (including the Cash Collateral), to the extent set forth in this First Interim Order.

(v)   Conditions.   The DIP Secured Parties' (each in their relevant capacities under the Prepetition Loan Documents) willingness to consent to the use of their Cash Collateral during the Initial Interim Cash Collateral Period, is conditioned upon, among other things, entry of this First Interim Order.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

Section 1.   Authorization and Conditions to Use of Cash Collateral.

1.1   Motion Granted.   The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this First Interim Order.   The DIP Term Sheet with respect to the use of Cash Collateral and all terms and conditions thereof as related to the use of Cash Collateral are hereby approved. Except as otherwise expressly provided in this First Interim Order, any objection to the entry of this First Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2   Authorization to Use Cash Collateral.   Subject to the terms and conditions of this First Interim Order and the DIP Term Sheet as applicable to the use of Cash Collateral, the Debtors shall be and are hereby authorized to use the Cash Collateral, in accordance with the Budget during the Initial Interim Cash Collateral Period, and any period beyond the Initial Interim Cash Collateral Period (a) established by the Second Interim Order or (b) approved by the DIP Loan Agent, in its sole and absolute discretion; provided, however, that the Debtors shall

15

operate their cash management system in a manner consistent with the Cash Management Order.

Nothing in this First Interim Order shall authorize the disposition of any assets of the Debtors or

their Estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or

other proceeds resulting therefrom, except as permitted in this First Interim Order, in accordance

with the Budget.  Any failure by the Debtors on or after the Petition Date to comply with the

segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any Cash

Collateral shall not be used as a basis to challenge any of the Prepetition Secured Obligations, or

the extent, validity, enforceability or perfected status of any of the Prepetition Liens.

   1.3 <u>Replacement Liens</u>.  As adequate protection for the diminution in value of

their interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtors'

use of  such Cash Collateral during the Initial Interim Cash Collateral Period and the imposition

of the automatic stay, the DIP Secured Parties (each in their capacities under the Prepetition

Loan Documents), are  hereby granted pursuant to sections 361 and 363 of the Bankruptcy Code,

valid, binding, enforceable and perfected replacement liens (the "**Prepetition Replacement**

**Lien**") upon and security interests in all the DIP Collateral, including, without limitation, all

assets and property of each Debtor and its Estate, real or personal, tangible or intangible, now

owned or hereafter acquired, whether arising before or after the Petition Date, including, without

limitation, all contracts, contract rights, licenses, general intangibles, instruments, equipment,

accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, chattel

paper, letters of credit and letter of credit rights, investment property, commercial tort claims,

money, insurance, receivables, receivables records, deposit accounts, collateral support,

supporting obligations and instruments, all interests in leaseholds and real properties, all patents,

copyrights, trademarks, trade names and other intellectual property, all equity interests, all books

16

and records relating to the foregoing, all other personal and real property of the Debtor, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of New York and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof) (the "**Prepetition Replacement Collateral**"), provided, however, that the Initial Interim Period Excluded Collateral shall not constitute Prepetition Replacement Collateral under this First Interim Order.  The Prepetition Replacement Lien shall be senior to all other security interests in, liens on, or claims against the DIP Collateral, other than (x) Prior Senior Liens or (y) as modified by the Second Interim Order and/or the Final Order.

1.4    [Reserved]

1.5    Accrual of Post-Petition Interest.    During the Initial Interim Cash Collateral Period, the DIP Secured Parties (each in their capacities under the Prepetition Loan Documents) shall accrue interest on their Prepetition Secured Obligations in a manner and in an amount resulting from applying the Default Rate specified under the Prepetition Loan Agreement to the aggregate outstanding amount of Prepetition Secured Obligations as of the Petition Date in respect of such relevant periods ending after the Petition Date (and not, for the avoidance of doubt, at any different rate set forth in the Prepetition Loan Agreement) calculated on a monthly basis.

1.6    Reimbursement of Fees and Expenses.    The Debtors shall reimburse all reasonable and documented fees, costs and expenses of the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) in accordance with the terms of the Prepetition Loan Documents in connection with defending the validity, enforceability and

17

priority of the Prepetition Secured Obligations, the Prepetition Liens or the Remaining Prepetition Secured Claim.

        1.7    <u>Event of Default</u>. Subject to the Waiting Period and the Waiting Period Procedures (as defined in the DIP Term Sheet), and the Debtors' rights with respect thereto, upon the occurrence and during the continuance of an DIP Event of Default (as defined below) under the DIP Term Sheet during the Initial Interim Cash Collateral Period, the DIP Loan Agent and the DIP Lenders, in addition to any and all other rights and remedies they may have in the DIP Term Sheet or under applicable bankruptcy and/or non-bankruptcy law, may terminate the DIP Term Sheet and shall be under no obligation whatsoever to make any further financial accommodations to the Debtors or in these Cases. As used in this First Interim Order, the term "**DIP Event of Default**" means the occurrence and continuance of any of the events enumerated under the heading "Events of Default" in the DIP Term Sheet (for the avoidance of doubt, after giving effect to the preamble thereto).

Section 2.    <u>Other Rights.</u>

        2.1    <u>No Modification or Stay of This First Interim Order</u>. Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, (b) the failure to obtain a Second Interim Order or a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Cases (each, a "**Subject Event**"), (x) the acts taken by each of the DIP Loan Agent and the DIP Lenders in accordance with this First Interim Order shall be governed in all respects by the original provisions of this First Interim Order, and the acts taken by DIP Loan Agent and DIP Lenders in accordance with this First Interim Order, and the liens granted to DIP Loan Agent and DIP Lenders (each in their respective capacities under the Prepetition Loan Documents) in the DIP Collateral, and all other

rights, remedies, privileges, and benefits in favor of the DIP Loan Agent and each DIP Lender pursuant to this First Interim Order shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.

2.2    Power to Waive Rights; Duties to Third Parties.   The DIP Loan Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this First Interim Order in respect of the DIP Loan Agent and DIP Lenders (the "**DIP Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).   Any waiver by DIP Loan Agent of any DIP Lender Rights shall not be or constitute a continuing waiver.   Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Loan Lender Right, subject the DIP Loan Agent or any DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Loan Agent or any DIP Lender.

2.3    No Unauthorized Disposition of Collateral.   The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the Prepetition Replacement  Collateral (including Cash Collateral), other than in the ordinary course of business pursuant to the DIP Term Sheet.

2.4    No Waiver.  The failure of the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under this First Interim Order shall not constitute a waiver of any of the DIP Lenders' rights hereunder or otherwise. Notwithstanding anything herein, the entry of this First Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Secured Parties' (in their

respective capacities under the Prepetition Loan Documents) rights or remedies under the Bankruptcy Code or under non-bankruptcy law.

       2.5    <u>Inventory</u>.  The Debtors shall not, without the consent of the DIP Loan Agent, (a) enter into any agreement to return any inventory to any of their creditors for application against any prepetition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

       2.6    <u>Reservation of Rights</u>.  The terms, conditions and provisions of this First Interim Order are in addition to and without prejudice to the rights of each of the DIP Secured Parties (in their respective capacities under the Prepetition Loan Documents) to pursue any and all rights and remedies under the Bankruptcy Code or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral other than as provided in this First Interim Order or granting of any interest in the Prepetition Replacement Collateral, as applicable, or priority in favor of any other party, to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates or to object to any sale of assets (it being understood and agreed that the DIP Loan Agent has reviewed and approved the BH APA (as defined in the DIP Term Sheet), the agreements, schedules and exhibits thereto, and the bid procedures related to it presented to the DIP Loan Agent prior to the Petition Date, and shall not object to any of the foregoing, so long as the foregoing shall not have been modified or amended in a manner adverse to the rights and

interests of the DIP Loan Agent or DIP Secured Parties (in their respective capacities under the Prepetition Loan Documents or otherwise) without the prior written consent of the DIP Loan Agent in its sole and absolute discretion.

Section 3.    Objections to Prepetition Secured Obligations.

3.1.    Notwithstanding anything to the contrary in this First Interim Order, any action, claim, defense complaint, motion or other written opposition (hereinafter, an "**Objection**") that seeks to, or seeks standing to, object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Prepetition Secured Obligations, or (b) the extent, legality, validity, perfection or enforceability of Prepetition Liens and security interests in the Prepetition Collateral shall be properly filed with the Court by any Committee or other party in interest with the requisite standing within sixty (60) calendar days from the entry date of the Final Order.  If any such Objection is timely and properly filed and successfully pursued, nothing in this First Interim Order shall prevent the Court from granting appropriate relief with respect to the Prepetition Secured Obligations or the DIP Secured Parties' (each in their capacities under the Prepetition Loan Documents) Prepetition Liens on the Prepetition Collateral.  If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (i) the Prepetition Secured Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Liens on and security interest in the Prepetition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Encumbrances, and (ii) the DIP Loan Agent and the DIP Lenders and each of their respective

21

participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Loan Documents and shall not be subject to any further objection or challenge by any party at any time.   Nothing contained in this Section 3.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to the DIP Loan Agent or any DIP Lenders (each in their capacities under the Prepetition Loan Documents) in connection with the use of Cash Collateral during the Initial Interim Cash Collateral Period, or any other post-petition financial and credit accommodations provided by the DIP Loan Agent and the DIP Lenders to Debtors in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this First Interim Order or the DIP Term Sheet or, including, without limitation, the right to call an "Event of Default" under the DIP Term Sheet in connection with the use of Cash Collateral as provided under this First Interim Order.

Section 4.    Carve Out.

4.1    The Prepetition Replacement Liens on the DIP Collateral and the Prepetition Adequate Protection Superpriority Claim shall be subject to the Carve Out. For purposes hereof, the "**Carve Out**" means: (a) all unpaid fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of the United States Code, (b) all reasonable fees and expenses up to $50,000 incurred by a trustee under Section 729(b) o the Bankruptcy Code (the "**Chapter 7 Trustee Fee Cap**"); and (c) in the event of the occurrence and during the continuance of a DIP Event of Default, the payment of documented unpaid professional fees and disbursements incurred by the Debtors and any statutory committees appointed in the Cases, in each case to the extent allowed by the Court, in

an aggregate amount not to exceed all accrued and unpaid professional fees and disbursements owing as of the date of the DIP Event of Default (whether allowed as of such date or subsequent thereto), plus $2,500,000; provided that (x) no portion of the Carve Out shall be utilized for the payment of professional fees and disbursements incurred in connection with any challenge to (i) the amount, extent, priority, validity, perfection or enforcement of the indebtedness of, or other claims against, the Debtors owing to the DIP Secured Parties (either in their capacities under the Prepetition Loan Documents or the DIP Loan Documents) or (ii) the collateral securing such indebtedness or the perfection, priority or validity of the liens granted in favor of the DIP Secured Parties (either in their capacities under the Prepetition Loan Documents or the DIP Loan Documents) with respect thereto, and (b) the Carve Out shall not reduce the amounts payable to the DIP Secured Parties (either in their capacities under the Prepetition Loan Documents or the DIP Loan Documents) under the DIP Loan Documents or under the Prepetition Loan Documents.

Section 5        Collateral Rights.

5.1    Until all Prepetition Secured Obligations shall have been indefeasibly paid and satisfied in full in cash:

(a)    no other party shall foreclose or otherwise seek to enforce any junior lien or claim in the Prepetition Replacement Collateral;

(b)    upon the occurrence and continuance of a DIP Event of Default, and subject to the expiration of the Waiting Period, in connection with a liquidation of any of the Prepetition Replacement Collateral, the DIP Loan Agent, on behalf of the DIP Secured Parties (each in their capacities as under the Prepetition Loan Documents), or any of its employees, agents, consultants, contractors or other professionals, shall have the right, at the sole cost and expense

23

of the Debtors, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by the Debtors, and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses. The DIP Secured Parties will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the DIP Loan Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the DIP Loan Agent actually occupies or uses such assets or properties or for any fees, rentals or other amounts that may become due following the end of the DIP Loan Agent's occupation or use).

Section 6        Binding Effect.

6.1        The provisions of this First Interim Order, the Prepetition Adequate Protection Superpriority Claim, and any and all rights, remedies, privileges and benefits in favor of each of the DIP Loan Agent and the DIP Lenders (in their respective capacities under the Prepetition Loan Documents or otherwise) provided or acknowledged in this First Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this First Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

6.2        This First Interim Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other

fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor. This First Interim Order shall also inure to the benefit of the DIP Secured Parties (in their respective capacities under the Prepetition Loan Documents or otherwise), Debtors and their respective successors and assigns.

6.3    Objections Overruled.    All objections to the entry of this First Interim Order are, to the extent not withdrawn, hereby overruled.

6.4    General Authorization.    The Debtors are authorized to take any and all actions necessary to effectuate the relief granted in this First Interim Order.

6.5    Retention of Exclusive Jurisdiction.    This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or this First Interim Order.

Dated: New York, New York
　　　December 13, 2018

　　　　　　　　　　　　/s/ *James L. Garrity, Jr.*
　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE