**COLE SCHOTZ P.C.**
Ryan T. Jareck
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Fax

*Counsel for the Ad Hoc Committee*
*Of Equity Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SYNERGY PHARMACEUTICALS, INC, *et al.*,[1] | Case No. 18-14010 (JLG) |
| Debtors. | (Jointly Administered) |

**PRELIMINARY OBJECTION OF THE AD HOC COMMITTEE OF EQUITY HOLDERS TO DEBTORS' DIP FINANCING MOTION AND JOINDER TO OBJECTION FILED BY AFFILIATES OF HIGHBRIDGE CAPITAL**

The Ad Hoc Committee of Equity Holders (the "Ad Hoc Committee"), by its undersigned counsel, respectfully submits this preliminary objection (the "Objection")[2] to the *Debtors' Motion: (A) For Interim And Final Orders (I) Authorizing The Debtors To Obtain Post-Petition Secured Financing Pursuant To 11 U.S.C. § 364, (II) Authorizing The Debtors' Use Of Cash Collateral Pursuant To 11 U.S.C. § 363, And (III) Granting Adequate Protection To Prepetition Secured Creditors Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; (B) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001; And (C) Granting Related Relief* [Docket No. 15] (the "DIP Financing Motion"; and, the financing facility referenced therein, the "DIP Facility")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Synergy Pharmaceuticals Inc. (5269); Synergy Advanced Pharmaceuticals, Inc. (4596). The address of the Debtors' corporate headquarters is 420 Lexington Avenue, Suite 2012, New York, New York 10170.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the DIP Financing Motion.

and joinder to the objection filed by affiliates of Highbridge Capital Management, LLC [Docket No. 48]. In support of its Objection, the Ad Hoc Committee states as follows:

## **PRELIMINARY OBJECTION**

1.  The Ad Hoc Committee, formed just yesterday, represents the interests of approximately 310 shareholders owning approximately 18 million shares of Synergy Pharmaceuticals Inc., one of the debtors (the "Debtors").[3] The Ad Hoc Committee was formed because there is good reason to believe that the value of the Debtors' assets and business should be more than enough to pay all creditors in full and provide a meaningful distribution to equity holders if these Chapter 11 proceedings are conducted in a proper way.[4] Regrettably, the Debtors and its prepetition lenders apparently do not share the interest of other parties in maximizing the value of the Debtors' estates. The first, all-important step in protecting the unsecured creditors and equity holders from dramatic diminution of the value of the Debtors' estates is to deny the DIP Financing Motion, and to limit any relief granted to continued authority to use cash collateral pending further investigation and evidentiary hearings.

2.  In short order, the Ad Hoc Committee intends to request the Office of the United States Trustee to form an official committee of equity holders, to ensure that the interests of equity holders are protected as these proceedings unfold. The record in these cases indicate that unless an official equity committee is appointed, shareholder interests will be ignored. Based on the information currently available, the equity holders, who contributed to the Debtors far more funds than any other constituency, deserve to have a meaningful role in these cases.

---

[3] As of the commencement of these cases, the Debtors had approximately 248 million shares outstanding.

[4] As recently as early October 2018, the market value of the Synergy Pharmaceuticals Inc. shares was over $400 million.

2

3. The Ad Hoc Committee believes that the primary goal of these restructuring proceedings should be to maximize value for ***all*** stakeholders. The Debtors have not yet demonstrated that they need post-petition financing, and that such financing will contribute to maximizing the value of the estates for all stakeholders rather than just further enriching the prepetition lenders. However, even if the Debtors were able to meet this burden of proof to the Court's satisfaction, the terms and conditions of the proposed DIP Facility are so onerous, unreasonable, and improper that they should not be approved in any event. By way of example, through the DIP Financing Motion, the Debtors (and the prepetition lenders) are seeking approval of, among other objectionable requests:

(a) An extremely hurried case timeline tied to milestones that will undoubtedly destroy value and place unnecessary barriers to an effective investigation of, or challenge to, the Debtors' agenda and prepetition acts (or omissions) by management, the board and the prepetition lenders;[5]

(b) Premature approval of a $110 million roll-up at an interim hearing, which includes accrued and unpaid interest, including accrued and unpaid *post-petition* interest at the default rate;

(c) Conditioning their "new money" DIP -- the incremental increase in liquidity being offered is $45 million -- on the Debtors' stipulation to a $35 million prepayment premium that cannot be approved under established precedent;

(d) The granting of a DIP lien on unencumbered assets as well as avoidance actions (upon entry of a final order); and

(e) The requirement to file an "Acceptable Plan" on or before December 21, 2018 that would make impossible any genuine effort to maximize value.

4. The DIP Facility must be significantly revised and improved to meet applicable standards of fairness and to maximize the value of the Debtors' estates for all stakeholders.

---

[5] The Ad Hoc Committee is still in the process of digesting the voluminous documents filed by the Debtors. The Ad Hoc Committee notes based on an initial read that a marketing process by Centerview Partners LLC limited to only 30 buyers, tied to a "no-shop" provision through January 4, 2019, does not appear designed to maximize value. *See* Stalking Horse Agreement, § 5.10 (the Stalking Horse Agreement restricts the solicitation of alternative bids until entry of the bidding procedures order).

Among others things, the stipulated prepayment premium, the fast-tracked case and milestones, and the proposed roll-up should not be considered for approval.

5. Instead, the DIP Financing Motion should be adjourned for at least a short period of time to enable a proper factual investigation and the development of a proper case record before this Court.[6] The Debtors' cases will not crater, nor will the Debtors' business operations be jeopardized, by a short adjournment.[7] This Court, respectfully, should approve a consensual cash collateral arrangement on an interim basis that provides sufficient cash to the Debtors to operate until such time as parties-in-interest, including the Ad Hoc Committee, are given an opportunity to have a voice in these chapter 11 cases.

## JOINDER TO OBJECTION OF HIGHBRIDGE FUNDS

6. The Ad Hoc Committee joins in the objection (the "Highbridge Objection") to the DIP Financing Motion filed by affiliates of Highbridge Capital Management, LLC ("Highbridge"). The Ad Hoc Committee joins in the Highbridge Objection, concurs with those arguments and hereby incorporates those arguments and assertions herein by reference.

## RESERVATION OF RIGHTS

7. The Ad Hoc Committee reserves the right to supplement and amend this Objection and to introduce evidence at any hearing on approval of the DIP Financing Motion, or such other hearings as may be scheduled in these cases. Further, the Ad Hoc Committee reserves the right to respond, further object, join in, or amend any objection herein with respect to any

---

[6] The Ad Hoc Committee notes the Debtors have not filed an independent declaration in support of the DIP Financing Motion. Rather, the Debtors are relying on the Declaration of Gary G. Gemignani, which contains one paragraph on the proposed DIP financing. *See* Gemignani Decl., Docket No. 16, ¶ 49.

[7] The Debtors' DIP financing budget demonstrates that financing is not necessary in the near term. Indeed, for the week-ending December 21, 2018, the Debtors project cash availability of approximately $15 million (*after* payment of $1 million in DIP fees that would be unnecessary if the DIP Financing Motion is adjourned). With negative projected cash flow of $6.3 million over the following two weeks, there is no need for financing (and the premature approval of extraordinary relief through the DIP Financing Motion) during that period.

4

argument or objection made by any person relating to the DIP Financing Motion or the other relief requested in these cases.

## CONCLUSION

WHEREFORE, the Ad Hoc Committee respectfully requests that this Court grant the relief requested in this Objection and such other relief as the Court deems just and proper.

Dated: December 19, 2018
    New York, New York

                                **COLE SCHOTZ P.C.**

By:   */s/ Ryan T. Jareck*
        Ryan T. Jareck
        1325 Avenue of the Americas, 19th Floor
        New York, NY 10019
        Telephone: (212) 752-8000
        Facsimile: (212) 752-8393
        rjareck@coleschotz.com

        – and –

        Norman L. Pernick
        500 Delaware Ave. # 1410
        Wilmington, DE 19801
        Telephone: (302) 652-3131
        Facsimile: (302) 652-3117
        npernick@coleschotz.com

        – and –

        Irving E. Walker
        300 E Lombard St. #1450
        Baltimore, MD 21202
        Telephone: (410) 230-0660
        Facsimile: (410) 528-9400
        iwalker@coleschotz.com

        *Counsel for the Ad Hoc Committee of Equity Holders*