**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

In re:                                          :    Chapter 11
                                                :
SYNERGY PHARMACEUTICALS INC., et al.,           :    Case No. 18-14010 (JLG)
                                                :
        Debtors.[1]                             :    (Jointly Administered)
                                                :
                                                :    Related Docket Nos. 15 and 50
------------------------------------------------------------- x

**SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN**
**POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH**
**COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE**
**PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A**
**FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion **[Docket No. 15]** (the "**Motion**")[2] of Debtors Synergy Pharmaceuticals

Inc. ("**Synergy Pharmaceuticals**" or the "**Borrower**") and Synergy Advanced Pharmaceuticals,

Inc. ("**Synergy Advanced**" or the "**Guarantor,**" and together with Synergy Pharmaceuticals, the

"**Debtors**") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

364(e), 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002,

4001, 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and Rule 4001 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

**Bankruptcy Rules**"), seeking, among other things:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification
        numbers, are as follows: Synergy Pharmaceuticals Inc. (5269); Synergy Advanced Pharmaceuticals, Inc.
        (4596). The address of the Debtors' corporate headquarters is 420 Lexington Avenue, Suite 2012, New York,
        New York 10170.

[2]     Capitalized terms used but not defined in this Second Interim Order shall have the same meanings ascribed to
        such terms in the DIP Credit Agreement (as defined below) or, if not defined therein, in the Motion.

(1)     authorization for the Borrower to obtain, and for the Guarantor to guarantee, unconditionally, on a joint and several basis, postpetition financing consisting of a senior secured, super-priority multiple delayed draw term loan credit facility (the "**DIP Facility**"), on and subject to the terms and conditions set forth in the *Senior Secured, Priming and Superpriority Debtor-in-Possession Credit Agreement*, a copy of which is attached hereto as **Exhibit A** (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "**DIP Credit Agreement**" and together with any other related agreements, documents, security agreements or pledge agreements, the "**DIP Loan Documents**"), made by and among the Borrower, the Guarantor, CRG Servicing LLC, as administrative agent and collateral agent (in such capacities, together with its successors and assigns, the "**DIP Loan Agent**")  and each of the lenders party thereto (the "**DIP Lenders**" and, together with the DIP Loan Agent, the "**DIP Secured Parties**"), in an aggregate principal amount of [**$154,873,999**][3] (the "**DIP Loans**"), comprised of (i) approximately **$[110,000,000]**[4] of loans (the "**Roll-Up DIP Loans**") representing a partial "roll-up" of the Prepetition Secured Obligations equal to the sum of (a) outstanding principal plus (b) accrued and unpaid interest, including accrued and unpaid postpetition interest at the Default Rate specified in the Prepetition Loan Agreement from the Petition Date (as defined below) through and including the date of the entry of this second interim order (this "**Second Interim Order**") (with respect to Roll-Up DIP Loans advanced pursuant to the Initial DIP Advance) or the final debtor-in-possession financing order (the "**Final Order**") (with respect to Roll-Up DIP Loans advanced pursuant to the Second Advance (as defined below)) plus (c) any and all unreimbursed costs, fees and expenses of the DIP Secured Parties (in their capacities under the Prepetition Loan Documents) incurred through entry of the Final Order; and (ii) **$45,000,000** of "new money" loans (the "**New Money DIP Loans**"), which will be advanced by the DIP Lenders to the Borrower, subject to the terms and conditions of the DIP Loan Documents, to be used by the Borrower in accordance with this Second Interim Order, the Budget (as defined below) (subject to Permitted Variances (as defined below)) and the Final Order, as follows: (A) upon entry of the Second Interim Order, the DIP Lenders shall advance **$8,000,000** (the "**Initial DIP Advance**"), and (B) upon entry of the Final Order, the DIP Lenders shall advance the remaining **$37,000,000** (the "**Final DIP Advance**");

(2)     authorization for Debtors, immediately upon entry of this Second Interim Order, to execute, deliver, and enter into the DIP Loan Documents and to perform all of the Debtors' respective obligations thereunder and such other and further acts as may be required in connection with the DIP Loan Documents;

---

[3] Amount to be updated to reflect date of funding.

[4] Amount to be updated to reflect date of funding.

(3)      authorization for the Debtors, subject to the terms and conditions of the DIP Loan Documents, this Second Interim Order and the Final Order, as applicable, to implement a partial "roll-up" of the Prepetition Secured Obligations, including accrued and unpaid postpetition interest at the Default Rate specified in the Prepetition Loan Agreement from and after the Petition Date and all applicable unreimbursed costs, fees and expenses of the DIP Secured Parties (in their capacities under the Prepetition Loan Documents) incurred through entry of the Final Order, but not including the Prepayment Premium or the Back-End Facility Fee, (i) immediately upon entry of this Second Interim Order, in the aggregate amount of $16,000,000.00, and to deem the rolled-up Prepetition Secured Obligations to have been issued or provided, as applicable, under the DIP Credit Agreement and other DIP Loan Documents, and (ii) immediately upon entry of the Final Order, in the aggregate amount of approximately $[**93,873,999**],[5] and to deem such rolled-up Prepetition Secured Obligations to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents;

(4)      authorization for the Debtors, immediately upon entry of this Second Interim Order, to use proceeds of the Initial DIP Advance as permitted in the DIP Loan Documents and consistent with this Second Interim Order and the Budget (subject to Permitted Variances);

(5)      immediately upon entry of this Second Interim Order, subject to the Carve Out (as defined below), with respect to all claims of the DIP Loan Agent and DIP Lenders under the DIP Facility with respect to the DIP Loans and the DIP Obligations, grant to the DIP Loan Agent and the DIP Lenders:

   a.   pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority claim status in the Cases (as defined below), which claims shall be payable from and have recourse to all DIP Collateral (as defined below) other than (i) Avoidance Actions and any proceeds thereof and (ii) the Debtors' interests in directors and officers insurance policies and any proceeds thereof (the items described in the foregoing clauses (i) and (ii), together, the "**Interim Period Excluded Collateral**");

   b.   pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first priority lien on all DIP Collateral (other than the Interim Period Excluded Collateral) subject only to Prior Senior Liens;

---

[5] Amount to be updated to reflect date of funding.

c.  pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior lien on all property of the Debtors that is subject to a Prior Senior Lien; and

d.  pursuant to section 364(d)(1) of the Bankruptcy Code a perfected first priority, senior priming lien on all of the property of the Debtors (including, without limitation, inventory, receivables, equipment, machinery, intellectual property, general intangibles, real property, capital stock of subsidiaries, membership interests in limited liability companies) that is subject to the existing liens that secure the obligations of the Debtors to the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) under or in connection with the Prepetition Loan Documents and the Prepetition Secured Obligations;

(6)  approval of certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(7)  with respect to the indebtedness represented by the Prepayment Premium and the Back-End Facility Fee, acknowledgment by the Debtors that such indebtedness constitutes, as of the Petition Date, a valid and enforceable prepetition secured claim on behalf the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents);

(8)  immediately upon entry of this Second Interim Order, authorization for the Debtors to continue to use the Cash Collateral securing the Prepetition Secured Obligations and all other Prepetition Collateral in which the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) have an interest consistent with this Second Interim Order and Budget (subject to Permitted Variances) until the date of the Final Hearing (as defined below);

(9)  as adequate protection for the use, subsequent to the Initial Interim Cash Collateral Period, of the Cash Collateral and other Prepetition Collateral securing the Prepetition Secured Obligations and the priming of the Prepetition Liens, by virtue of making the New Money DIP Loans, immediately upon entry of this Second Interim Order, granting to the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) with respect to all remaining prepetition secured claims, to the extent of any diminution in the value of the Prepetition Collateral:

a.  superpriority administrative expense claim status;

b.  replacement liens on all DIP Collateral, junior only to (x) the liens of the DIP Loan Agent and the DIP Lenders and (y) Prior Senior Liens;

4

c.  accrual of postpetition interest accruing at the Default Rate as specified in the Prepetition Loan Agreement; and

d.  reimbursement of all fees, costs and expenses incurred in connection with defending the validity and enforceability of the Prepetition Secured Obligations, the Prepetition Liens or the Remaining Prepetition Secured Claim;

(10)    subject to and effective upon entry of the Final Order, the waiver of the Debtors' right to assert a 506(c) claim on account of amounts covered by the Carve Out (as defined below);

(11)    subject only to and effective upon entry of a Final Order, the waiver of the Debtors' right to assert claims to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code, any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code and the right to request marshalling (or any similar doctrine) with respect to the DIP Collateral.

(12)    modification of the automatic stay to the extent hereinafter set forth;

(13)    the setting of a final hearing on the Motion ("**Final Hearing**") to consider entry of the Final Order authorizing, among other things, the borrowing under the DIP Loan Documents on a final basis, no later than January 17, 2019, as set forth in the Motion and the DIP Credit Agreement filed with the Court; and

(14)    granting the Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on December 13, 2018 (the "**First Interim Hearing**"), and the second interim hearing having been held by this Court on December 21, 2018 (the "**Second Interim Hearing,**" and together with the First Interim Hearing, the "**Interim Hearings**"), and upon the record made by the Debtors at the Interim Hearings, including the Motion, the First Day Declaration, and the filings and pleadings in the above-captioned chapter 11 proceedings (the "**Cases**"), the Court having found that the relief requested in the Motion is fair and reasonable and is in the best interests of Debtors, their estates (collectively, the "**Estates**"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of

5

the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and appropriate notice of the Motion, the relief requested therein, and the Second Interim Hearing (the "**Notice**") having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Bankruptcy Rules on (i) counsel to the DIP Loan Agent, (ii) the U.S. Trustee (as defined below), (iii) the holders of the twenty (20) largest unsecured claims against the Debtors' Estates, (iv); the Internal Revenue Service, (v) the Securities and Exchange Commission, (vi) the Stalking Horse Bidder (as defined in the First Day Declaration), and (vii) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded prepetition liens or security interests against any of the Debtors' assets; and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

## THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     <u>Petition Date</u>.  On December 12, 2018 (the "**Petition Date**"), each Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     <u>Disposition</u>.  The Motion is granted on an interim basis in accordance with the terms of this Second Interim Order.  Any objections to the Motion with respect to the entry of the Second Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled on the merits.

C.    <u>Jurisdiction and Venue</u>.    The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought in the Motion are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6003 and 9014 and Local Bankruptcy Rule 4001.

D.    <u>Committee Formation</u>. On December 20, 2018, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "**Committee**").

E.    <u>The First Interim Order</u>.  On December 13, 2018, the Court entered that certain *First Interim Order (i) Authorizing the Debtors to Obtain Postpetition Financing (ii) Authorizing the Debtors to Use Cash Collateral, (iii) Granting Liens and Providing Superpriority Administrative Expense Status, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling a Final Hearing and (vii) Granting Related Relief* **[Docket No. 50]** ("**First Interim Order**").  Pursuant to the First Interim Order, the Debtors were authorized to, among other things, use Cash Collateral in accordance with the Budget for the Initial Interim Cash Collateral Period (as defined in the First Interim Order).

F.    <u>Notice</u>.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearings and the relief granted under the First Interim Order and this Second Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and 4001(c).

G.      Debtors' Acknowledgments and Agreements.  In requesting the DIP Facility, and in exchange for, and as a material inducement to, the DIP Lenders to enter into the DIP Loan Documents and provide the DIP Facility and to allow use of their Cash Collateral, after consultation with their attorneys and financial advisors, subject to the rights of the Committee or other parties-in-interest as and to the extent set forth in Section 5.1 of this Second Interim Order, the Debtors permanently and irrevocably reaffirm, readmit, re-stipulate, re-acknowledge and agree to the Debtors' Acknowledgments and Agreements contained in paragraph F of the First Interim Order.

H.      Findings Regarding the DIP Financing and Use of Cash Collateral.

(i)      Postpetition Financing.  The Debtors have requested from each of the DIP Loan Agent and the DIP Lenders, and the DIP Loan Agent and DIP Lenders are willing to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in the DIP Loan Documents, this Second Interim Order and the Budget, respectively.

(ii)      Need for Postpetition Financing.  The Debtors do not have sufficient available sources of working capital, including Cash Collateral, to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all stakeholders of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Loan Agent and DIP Lenders as set forth in this Second Interim Order and the DIP Credit Agreement, as applicable, is vital to the preservation and maintenance of the going concern values of the

8

Debtors.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' Estates in order to maximize the recovery to all stakeholders of the Estates.

(iii)    No Credit Available on More Favorable Terms.  The Debtors are unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under sections 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to sections 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code, without granting liens on assets.  The Debtors have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by each of the DIP Loan Agent and DIP Lenders pursuant to the DIP Loan Documents.

(iv)    Budget.  The Debtors prepared and delivered to the DIP Secured Parties a revised rolling 13-week budget for the period commencing on the Petition Date through and including March 31, 2019, a copy of which is attached hereto as **Exhibit B** (the "**Budget**").  The Budget sets forth all forecasted (i) cash receipts of the Debtors (the "**Cash Receipts**"), (ii) cash operating disbursements of the Debtors (the "**Cash Operating Disbursements**") and (iii) non-operating, bankruptcy-related cash disbursements of the Debtors (the "**Cash Bankruptcy Disbursements**"). The Budget shall be approved by the DIP Loan Agent in its sole and absolute discretion and may be modified by the DIP Loan Parties with the written consent of the DIP Loan Agent in its sole and absolute discretion without further order of the Court, provided that (A) the total amount of funding provided pursuant to the Budget shall not exceed the total

9

amount of the DIP Facility authorized by each of the Second Interim Order and the Final Order, as applicable and (B) the reasonable and documented professional fees and expenses incurred by the DIP Secured Parties (in their capacities under the Prepetition Loan Documents and the DIP Loan Documents) shall not be subject to a cap. Compliance with the Budget will be measured every week starting with the third week following the Petition Date for the period beginning as of the week of the Petition Date and ending the week prior to the week on which compliance is measured. For purposes of illustration, on the third week following the Petition Date, the Debtors' compliance with the Budget for the first two weeks following the Petition Date shall be measured. Each date on which compliance with the Budget is measured is referred to herein as a "**Testing Date**". The Debtors believe that the Budget is reasonable under the facts and circumstances. The DIP Secured Parties are relying upon the Debtors' agreement to comply with the Budget, subject to Permitted Variances, and this Second Interim Order in determining to allow the use of their Cash Collateral until the date of the Final Hearing.

(v)     <u>Variance</u>.  As of any applicable Testing Date, (a) the cumulative Cash Receipts may vary from the Budget by no more than (1) 20.00% for the first four-week period (and each week thereof) beginning as of the week of the Petition Date, (2) 15.00% for the first five-week period beginning as of the week of the Petition Date and (3) 10.00% for the first six-week period and all subsequent weeks of the period beginning as of the week of the Petition Date (the "**Cash Receipt Variance**"), (b) the cumulative Cash Operating Disbursements may vary from the Budget by no more than the following: (1) 20.00% for the first four-week period (and each week thereof), beginning as of the week of the Petition Date, (2) 15.00% for the first five-week period beginning as of the week of the Petition Date, and (3) 10.00% for the first six-week period and all subsequent weeks of the period beginning as of the week of the Petition Date (the

"**Cash Operating Variance**"), and (c) the cumulative Cash Bankruptcy Disbursements for the thirteen (13)-week period beginning as of the week of the Petition Date shall not exceed the amount of set forth in the Budget with respect thereto (the "**Cash Bankruptcy Disbursement Cap**"), subject to a variance of no more than 10% (the "**Cash Bankruptcy Disbursement Variance**" and together with the "**Cash Receipt Variance**" and the Cash Operating Variance, the "**Permitted Variances**"). For the avoidance of doubt, the Budget shall not be construed as a limitation on the allowance of professional fee claims. The Debtors shall be deemed to be in compliance with the Budget for all purposes under the DIP Loan Documents, and this Second Interim Order unless, as of any applicable date of determination, the Debtors' (x) cumulative Cash Receipts, (y) cumulative Cash Operating Disbursements, or (z) cumulative Cash Bankruptcy Disbursements, as applicable, vary from the Budget by more than the applicable Permitted Variance as measured on any applicable Testing Date (it being understood and agreed that no Testing Date with respect to cumulative Cash Bankruptcy Disbursements shall occur prior to the end of the 13-week period beginning the week of the Petition Date); provided, however, that with respect to cumulative Cash Receipts, the DIP Loan Parties shall not be deemed to have failed to comply with the Budget unless the Debtors' cumulative Cash Receipts fall beneath the amounts set forth in the Budget as measured on any two consecutive Testing Dates during the first four week period beginning as of the Petition Date. After the first three weeks following the Petition Date, the Debtors shall provide the DIP Loan Agent (with a copy to counsel to the Committee and counsel to any official committee of equity security holders, if and only if one is appointed) with weekly and cumulative variance reporting on a line item basis for Cash Receipts, Cash Operating Disbursements and Cash Bankruptcy Disbursements, which reporting shall detail the variance, if any, of actual cash disbursements and actual cash receipts

11

from the Budget and provide an explanation of any per line item variance greater than 5.00%. All references to the Budget in the First Interim Order, this Second Interim Order or Final Order shall be construed to be qualified by the phrase "subject to Permitted Variances."

(vi)    Business Judgment and Good Faith Pursuant to Section 364(e).    Based upon the pleadings and proceedings of record in the Cases, the terms of the DIP Facility (including the Roll-Up), the use of the Prepetition Collateral (including Cash Collateral), the First Interim Order and this Second Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the DIP Loan Documents, the First Interim Order and this Second Interim Order have been negotiated in good faith and at arms' length by and among the Debtors and the DIP Loan Agent, with all parties being represented by counsel.  Any credit extended under the terms of this Second Interim Order shall be deemed to have been extended in good faith by the DIP Loan Agent and DIP Lenders, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event this Second Interim Order or any provision thereof or hereof is vacated, reversed or modified on appeal or otherwise.

(vii)    Good Cause.    The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their stakeholders and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and ongoing operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors'

stakeholders, and (3) avoid immediate and irreparable harm to the Debtors, their stakeholders, their businesses, their employees, and their assets.

(viii)   Proposed Section 363 Sale. The Debtors contemplate utilizing their Cases to effectuate the sale of all or substantially all of their assets under section 363 of the Bankruptcy Code, pursuant to the terms and conditions set forth in the DIP Credit Agreement (as more specifically defined therein, an "**Acceptable 363 Sale**"). In connection therewith, on the Petition Date, the Debtors filed a motion **[Docket No. 17]** seeking an order (i) approving procedures to govern the rules and process of the Acceptable 363 Sale, and (ii) approving the Acceptable 363 Sale. In connection therewith, the Debtors have entered into that certain Asset Purchase Agreement (as amended, restated, modified, or supplemented, from time to time, the "**BH APA**") with Bausch Health Companies Inc. and its wholly-owned subsidiary, Bausch Health Ireland Limited, to purchase all or substantially all of the DIP Collateral on the terms and conditions set forth therein.

(ix)   The Plan. The Debtors intend to solicit and prosecute a joint chapter 11 plan of liquidation, pursuant to the terms and conditions set forth in the DIP Credit Agreement (as more specifically defined therein, an "**Acceptable Plan**"), substantially concurrently with the sale process to ensure a timely emergence from bankruptcy. An Acceptable Plan and related disclosure statement were filed on December 21, 2018 at Docket Nos. 111 and 112, respectively.

(x)   Roll-Up. As soon as commercially practicable (but in any event, within one (1) Business Day) following entry of this Second Interim Order, $16,000,000.00 of the Roll-Up DIP Loans will be used to reduce, on a dollar-for-dollar basis, a portion of the Prepetition Secured Obligations, including prepetition accrued and unpaid interest and accrued and unpaid postpetition interest at the Default Rate under the Prepetition Loan Documents from the Petition

Date through and including the date of the entry of this Second Interim Order (which shall not include, for the avoidance of doubt, any portion of the Prepayment Premium or the Back-End Facility Fee). The Prepetition Secured Obligations so "rolled up" shall be deemed to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents (collectively, the "**Interim Roll-Up**"). The remainder of the Prepetition Secured Obligations, including (A) all prepetition accrued and unpaid interest, and accrued and unpaid postpetition interest at the Default Rate under the Prepetition Loan Documents from the Petition Date through and including the date of the entry of the Final Order that was not included in the Initial Roll-Up, plus (B) any and all unreimbursed costs, fees and expenses of the Prepetition Secured Parties incurred in accordance with the Prepetition Loan Documents, but not including the amount of the Prepayment Premium and Back-End Facility Fee as of the Petition Date, shall be reduced on a dollar-for-dollar basis with the balance of the Roll-Up DIP Loans upon entry of the Final Order (the "**Final Roll-Up**", together with the Interim Roll-Up, the "**Roll-Up**"). Inclusion of the Roll-Up in the DIP Obligations was necessary for the DIP Secured Parties to agree to the DIP Facility and the use of Cash Collateral.

(xi)     <u>Debtors Will Not Challenge Credit Bid Rights</u>. No Debtor or Debtor's affiliate shall object to any DIP Secured Parties' right to credit bid up to the full amount of the DIP Obligations, <u>plus</u> the full amount of the Remaining Prepetition Secured Claim, including, without limitation, any accrued interest and expenses, in connection with an Acceptable 363 Sale or an Acceptable Plan, as applicable, <u>provided, however</u>, that the DIP Loan Agent shall not be entitled to exercise such right to credit bid unless and until the BH APA is terminated or modified in a manner adverse in any material respect to the DIP Secured Parties.

1037754.03C-CHISR01A - MSW

(xii)    <u>Use of Cash Collateral</u>.  The DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) consent to the Debtors' use of their Cash Collateral, in accordance with the First Interim Order, this Second Interim Order and the Budget (subject to Permitted Variances); <u>provided</u>, <u>however</u>, that the Debtors shall operate their cash management system consistent with the interim or final order (as applicable) entered by the Bankruptcy Court granting the Debtors' "first-day" motion to continue the use of its cash management system (such interim or final order, as applicable, the "**Cash Management Order**").

(xiii)    <u>Adequate Protection.</u>  The DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents) are entitled pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against any diminution in value of their respective interests in the Prepetition Collateral (including the Cash Collateral), to the extent set forth in the First Interim Order and this Second Interim Order.

(xiv)    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Second Interim Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Second Interim Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and upon the record made before the Court at the Second Interim Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

Section 1.    <u>Authorization and Conditions to Financing.</u>

1.1    <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Second Interim Order.  Except as otherwise

15

expressly provided in this Second Interim Order, any objection to the entry of this Second Interim Order that has not been withdrawn, waived, resolved or settled is hereby denied and overruled on the merits.

      1.2   <u>Ratification of the First Interim Order</u>.  The terms of the First Interim Order are hereby ratified and confirmed except to the extent amended or modified by this Second Interim Order.

      1.3   <u>Authorization to Borrow and Use Loan Proceeds</u>.  Subject to the terms and conditions of this Second Interim Order and the DIP Loan Documents, the Debtors are hereby authorized and empowered to immediately borrow, incur and guarantee, as applicable, the DIP Loans and all other DIP Obligations (as defined in the DIP Credit Agreement, the "**DIP Obligations**").  As soon as commercially practicable (but, in any event, within one (1) Business Day) following entry of this Second Interim Order, the DIP Secured Parties shall advance to the Debtors the Initial DIP Advance (in an aggregate principal amount of $8,000,000) to be used by the Debtors in accordance with, and subject to, the terms and conditions of this Second Interim Order, the DIP Credit Agreement and other DIP Loan Documents, and the Budget (subject to Permitted Variances).  The DIP Facility may be borrowed by the Debtors during the period commencing on the date of this Second Interim Order until the date of the Final Hearing.

      1.4   <u>DIP Loan Documents</u>

      1.4.1   <u>Authorization</u>.  The Debtors are hereby authorized to enter into, execute, deliver, perform and comply with all of the terms, conditions and covenants of the DIP Credit Agreement and the other DIP Loan Documents, except as otherwise provided in this Second Interim Order.  Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against

each Debtor party thereto in accordance with the terms of the DIP Loan Documents and this Second Interim Order.  No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Second Interim Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

1.4.2   <u>Approval; Evidence of Borrowing Arrangements</u>.   All terms, conditions and covenants set forth in the DIP Loan Documents (including, without limitation, the DIP Credit Agreement) are approved to the extent necessary to implement the terms and provisions of this Second Interim Order.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, the DIP Loan Agent and DIP Lenders, and of each Debtor's assumption and adoption of all of the terms, conditions and covenants of the DIP Credit Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of the DIP Secured Parties' reasonable and documented out-of-pocket costs and expenses, as more fully set forth in the DIP Loan Documents and Section 1.8 of this Second Interim Order.  Notwithstanding the foregoing, this Second Interim Order does not constitute approval of (a) the Sale or Plan Milestones (as defined in the DIP Credit Agreement) or (b) any covenant, Event of Default or other term or condition relating to an Acceptable Plan (as defined in the DIP Credit Agreement).  Notwithstanding anything in the DIP Credit Agreement to the contrary, prior to entry of the Final Order, no Default (as defined in the DIP Credit Agreement), Event of Default (as defined in the DIP Credit

1037754.03C-CHISR01A - MSW

Agreement) or DIP Termination Event (as defined in the below) shall arise as a result of (x) the failure of the Debtors to comply with the Sale or Plan Milestones or (y) any covenant or other provision of the DIP Loan Documents relating to an Acceptable Plan.

        1.4.3   <u>Amendment</u>.  Subject to the terms and conditions of the DIP Credit Agreement and the other DIP Loan Documents, the Debtors, the DIP Loan Agent and the DIP Lenders may amend, modify, supplement or waive any provision of the DIP Loan Documents (a "**DIP Loan Amendment**") without further approval or order of the Court so long as (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean, any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the DIP Loan Documents, increase the principal amount of the DIP Loans, add specific new events of default or enlarge the nature and extent of default remedies available to the DIP Loan Agent and DIP Lenders following an event of default, or otherwise modify any terms and conditions in any DIP Loan Document in a manner materially less favorable to Debtors) and is undertaken in good faith by the DIP Loan Agent, DIP Lenders and Debtors; (b) the Debtors provide prior written notice of the DIP Loan Amendment (the "**DIP Loan Amendment Notice**") to (i) the U.S. Trustee, (ii) counsel to the Committee, (iii) counsel to the Stalking Horse Bidder and (iv) counsel to the DIP Loan Agent; (c) the Debtors file the DIP Loan Amendment Notice with the Court; and (d) no objection to the DIP Loan Amendment is filed with the Court within four (4) Business Days from the later of the date the DIP Loan Amendment Notice is served or the date the DIP Loan Amendment Notice is filed with the Court in accordance with this Section.  Any material DIP Loan Amendment to the DIP Loan Documents must be approved by the Court to be effective.

1.4.4    Payment of DIP Fees.  Any and all fees payable pursuant to the DIP Loan Documents, including the Upfront Fee (as defined in the DIP Credit Agreement) and the Exit Fee (as defined in the DIP Credit Agreement) as more fully set forth in the DIP Loan Documents, are hereby approved with respect to the Initial DIP Advance, and, subject to entry of the Final Order, the Debtors are authorized to (a) pay the Upfront Fee on the date the Final DIP Advance is made and (b) pay the Exit Fee on the Maturity Date (as defined in the DIP Loan Documents).

1.5    Partial, Interim Roll-Up of Prepetition Secured Obligations. As soon as commercially practicable (but, in any event, within one (1) Business Day) following entry of this Second Interim Order (a) $16,000,000.00 of the Roll-Up DIP Loans shall be used to reduce, on a dollar-for-dollar basis, a portion of the Prepetition Secured Obligations (which shall not include the Remaining Prepetition Secured Claim). The "rolled-up" Prepetition Secured Obligations shall be deemed to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents.

1.6    Payments and Application of Payments.  The Debtors are authorized to make all payments and transfers of Estate property to the DIP Loan Agent as provided for, permitted and/or required under the DIP Credit Agreement and the other DIP Loan Documents, which payments and transfers shall not, subject to Section 5.1 hereof, be avoidable or recoverable from the DIP Loan Agent or any DIP Lender under sections 547, 548, 550, 553 or any other section of the Bankruptcy Code, or any other claim, charge, assessment or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  Subject to Section 5.1 hereof, all proceeds of the Prepetition Collateral received by the DIP Loan Agent or any DIP Lender, and any other amounts or payments received by the DIP Loan Agent or any DIP

Lender in respect of the DIP Obligations, may be applied or deemed to be applied on a dollar-for-dollar basis by the DIP Loan Agent, in its discretion, first to the repayment in full of the DIP Obligations, and then in repayment of the Remaining Prepetition Secured Claim, all in accordance with the DIP Credit Agreement, the other DIP Loan Documents, this Second Interim Order and the Final Order (upon entry thereof).

1.7    Continuation of Prepetition Procedures.  Except to the extent expressly set forth in the DIP Loan Documents, all prepetition practices and procedures for the payment and collection of proceeds of the DIP Collateral, the turnover of cash, the delivery of property to the DIP Loan Agent and the DIP Lenders, including any lockbox, as set forth in the Cash Management Order, are hereby approved and shall continue without interruption after the commencement of the Cases.

1.8    Costs, Fees and Expenses of DIP Secured Parties.

1.8.1    Payment of Fees and Expenses.  On a monthly basis, from and after the date of this Second Interim Order, the Debtors shall pay any and all reasonable and documented fees and expenses of the DIP Secured Parties incurred from and after entry of this Second Interim Order in connection with the DIP Facility and as provided for in the DIP Loan Documents, whether or not the transactions contemplated hereby are consummated or such fees and expenses are set forth in the Budget, including fees and expenses incurred in connection with (i) the preparation, negotiations and execution of the DIP Loan Documents; (ii) the creation, perfection or protection of the liens under the DIP Loan Documents (including all search, filing and recording fees); (iii) the ongoing administration of the DIP Loan Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and participation in the Cases; (iv) any refinancing or

restructuring of the DIP Facility; (v) the enforcement of the DIP Loan Documents;  (vi) any legal

proceeding relating to or arising out of the DIP Facility; and (vii) as otherwise provided for in

this Second Interim Order or the DIP Loan Documents.

           1.8.2   <u>Procedures for Payment</u>.  The reasonable and documented fees and

expenses of the DIP Secured Parties as provided in this Second Interim Order shall not be subject

to allowance by the Court or the U.S. Trustee guidelines, and no recipient of any such payment

shall be required to file with respect thereto any interim or final fee application with this

Court; <u>provided</u>, <u>however,</u> that copies of any such invoices provided to the Debtors shall be

provided contemporaneously to the U.S. Trustee, counsel to the Committee and counsel to any

official committee of equity security holders, if and only if one is appointed.[6]  If the Debtors, the

U.S. Trustee, the Committee or any official committee of equity security holders, if and only if

one is appointed, objects to the reasonableness of the fees and expenses of any DIP Secured

Parties, and such objection cannot be resolved within ten (10) calendar days of receipt of such

invoices, the Debtors, the U.S. Trustee the Committee or any official committee of equity

security holders, if and only if one is appointed, as the case may be, shall file with the Court and

serve on such DIP Administrative Agent and such professional (with a copy to the Debtors) an

objection limited to the reasonableness of such fees and expenses and detailing with specificity

---

[6]    For the avoidance of doubt, the fees provided for in this Second Interim Order must be reasonable. Although the U.S. Trustee fee guidelines do not specifically apply, professionals shall be required to submit time and expense detail with their invoices, and any further information or back up documentation required to determine the reasonableness of the request. Invoices for such fees and expenses provided to any party other than U.S. Trustee may be redacted to delete any information subject to the attorney-client privilege and any information constituting attorney work product. Any invoices submitted pursuant to the terms hereof shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.

which fees and/or expenses are being objected to (each, a "**Fee Objection**").  The professional

fees of the DIP Secured Parties shall not be subject to the provisions of sections 327, 328, 329 or

331 of the Bankruptcy Code.  The Debtors shall pay the fees and expenses of the DIP Parties in

accordance with the terms and conditions of the DIP Documents and this Second Interim Order,

(a) in the full amount invoiced if no Fee Objection has been timely filed, and (b) in the amount of

the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has

been timely filed.

        1.9    <u>Indemnification.</u> The DIP Loan Agent and the DIP Lenders (and their

affiliates and respective officers, directors, employees, advisors and agents) (each such person,

an "**Indemnitee**") will have no liability for, and will be indemnified and held harmless against,

any losses, claims, damages, liabilities or expenses incurred in respect of the DIP Facility or the

use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-

appealable judgment of a court of competent jurisdiction to arise from the gross negligence or

willful misconduct of the relevant Indemnitee. Such indemnity shall not be available (i) to the

extent arising from a material breach of any obligation of such Indemnitee under the DIP Loan

Documents or (ii) to the extent arising out of any loss, claim, damage, liability or expense that

does not involve an act or omission of the DIP Loan Parties and that is brought by an Indemnitee

against another Indemnitee (other than claims against an Indemnitee in its capacity or in

fulfilling its role as DIP Loan Agent or any similar role under the DIP Loan Documents).

Section 2.    <u>Postpetition Lien; Superpriority Administrative Claim Status.</u>

        2.1    <u>Postpetition Lien</u>.

        2.1.1    <u>Postpetition Lien Granting</u>.  To secure the prompt payment and

performance of any and all DIP Obligations of the Debtors to the DIP Secured Parties of

whatever kind, nature or description, absolute or contingent, now existing or hereafter arising,

the DIP Loan Agent, for the benefit of itself and the DIP Lenders, shall have and is hereby

granted, effective as of the Petition Date, valid, binding, enforceable, non-avoidable and

automatically and properly perfected superpriority security interests in and liens upon

(collectively, the "**DIP Liens**") all of the Prepetition Collateral (other than Excluded Assets (as

defined in the DIP Credit Agreement)) and the Debtors' remaining assets, including any and all

unencumbered assets (collectively hereinafter referred to as the "**DIP Collateral**") including,

without limitation, all assets and property of each Debtor and its Estate, real or personal, tangible

or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date,

including, without limitation, all contracts, contract rights, licenses, general intangibles,

instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash

equivalents, chattel paper, letters of credit and letter of credit rights, investment property,

commercial tort claims, money, insurance, receivables, receivables records, deposit accounts,

collateral support, supporting obligations and instruments, all interests in leaseholds and real

properties, all patents, copyrights, trademarks, trade names and other intellectual property, all

equity interests, all books and records relating to the foregoing, all other personal and real

property of the Debtors, and all other collateral pledged under the DIP Loan Documents, and all

proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each

case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time

in the State of New York (and, if defined in more than one Article of such Uniform Commercial

Code, shall have the meaning given in Article 9 thereof)), *provided*, *however*, that the Interim

Period Excluded Collateral and the Excluded Assets (as defined in the DIP Credit Agreement)

shall not constitute DIP Collateral under this Second Interim Order.

2.1.2   <u>DIP Liens Priority in Collateral</u>.  The DIP Liens securing the DIP

Obligations shall be first and senior in priority to all other interests and liens of every kind,

nature and description, whether created consensually, by an order of the Court or otherwise,

including, without limitation, liens or interests granted in favor of third parties in conjunction

with and any liens or other interests granted pursuant to sections 363, 364 or any other section of

the Bankruptcy Code or other applicable law; <u>provided</u>, <u>however</u>, that the DIP Liens on the DIP

Collateral shall be subject only to (a) Prior Senior Liens, and (b) the Carve Out solely to the

extent provided for in Sections 2.3 of this Second Interim Order (Prior Senior Liens and the

Carve Out are collectively referred to herein as the "**Permitted Liens and Claims**").

2.1.3   <u>Postpetition Lien Perfection</u>.  This Second Interim Order shall be

sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens and

security interests granted herein, effective as of the Petition Date, without any further act and

without regard to any other federal, state or local requirements or law requiring notice, filing,

registration, recording or possession of the DIP Collateral, or other act to validate or perfect such

security interest or lien, including without limitation, control agreements with any financial

institution(s) party to any deposit control agreement or other depository account consisting of

the DIP Collateral (a "**Perfection Act**").  Notwithstanding the foregoing, if the DIP Loan Agent,

in its sole discretion, elects for any reason to file, record or otherwise effectuate any Perfection

Act, then the DIP Loan Agent is authorized to perform such act, and the Debtors are authorized

to perform such act to the extent reasonably requested by the DIP Loan Agent, which act or acts

shall be deemed to have been accomplished as of the date and time of entry of this Second

Interim Order notwithstanding the date and time actually accomplished, and in such event, the

subject filing or recording office is authorized to accept, file or record any document in regard to

24

such act in accordance with applicable law.  The DIP Loan Agent may choose to file, record or present a certified copy of this Second Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Second Interim Order in accordance with applicable law.  Should the DIP Loan Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment or perfection of the DIP Liens and security interests granted herein by virtue of the entry of this Second Interim Order.

2.1.4   <u>Pre-emption of Certain Perfection Requirements</u>.  To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment or perfection of the DIP Secured Parties' liens and security interests granted and created by this Second Interim Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of the United States Bankruptcy Court.  By virtue of the terms of this Second Interim Order, to the extent that the DIP Loan Agent has filed Uniform Commercial Code financing statements, mortgages, deeds of trust or other security or perfection documents under the names of any of the Debtors in respect of the DIP Liens, such filings shall be deemed to properly perfect its DIP Liens granted and confirmed by this Second Interim Order without further action by the DIP Loan Agent.

2.1.5   <u>Nullifying Prepetition Restrictions to Postpetition Financing.</u> Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is

obligated, except as otherwise permitted under the DIP Loan Documents, any provision that restricts, limits or impairs in any way any Debtor from granting the DIP Loan Agent security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Loan Documents or this Second Interim Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the DIP Loan Documents, shall not (a) be effective and/or enforceable against any such Debtor(s), the DIP Loan Agent or the DIP Lenders, as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the DIP Loan Agent and the DIP Lenders pursuant to this Second Interim Order or the DIP Loan Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

              2.1.6    <u>The DIP Liens and the DIP Superpriority Claims</u>.  The DIP Liens and the DIP Superpriority Claims (as defined herein) (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of these Cases (or any successor cases) and shall be valid and enforceable against the Debtors, their Estates, any trustee or any other estate representative appointed or elected in these Cases (or any successor cases) and/or upon the dismissal of any of these Cases (or any successor cases), (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code; provided, however, that notwithstanding the foregoing, the DIP Liens and DIP Superpriority Claims (as defined herein) shall be subject to the Permitted Liens and Claims and the Carve Out

26

and shall not apply to the Interim Period Excluded Collateral or the Excluded Assets (as defined in the DIP Credit Agreement).

2.2   Superpriority Administrative Expenses.

2.2.1   DIP Loans.   For all DIP Obligations now existing or hereafter arising pursuant to this Second Interim Order, the Final Order or the DIP Loan Documents, the DIP Loan Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors (other than the Carve Out), whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (the "**DIP Superpriority Claim**") other than the Interim Period Excluded Collateral and the Excluded Assets (as defined in the DIP Credit Agreement).

2.3   Carve Out.

2.3.1   Carve Out.   The Prepetition Replacement Liens on the DIP Collateral, the Prepetition Adequate Protection Superpriority Claim, the DIP Liens and DIP Superpriority Claim shall be subject to the following expenses (collectively, the "**Carve Out**"), subject to Section 2.3.2 below: (a) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under 28 U.S.C. §1930(a); (b) all reasonable fees and

expenses up to $50,000 incurred by a trustee under Section 729(b) of the Bankruptcy Code; and (c) in the event of the occurrence and during the continuance of a DIP Termination Event, the payment of documented unpaid professional fees and disbursements incurred by professionals of the Debtors and any statutory committees appointed in the Cases (collectively, the "**Professionals**"), in each case to the extent allowed by the Court (the "**Allowed Professional Fees**"), (i) in an aggregate amount not to exceed all accrued and unpaid professional fees and disbursements as of the date of the DIP Termination Event (whether allowed as of such date or subsequent thereto), plus (ii) in an aggregate amount not to exceed $2,500,000 (the "**Post-Default Professional Fee Carve Out Cap**") for unpaid professional fees and disbursements that accrue after the date of a DIP Termination Event ("**Post-Default Fees**").

2.3.2    <u>Carve Out Limitations</u>.  Notwithstanding anything to the contrary in this Second Interim Order, none of the Carve Out, the DIP Facility, the DIP Collateral, the Prepetition Collateral, the DIP Loans, the Cash Collateral or any other credit or financial accommodations provided under or in connection with any of the DIP Loan Documents, nor the proceeds of any of the foregoing, shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional, directly or indirectly, or by any of the Debtors, the Committee or any trustee or other estate representative appointed in these Cases (or any successor cases) or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with any challenge to (i) the amount, extent, priority, validity, perfection or enforcement of the indebtedness of, or other claims against, the Debtors owing to the DIP Secured Parties (either in their capacities under the Prepetition Loan Documents or the DIP Loan Documents) or (ii) the collateral securing such indebtedness or the perfection, priority, validity or enforceability of the

1037754.03C-CHISR01A - MSW

liens granted in favor of the DIP Secured Parties (either in their capacities under the Prepetition Loan Documents or the DIP Loan Documents) with respect thereto.

 2.3.3 <u>No Reduction</u>. The Carve Out shall not reduce the amounts payable to the DIP Secured Parties (either in their capacities under the Prepetition Loan Documents or the DIP Loan Documents) under the DIP Loan Documents or under the Prepetition Loan Documents.

 2.3.4 <u>No Direct Obligation to Pay Allowed Professional Fees.</u> None of the DIP Secured Parties (either in their capacities under the DIP Loan Documents or the Prepetition Loan Documents) shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional incurred in connection with these Cases (or any successor cases under any chapter of the Bankruptcy Code). Nothing in this Second Interim Order or otherwise shall be construed to obligate the DIP Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

 2.3.5 <u>Payment of Carve Out on or after a DIP Termination Event</u>. Any payment or reimbursement made on or after the occurrence of the DIP Termination Event in respect of any Post-Default Fees shall permanently reduce the Post-Default Professional Fee Carve Out Cap on a dollar-for-dollar basis.

 2.3.6 <u>Payment of Compensation</u>. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of Professionals or shall affect the right of the DIP Secured Parties to object to the allowance any payment of such fees and expenses. So long as no DIP Termination Event (as defined herein) has occurred and is

continuing, the Debtors shall be permitted to pay Allowed Professional Fees as the same may be due and payable, solely to the extent set forth in the Budget (subject to Permitted Variances).

Section 3.        Use of Cash Collateral; Adequate Protection.

3.1        Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Second Interim Order and the DIP Loan Documents, and in accordance with the Budget (subject to Permitted Variances), the Debtors shall be and are hereby authorized to continue use of the Cash Collateral so long as a DIP Termination Event has not occurred.  Postpetition interest on the remaining outstanding amount of the Prepetition Secured Obligations shall continue to accrue at the applicable rate (which the Debtors and the DIP Lenders have stipulated, as among themselves and without prejudice to the rights of other parties in interest, is the Default Rate) under the Prepetition Credit Agreement.   Nothing in the First Interim Order or this Second Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Second Interim Order, the DIP Loan Documents and in accordance with the Budget (subject to Permitted Variances).  Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall not be used as a basis to challenge any of the Prepetition Secured Obligations, or the extent, validity, enforceability or perfected status of any of the Prepetition Liens.

3.2        Replacement Liens.  As adequate protection for the diminution in value of their interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out, the DIP Secured Parties (each in their capacities under the Prepetition Loan Documents) are hereby granted, pursuant to sections 361 and 363 of

the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all of the DIP Collateral (which shall not include, for the avoidance of doubt, (x) the Excluded Assets (as defined in the DIP Credit Agreement) or (y) the Interim Period Excluded Collateral) (the "**Prepetition Replacement Liens**").   The Prepetition Replacement Liens shall be junior and subordinate only to (A) the Permitted Liens and Claims, and (B) the DIP Liens, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

3.3   <u>Section 507(b) Priority Claims</u>.   As further adequate protection for the diminution in value of their interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out, the DIP Secured Parties (each in their capacities under the Prepetition Loan Documents), to the extent the Prepetition Replacement Liens granted hereunder do not adequately protect the DIP Secured Parties' interests in the Prepetition Collateral (including Cash Collateral), the DIP Secured Parties are hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and (any successor cases) (the "**Prepetition Adequate Protection Superpriority Claim**").   The Prepetition Adequate Protection Superpriority Claim shall be junior only to (A) the Permitted Liens and Claims, and (B) the DIP Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever; <u>provided</u>, <u>however</u>, that the DIP Secured Parties (each in their capacities under the Prepetition Loan Documents) shall not have

recourse against the Interim Period Excluded Collateral or the Excluded Assets (as defined in the

DIP Credit Agreement) in respect of the Prepetition Adequate Protection Superpriority Claim

       3.4     Adequate Protection Reservation.  The receipt by the DIP Secured Parties

(each in their respective capacities under the Prepetition Loan Documents) of the adequate

protection pursuant to Section 3 of this Second Interim Order shall not be deemed an admission

that the interests of the DIP Secured Parties (each in their respective capacities under the

Prepetition Loan Documents) are adequately protected.  Further, nothing contained in this

Second Interim Order shall prejudice or limit the rights of the DIP Secured Parties (each in their

respective capacities under the DIP Loan Documents) to seek additional adequate protection.

       3.5     Reimbursement of Fees and Expenses.  Subject to Section 5.1, the Debtors

shall reimburse all reasonable and documented fees, costs and expenses of the DIP Secured

Parties (each in their capacities under the Prepetition Loan Documents) in connection with

defending the validity, enforceability and priority of the Prepetition Obligations, the Prepetition

Liens or the Remaining Prepetition Secured Claim promptly in accordance with Section 1.8

hereof.

Section 4.     Default; Rights and Remedies; Relief from Stay.

       4.1     DIP Termination Event.  The occurrence of the Maturity Date (as defined

in the DIP Credit Agreement), whether by acceleration or otherwise, shall constitute a "**DIP**

**Termination Event**" hereunder, unless waived in writing by the DIP Secured Parties in

accordance with the DIP Credit Agreement.

       4.2     Rights and Remedies upon a DIP Termination Event.  Subject to the

Waiting Period and the Waiting Period Procedures (each as defined below), and the Debtors'

rights with respect thereto, during the period covered by this Second Interim Order, upon the

occurrence of the Maturity Date, the DIP Loan Agent shall be entitled to take any act or exercise

any right or remedy as provided in this Second Interim Order or any DIP Loan Document, as applicable, including, without limitation, (subject to Section 4.3 below), (a) declaring by a DIP Termination Event Notice (as defined below) the commitment of the DIP Lenders to make DIP Loans and consent to use of Cash Collateral to be terminated, whereupon such commitment and consent shall be terminated, (b) declaring by a DIP Termination Event Notice all unpaid DIP Obligations and Prepetition Secured Obligations, including all interest accrued and unpaid thereon, and all other amounts owing or payable under the DIP Loan Documents, the Prepetition Loan Documents or the Financing Orders to be immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Debtors, or (c) taking any other action or exercise any other right or remedy (including, without limitation, with respect to the liens in favor of the DIP Loan Agent and the DIP Lenders) permitted under the DIP Loan Documents, the Financing Orders or by applicable law.

4.3     Relief from Automatic Stay.

4.3.1     Automatic Relief.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Loan Agent and each DIP Lender (a) to implement the postpetition financing arrangements authorized by this Second Interim Order and pursuant to the terms of the DIP Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition Secured Obligations and the DIP Obligations (or any portion thereof), as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the DIP Loan Documents and

apply such payments to the Prepetition Secured Obligations or DIP Obligations pursuant to the DIP Loan Documents and/or this Second Interim Order, as applicable, in each case, in accordance with the terms of the DIP Loan Documents and this Second Interim Order.

        4.3.2   <u>Relief Subject to the Waiting Period Procedures</u>.  Notwithstanding Section 4.3.1 of this Second Interim Order and the automatic stay provisions of section 362 of the Bankruptcy Code, upon a DIP Termination Event, the DIP Secured Parties shall be entitled to immediate payment of all obligations under the DIP Facility and to enforce the remedies provided for under the DIP Loan Documents or under applicable law, without further notice, motion or application to, hearing before, or order from, the Bankruptcy Court, subject to the following conditions (the "**Waiting Period Procedures**"): (1) the DIP Secured Parties shall notify the Debtors, by email to Debtors' counsel, that a DIP Termination Event has occurred (such notice, a "**DIP Termination Event Notice**" and the date of any such notice, the "**DIP Termination Event Notice Date**"), (2) a waiting period shall commence upon delivery of the DIP Termination Event Notice and shall expire four (4) business days after delivery of the DIP Termination Event Notice Date (the "**Waiting Period**"), (3) during the Waiting Period, the Debtors shall be entitled to seek an emergency hearing before the Bankruptcy Court for the sole purpose of contesting the occurrence of a DIP Termination Event (including, for the avoidance of doubt, contesting the occurrence of any breach, Default or Event of Default alleged to underlie the occurrence of the DIP Termination Event, (4) during the Waiting Period, the Debtors may continue to use the DIP Collateral, including the Cash Collateral, and (5) none of the DIP Secured Parties (each in their respective capacities under the Prepetition Loan Documents or DIP Loan Documents) shall object to any motion filed by the Debtors during the Waiting Period seeking such expedited hearing nor seek to reduce such Waiting Period.   In any hearing

regarding any exercise of rights or remedies (which hearing must take place within the Waiting

Period), the only issue that may be raised by any party in opposition thereto shall be whether, in

fact, a DIP Termination Event has occurred and is continuing, and the Debtors shall not be

entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code,

to the extent such relief would in any way impair or restrict the rights and remedies of the DIP

Loan Agent or the DIP Lenders set forth in this Second Interim Order or the DIP Loan

Documents.

Section 5.    <u>Representations; Covenants; and Waivers.</u>

     5.1    <u>Objections to Prepetition Secured Obligations</u>.

         5.1.1    <u>Objections Procedures</u>.   Notwithstanding anything to the contrary

in this Second Interim Order, any action, claim, defense, complaint, motion or other written

opposition (hereinafter, an "**Objection**") that seeks to object to, or seeks standing to, challenge,

contest or otherwise invalidate, reduce or subordinate, whether by setoff, recoupment,

counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount

of any of the Prepetition Secured Obligations;(b) the extent, legality, validity, perfection or

enforceability of any of the Prepetition Liens and security interests in the Prepetition Collateral;

(c) the Debtors' stipulations set forth in Paragraph F of the First Interim Order or Paragraph G of

this Second Interim Order; or (d) the releases set forth in Section 5.4 hereof, shall be properly

filed with the Court by any Committee or other party in interest with the requisite standing

within sixty (60) calendar days from the entry date of the Final Order; provided, however, that if

the Committee or other party in interest properly files a motion for standing and attaches thereto

its proposed Objection, such sixty (60) calendar day period shall be tolled until such standing

motion is resolved by agreement or by order of the Bankruptcy Court.  If any such Objection is

timely and properly filed and successfully pursued, nothing in this Second Interim Order shall

prevent the Court from granting appropriate relief with respect to the Prepetition Secured Obligations or the DIP Secured Parties' (each in their capacities under the Prepetition Loan Documents) Prepetition Liens on the Prepetition Collateral.

5.1.2    If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (i) the Prepetition Secured Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Liens on and security interest in the Prepetition Collateral shall be deemed legal, valid, perfected, enforceable and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Liens and Claims, and (ii) the DIP Loan Agent and the DIP Lenders (each in the capacity under the Prepetition Loan Documents) and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Loan Documents and shall not be subject to any further objection or challenge by any party at any time.

5.1.3    Nothing contained in this Section 5.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to the DIP Loan Agent or any DIP Lenders in connection with the DIP Loans or the Debtors' use of Cash Collateral or any other postpetition financial and credit accommodations provided by the DIP Loan Agent and the DIP Lenders to the Debtors in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Second Interim Order and the DIP Loan Documents, including, without limitation, the right to call an "Event of Default" under the DIP Loan Documents in connection with the DIP Loans and use of Cash

Collateral during the Second Interim Financing Period, as provided under this Second Interim Order.

5.2     In the event there is a timely and successful Objection and this Court determines that the Roll Up (or any portion thereof) would unduly advantage the DIP Agent and DIP Lenders (each in their capacity under the Prepetition Loan Documents), this Court may, after notice and a hearing, unwind or partially unwind the postpetition protection provided to the DIP Agent and DIP Lenders (in their capacity under the Prepetition Loan Documents) or the pay down of the Prepetition Secured Obligations.

5.3     <u>Collateral Rights</u>.    Until all Prepetition Secured Obligations and DIP Obligations shall have been indefeasibly paid and satisfied in full in cash:

(a)     no other party shall foreclose or otherwise seek to enforce any junior lien or claim in the DIP Collateral; and

(b)     upon and after the declaration of the occurrence of a DIP Termination Event, and subject to the expiration of the Waiting Period, in connection with a liquidation of any of the DIP Collateral, the DIP Loan Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by the Debtors, and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses.  The DIP Secured Parties will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the DIP Loan Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees,

37

rentals or other amounts due for any period prior to the date that the DIP Loan Agent actually

occupies or uses such assets or properties or for any fees, rentals or other amounts that may

become due following the end of the DIP Loan Agent's occupation or use, it being understood

that such fees, rentals and other amounts shall be the responsibility of the Debtors and may be

paid by the Debtors using Cash Collateral, notwithstanding the occurrence of a DIP Termination

Event).

5.4     Releases.   Upon entry of a Final Order approving the Motion, subject to

Section 5.1 above, in consideration of the DIP Secured Parties permitting the Debtors to use the

Prepetition Collateral (including Cash Collateral) and providing other credit and financial

accommodations to the Debtors pursuant to the provisions of the DIP Loan Documents and this

Second Interim Order, each Debtor, on behalf of itself and its successors and assigns,

(collectively, the "**Releasors**"), shall, forever release, discharge and acquit the DIP Loan Agent

and each DIP Lender and their respective successors and assigns, and their present and former

shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys,

employees and other representatives (collectively, the "**Prepetition Releasees**") of and from any

and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action,

indebtedness and obligations, of every kind, nature and description, including, without limitation,

any so-called "lender liability" claims or defenses, that the Releasors had, have or hereafter can

or may have against the Prepetition Releasees as of the date hereof, in respect of events that

occurred on or prior to the date hereof with respect to the Prepetition Secured Obligations, the

Prepetition Loan Documents and any financial accommodations made by the DIP Loan Agent

and/or DIP Lenders (each in their respective capacities under the Prepetition Loan Documents)

pursuant to the Prepetition Loan Documents, the DIP Obligations, the DIP Loan Documents and

any DIP Loans or other financial accommodations made by the DIP Loan Agent and/or the DIP

Lenders to the Debtors pursuant to the DIP Loan Documents.  In addition, upon the repayment of

all DIP Obligations (as defined in the DIP Credit Agreement) owed to the DIP Loan Agent and

the DIP Lenders and the Prepetition Secured Obligations (owed to the DIP Secured Parties in

their capacities under the Prepetition Loan Documents) by the Debtors and termination of the

rights and obligations arising under the DIP Loan Documents (which payment and termination

shall be on terms and conditions consistent with the DIP Loan Documents or otherwise

acceptable to the DIP Loan Agent), the DIP Loan Agent and the DIP Lenders shall be released

from any and all obligations, liabilities, actions, duties, responsibilities and causes of action

arising or occurring in connection with or related to the DIP Loan Documents, this Second

Interim Order or the Final Order (including without limitation any obligation or responsibility

(whether direct or indirect, absolute or contingent, due or not due, primary or secondary,

liquidated or unliquidated) to pay or otherwise fund the Carve Out and/or the Post-Default Fees

in accordance with the terms of this Second Interim Order or otherwise).

Section 6.      Other Rights and DIP Obligations.

6.1      No Modification or Stay of this Second Interim Order.   Any credit

extended under the terms of this Second Interim Order shall be deemed to have been extended in

good faith by the DIP Loan Agent and DIP Lenders, as that term is used in section 364(e) of the

Bankruptcy Code, and the DIP Facility, the DIP Liens and the DIP Superpriority Claims shall be

entitled to the full protection of Bankruptcy Code section 364(e) in the event this Second Interim

Order or any provision thereof or hereof is vacated, reversed or modified on appeal or otherwise.

6.2      Power to Waive Rights; Duties to Third Parties.   The DIP Loan Agent

shall have the right to waive any of the terms, rights and remedies provided or acknowledged in

this Second Interim Order in respect of the DIP Loan Agent and DIP Lenders (the "**DIP Lender**

Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s). Any waiver by the DIP Loan Agent of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, nor a waiver of any other DIP Lender Right, subject the DIP Loan Agent or any DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Loan Agent or any DIP Lender. Notwithstanding anything herein, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law.

6.3     No Unauthorized Disposition of Collateral. The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral (including Cash Collateral), other than in the ordinary course of business pursuant to the terms of this Second Interim Order and the DIP Loan Documents.

6.4     Inventory. Unless otherwise ordered by this Court, the Debtors shall not, without the consent of the DIP Loan Agent, (a) enter into any agreement to return any inventory to any of their creditors for application (by setoff, recoupment or otherwise) against any prepetition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise. For the avoidance of doubt, nothing in this Section 6.4 shall be construed to restrict the Debtors' ability to administer their Customer Programs (as defined in the *Debtors' Motion for Entry of Interim*

*and Final Orders Authorizing Debtors to Honor Certain Prepetition Obligations to Customers and To Continue Customer Programs* [**Docket No 12**] (the "**Customer Programs Motion**") in the ordinary course of business and in accordance with any interim or final order (as applicable) granting the relief requested in the Customer Programs Motion.

6.5     Maintenance of DIP Collateral. Unless the DIP Loan Agent, acting at the direction of the DIP Lenders, otherwise consents in writing, until (a) the payment in full in cash or otherwise acceptable satisfaction of all DIP Obligations and (b) the termination of the DIP Secured Parties' obligations to extend credit under the DIP Facility, the Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents and in each case in accordance with the DIP Loan Documents. Upon entry of this Second Interim Order and to the fullest extent provided by applicable law, the DIP Loan Agent (on behalf of the DIP Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

6.6     Reservation of Rights.   The terms, conditions and provisions of this Second Interim Order are in addition to and without prejudice to the rights of each of the DIP Secured Parties to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the First Interim Order or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral other than as provided in this Second Interim Order or granting of any interest in the DIP Collateral, as applicable, or priority in favor of any other party, to object to applications for allowance and/or payment of compensation of Professionals or other parties

seeking compensation or reimbursement from the Estates or to object to any sale of assets (it

being understood and agreed that the DIP Loan Agent has reviewed and approved the BH APA,

the agreements, schedules and exhibits thereto, and the bid procedures related to it presented to

the DIP Loan Agent prior to the Petition Date, and shall not object to any of the foregoing, so

long as the foregoing shall not have been modified or amended in a manner adverse to the rights

and interests of the DIP Secured Parties without the prior written consent of the DIP Loan Agent,

in its sole and absolute discretion).

      6.7    <u>Binding Effect</u>.

      6.7.1    <u>Immediate Effectiveness; Survival</u>.  The provisions of this Second

Interim Order and the DIP Loan Documents, the DIP Obligations, the Prepetition Adequate

Protection Superpriority Claim, the DIP Loan Superpriority Claim and any and all rights,

remedies, privileges and benefits in favor of each of the DIP Loan Agent and the DIP Lenders

provided or acknowledged in this Second Interim Order, and any actions taken pursuant thereto,

shall be effective immediately upon entry of this Second Interim Order pursuant to Bankruptcy

Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any

such other order, including without limitation any order which may be entered confirming any

plan of reorganization or liquidation, converting one or more of the Cases to any other chapter

under the Bankruptcy Code, or dismissing one or more of the Cases.

      6.7.2    <u>Dismissal</u>.  Any order dismissing one or more of the Cases under

section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349

of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and the DIP Liens on and

security interests in the DIP Collateral and all other claims, liens, adequate protections and other

rights granted pursuant to the terms of this Second Interim Order shall continue in full force and

effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

6.7.3 <u>Modifications After Final Hearing</u>. In the event this Court modifies any of the provisions of this Second Interim Order or the DIP Loan Documents following a Final Hearing, such modifications shall not affect the rights or priorities of DIP Loan Agent and DIP Lenders pursuant to this Second Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations which arises or is incurred or is advanced prior to such modifications, and this Second Interim Order shall otherwise remain in full force and effect.

6.7.4 This Second Interim Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor. This Second Interim Order shall also inure to the benefit of the DIP Secured Parties, the Debtors, and their respective successors and assigns.

6.8 <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>. All postpetition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Loan Documents are made in reliance on this Second Interim Order and, until the DIP Obligations have been indefeasibly paid in full in cash, the Debtors shall not seek to have entered in the Cases, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a) authorizes the use of Cash Collateral of the Debtors in which the DIP Loan Agent or the DIP Lenders have an interest, or the sale, lease or other disposition of property of any Debtor's Estate in which the DIP Loan Agent or the DIP Lenders have a lien or security interest, except as expressly permitted

43

hereunder or in the DIP Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Loan Agent or DIP Lenders hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Loan Agent and DIP Lenders herein; unless, in each instance (x) the DIP Loan Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Loan Agent or any DIP Lender, or (y) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in cash in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents, including, without limitation, all debts and obligations of the Debtors to the DIP Secured Parties which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to the DIP Loan Agent.  The security interests and liens granted to or for the benefit of the DIP Secured Parties hereunder and the rights of the DIP Secured Parties pursuant to this Second Interim Order and the DIP Loan Documents with respect to the DIP Obligations and the DIP Collateral are cumulative and shall not be altered, modified, extended, impaired or affected by any plan of reorganization or liquidation of the Debtors and, if the DIP Loan Agent shall expressly consent in writing that the DIP Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

6.9    No Owner/Operator Liability.  Subject to the entry of the Final Order granting such relief, neither the DIP Loan Agent nor any DIP Lender shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any

similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

       6.10   <u>Conflicts</u>.  In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and the First Interim Order, on the one hand, and this Second Interim Order, on the other hand, the terms and provisions of this Second Interim Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Loan Documents.

       6.11   <u>Objections Overruled</u>.  All objections to the entry of this Second Interim Order are, to the extent not withdrawn, hereby overruled.

       6.12   <u>General Authorization</u>.  The Debtors are authorized to take any and all actions necessary to effectuate the relief granted in this Second Interim Order.

       6.13   <u>Retention of Exclusive Jurisdiction</u>.  This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of the Second Interim Order and the DIP Loan Documents.

Section 7.     <u>Final Hearing and Response Dates.</u>

      The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for January 17, 2019 at 11:00 a.m. before this Court.  The Debtors shall promptly mail copies of this Second Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to counsel to the Committee.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtors: Skadden, Arps, Slate, Meagher, and Flom, LLP, Four Times Square, New York, New York 10036-6522, Attention: Lisa Laukitis, Ron Meisler and Christopher Dressel; (b) counsel for the DIP Loan Agent, Venable LLP, 1270 Avenue of the Americas, New York, New York 10020, Attention: Jeffrey S. Sabin; (c) counsel

to the Committee, Latham and Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attention: Richard A. Levy and Matthew L. Warren; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m., prevailing Eastern time on January 10, 2019.

Dated: New York, New York
        December 24, 2018

/s/ *James L. Garrity, Jr*
UNITED STATES BANKRUPTCY JUDGE