UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re*<br><br>**SYNERGY PHARMACEUTICALS INC.,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-14010 (JLG)<br><br>(Jointly Administered)<br><br>Related Docket No. 17 |

**ORDER (A) APPROVING BIDDING PROCEDURES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS, (B) APPROVING
PROCEDURES FOR THE ASSIGNMENT AND
ASSUMPTION OF EXECUTORY CONTRACTS, AND (C)
GRANTING RELATED RELIEF**

Upon the portion of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), seeking entry of an order (this "**Order**"), (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "**Bidding Procedures**") in connection with the sale of the Acquired Assets, (b) approving the Bid Protections, (c) approving the form and manner of notice of the Auction and the Sale Hearing, (d) scheduling the Sale Hearing and setting other related dates and deadlines, (e) approving procedures for the assumption and assignment of contracts and noticing of related Cure Payments, and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having the power to enter a final order consistent with Article

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Synergy Pharmaceuticals Inc. (5269); Synergy Advanced Pharmaceuticals, Inc. (4596). The address of the Debtors' corporate headquarters is 420 Lexington Avenue, Suite 2012, New York, New York 10170.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First Day Declaration.

III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and this Court having determined that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and upon all of the proceedings in these Chapter 11 cases had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND, CONCLUDED AND DETERMINED THAT:**

A. <u>Bidding Procedures</u>. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Acquired Assets.

B. <u>Stalking Horse Bid Protections</u>. The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the break-up fee equal to $7,000,000 (the "**Break-Up Fee**") and the expense reimbursement of up to $1,950,000 (the "**Expense Reimbursement**," and together with the Break-Up Fee, the "**Bid Protections**") to the Stalking Horse Bidder on the terms set forth in the Stalking Horse Agreement (the "**Original Stalking Horse Agreement**") as modified by this Order (hereinafter, the "**Stalking Horse Agreement**") including:

      (i)      the Bid Protections are the product of negotiations between the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking Horse Agreement (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Acquired Assets to maximize the value of the Debtors' estates;

      (ii)      the Bid Protections are an actual and necessary cost and expense of preserving the value of the respective Debtors' estates;

      (iii)      the Bid Protections are fair, reasonable, and appropriate in light of, among other things, the size and nature of the proposed Sale under the Stalking Horse Agreement, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, including the identification and quantification of assets to be included in the Acquired Assets, and, notwithstanding that the proposed sale is subject to higher or better offers, the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates, their creditors, and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Acquired Assets will be received; and

      (iv)      the protections afforded to the Stalking Horse Bidder by way of the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the Stalking Horse Agreement, and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding, and the Stalking Horse Purchaser is unwilling to commit to purchase the Acquired Assets under the terms of the Stalking Horse Agreement unless the Stalking Horse Bidder is assured the Bid Protections if the Stalking Horse Bidder is not the purchaser of the Debtors' assets pursuant to the Stalking Horse Agreement.

C.    <u>Credit Bidding</u>. In the event that either the Stalking Horse Agreement is terminated or is amended in a manner materially adverse to the rights and interests of the DIP Lenders under the DIP Loan Documents, then the DIP Loan Agent on behalf of itself and the DIP Lenders shall have the right, but not the obligation, to credit bid up to and including the full amount of the DIP Obligations <u>plus</u> the full amount of the Remaining Prepetition Secured Claim for the Acquired Assets in connection with any sale; <u>provided</u>, <u>however</u>, that to the extent any portion of the claims credit bid by the DIP Agent is disallowed, then the DIP Agent must

increase the cash portion of its bid by the amount of such disallowed claim. For purposes of this Order, (i) the "**DIP Loan Documents**" means the DIP Term Loan Agreement attached as Exhibit A to the *Second Interim Order (I) Authorizing The Debtors To Obtain Postpetition Financing (II) Authorizing The Debtors To Use Cash Collateral (III) Granting Liens And Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying The Automatic Stay, (VI) Scheduling A Final Hearing, And (VII) Granting Related Relief* [Dkt. No. 113] (the "**Second Interim Order**"); (ii) the "**DIP Loan Agent**" means CRG Servicing LLC in its capacity as administrative agent and collateral agent under the DIP Loan Documents; (iii) the "**DIP Lenders**" means the lenders party to the DIP Loan Documents; (iv) the "**DIP Obligations**" means any and all obligations of the Debtors arising under the DIP Loan Documents; and (v) the "**Remaining Prepetition Secured Claim**" means the Prepayment Premium and the Back-End Facility Fee stipulated to be owed by the Debtors to the DIP Lenders in their capacity as the Debtors' prepetition secured lenders.

   D. <u>Sale Notice</u>. The notice, substantially in the form attached hereto as **Exhibit 2**, provided by the Debtors regarding the Sale of the Acquired Assets by Auction and Sale Hearing (the "**Sale Notice**") is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Motion and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets for sale; (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement; (vi) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds; (vii) the

commitment by the Stalking Horse Bidder to assume certain liabilities disclosed in the Stalking Horse Agreement (collectively, the "**Assumed Liabilities**"); and (viii) notice of the proposed assumption and assignment of the Assigned Contracts to the Stalking Horse Bidder (or to another Successful Bidder (as defined in the Bidding Procedures) arising from the Auction, if any) and the right, procedures, and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

E. Assumption and Assignment Procedures. The Motion and the Contract Assumption Notice (as defined herein) are reasonably calculated to provide counterparties to the Assigned Contracts with proper notice of the intended assumption and assignment of their executory contracts, any Cure Payments (as defined herein), and the Assumption Procedures (as defined herein), and are appropriate.

F. Stalking Horse Bidder. The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between the Stalking Horse Bidder and the Debtors.

G. Other Findings. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED to the extent set forth herein.

**I.    Important Dates and Deadlines**

2.    **Sale Hearing**. The Sale Hearing will commence on **March 1, 2019, at 11:00 a.m., prevailing Eastern Time**, before the Honorable James L. Garrity, Jr. of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408. The Sale Hearing may be adjourned with the consent of the Stalking Horse Bidder without further notice other than by announcement in open Court or on the Court's calendar. Upon entry of this Order, the Debtors are authorized to perform any obligations set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order.

3.    **Sale Objection Deadline**. Objections, if any, to the Sale Motion and the Sale of the Acquired assets to a Successful Bidder, except objections solely related to the identity of the Successful Bidder, any changes to the Stalking Horse Agreement, and adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder, must be made by **February 15, 2019, at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, objections solely to the identity of the Successful Bidder, changes to the Stalking Horse Agreement, and adequate assurance of future performance must be made by **4:00 p.m., prevailing Eastern Time** on the date that is two days after the conclusion of the Auction (the "**Supplemental Limited Sale Objection Deadline**"). In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline and served on (i) proposed counsel to the Debtors, (ii) counsel to the Stalking Horse

Bidder, and (iii) any other entity on the Master Service List (as defined in the case management order in these Chapter 11 cases (Docket No. 60) (the "**Case Management Order**") and available on the Debtors' case website at https://cases.primeclerk.com/Synergy).

4.  **Response Deadline**. Responses or replies, if any, to timely filed objections to entry of the Sale Order approving (a) a Sale to the Stalking Horse Bidder must be filed by **February 22, 2019, at 4:00 p.m., prevailing Eastern Time** or (b) a Sale to a Successful Bidder that is not the Stalking Horse Bidder must be filed by **9:00 a.m., prevailing Eastern Time on the date of the Sale Hearing**, provided that such deadline may be extended upon the consent of the Court, the Stalking Horse Bidder, and the Debtors pursuant to the Case Management Order.

5.  **Competitive Bidding**. The following dates and deadlines regarding competitive bidding are hereby established:

    a.  **Bid Deadline**: **February 23, 2019, at 4:00 p.m., prevailing Eastern Time**, the deadline by which all Qualified Bids (as defined in the Bidding Procedures) must be **actually received** in writing in electronic format by the parties specified in the Bidding Procedures (the "**Bid Deadline**"); and

    b.  **Auction**: **February 26, 2019, at 10:00 a.m., prevailing Eastern Time**, is the date and time the Auction, if one is needed, will be held at the offices of proposed counsel to the Debtors: Skadden, Arps, Meagher & Flom, 4 Times Square, New York, New York, 10036, or such other place and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids (including the Stalking Horse Bidder) and any official committee appointed in the Debtors' chapter 11 cases and its counsel.

II. **Bidding Procedures and Related Relief**

    A.  Bidding Procedures.

6.  The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved in their entirety, including the right of the DIP Loan Agent on behalf of itself and the DIP Lenders to submit a credit bid in the event the Stalking Horse Agreement is either terminated or is amended

in a manner materially adverse to the rights and interests of the DIP Loan Lenders under the DIP Loan Documents, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale, and any party desiring to submit a higher or better offer for the Debtors' assets must comply with the terms of the Bidding Procedures and this Order. The Bidding Procedures shall also govern the terms on which the Debtors will proceed with the Auction and/or the Sale pursuant to the Stalking Horse Agreement. The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.

  B.  <u>Bid Protections.</u>

  7.  The Bid Protections described in the Bidding Procedures and Motion and set forth in the Original Stalking Horse Agreement are hereby approved as set forth in the Original Stalking Horse Agreement, subject only to the following revisions:

    a.  If the Original Stalking Horse Agreement is terminated pursuant to Section 7.1(b)(x) thereof (*i.e.*, because the Stalking Horse Bidder is not the Successful Bidder at the Auction), the Breakup Fee shall be payable upon the earlier of (a) the consummation of a transaction with the Successful Bidder or any Backup Bidder (as defined in the Bidding Procedures) and (b) the 30th calendar day following the conclusion of the Auction.

    b.  If the Original Stalking Horse Agreement is terminated on account of any of the termination events enumerated in clause (y) of Section 7.2(b) thereof and, within nine months of such termination, the Debtors consummate an Alternative Transaction or enter into a definitive agreement with respect to an Alternative Transaction, the Breakup Fee shall be payable upon the earlier of (a) the consummation of an Alternative Transaction and (b) the 30th calendar day following any Debtor's entry into a definitive agreement with respect to an Alternative Transaction.

    c.  In the event the Breakup Fee and/or the Expense Reimbursement becomes payable prior to the consummation of (a) a sale transaction with a Successful Bidder other than the Stalking Horse Bidder or (b) an Alternative Transaction, the Debtors shall pay the Breakup Fee and/or the Expense Reimbursement, as applicable, using Cash Collateral (as defined in the DIP Loan Documents), and the DIP Loan Documents shall be

     amended to the extent necessary to permit the Debtors to do so. For the avoidance of doubt, this provision shall not be construed as, or be deemed to effect, a waiver of any now- or hereafter-existing Default or Event of Default (as defined in the DIP Credit Agreement).

Except as expressly set forth herein, the terms of the Original Stalking Horse Agreement relating to the Breakup Fee, the Expense Reimbursement and the other rights and remedies of the Debtors and the Stalking Horse Bidder in respect of the termination of the Original Stalking Horse Agreement shall remain unchanged.

  8. If the Stalking Horse Bidder becomes entitled to receive the Bid Protections in accordance with the terms of the Stalking Horse Agreement and this Order: (a) the Debtors are authorized, and directed, to pay the Break-Up Fee and Expense Reimbursement, without further action or order by the Court, in accordance with the terms and conditions of the Stalking Horse Agreement and this Order (and, in the event the Stalking Horse Agreement is terminated pursuant to Section 7.1(b)(ii) thereof, notwithstanding any terms of any cash collateral or debtor-in-possession financing order entered in these Chapter 11 Cases to the contrary), and (b) the Stalking Horse Bidder shall be granted an allowed administrative claim in the Debtors' Chapter 11 case in an amount equal to the Break-Up Fee and Expense Reimbursement under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

  9. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," or other similar fee or payment.

  10. The deposit provided by the Stalking Horse Bidder and all other Qualified Bidders shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

11. If the Stalking Horse Agreement is validly terminated under circumstances where the return of any deposit is applicable and the Bid Protections are payable, the sole remedy of the Stalking Horse Bidder against the Debtors shall be the return of the applicable deposit and the Bid Protections, other than in connection with fraud on the part of, or an intentional breach of the Stalking Horse Agreement by, the Debtors.

12. The Stalking Horse Bidder shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Stalking Horse Agreement or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, *provided*, *however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

### III. Auction

13. The Debtors are authorized, subject to the terms of this Order and the Bidding Procedures, to take actions reasonably necessary, in the discretion of the Debtors, to conduct and implement the Auction.

14. Only the Debtors, the Consultation Parties, and any Qualified Bidder (including the Stalking Horse Bidder), in each case, along with their representatives and counsel, or such other parties as the Debtors shall determine, shall attend the Auction (such attendance to be in person) and only such Qualified Bidders (including the Stalking Horse Bidder) will be entitled to make any Bids at the Auction.

15. The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth in this Order or the Bidding

Procedures, the Debtors may conduct the Auction in the manner they reasonably determine will result in the highest or otherwise best Qualified Bid.

16. Each Qualified Bidder (including the Stalking Horse Bidder) participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

17. The Debtors may (a) select, in their business judgment, pursuant to the Bidding Procedures, the overall highest or otherwise best Qualified Bid and the Successful Bidder, and (b) in accordance with the Bidding Procedures, reject any bid that, in the Debtors' business judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bidding Procedures or (iii) contrary to the best interests of the Debtors and their estates, creditors, interest holders or parties-in-interest.

**IV.    Sale Hearing Notice and Related Relief**

18. The Sale Notice is hereby approved.  Within three (3) business days following the entry of this Order, or as soon as reasonably practicable thereafter (the "**Mailing Date**"), the Debtors will cause the Sale Notice to be served on: (a) any party that has filed a notice of appearance in these Chapter 11 cases; (b) counsel to the Stalking Horse Bidder; (c) any entity on the Master Service List; (d) the Federal Trade Commission; (e) the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice; (f) any parties known or

reasonably believed to have expressed interest in the Acquired Assets or any portion thereof; (g) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Acquired Assets; (h) all parties to executory contracts to be assumed and assigned, or rejected as part of the Sale; (i) all applicable state and local taxing authorities; and (j) each governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder.

19. Additionally, on the Mailing Date or as soon as reasonably practicable thereafter, the Debtors shall publish a notice, substantially in the form of the Sale Notice, on one occasion, in the national edition of *The New York Times*. Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

### V.    Assumption Procedures

20. The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "**Assumption Procedures**") are hereby approved to the extent set forth herein.

21. These Assumption Procedures shall govern the assumption and assignment of all of the Debtors' executory contracts and unexpired leases to be assumed and assigned in connection with the Sale under the Stalking Horse Agreement (each, an "**Assigned Contract**," and, collectively, the "**Assigned Contracts**"), subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (the "**Cure Payments**"):

    a.    **Contract Assumption Notice.** No less than twenty-one (21) calendar days prior to the Sale Objection Deadline (the "**Assumption and Assignment**

        **Service Deadline**"), the Debtors shall serve a notice of contract assumption in substantially the form attached hereto as **Exhibit 3** (the "**Contract Assumption Notice**") via overnight delivery on all counterparties to all potential Assigned Contracts and provide a copy of the same to the Stalking Horse Bidder and the Consultation Parties. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) Debtors' good faith estimates of the Cure Payments (if any) required in connection with the executory contract or unexpired lease, as applicable, (iv) the identity of the Stalking Horse Bidder (as assignee, if applicable), and (v) the Sale Objection Deadline; *provided*, *however*, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or that the stated Cure Payment related to any contract or unexpired lease constitutes a claim against the Debtors or a right against the Stalking Horse Bidder (all rights with respect thereto being expressly reserved). Further, the inclusion of a contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such contract or unexpired lease, as applicable, will ultimately be assumed and assigned.

    b.    **Cure Payments and Adequate Assurance of Future Performance.** The payment of the applicable Cure Payments by the Debtors or Stalking Horse Bidder (or other Successful Bidder), as applicable, shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

    c.    **Additions.** The Stalking Horse Bidder may designate, up to the Designation Deadline (as defined in the Stalking Horse Agreement), additional executory contracts and/or unexpired leases as agreements to be assumed by the Debtors and assigned to the Stalking Horse Bidder (the "**Additional Assigned Contracts**"). Within three (3) business days of notice of the Additional Assigned Contracts by the Stalking Horse Bidder, the Debtors shall serve a Contract Assumption Notice on each of the counterparties to such Additional Assigned Contracts and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign the counterparty's executory contract or unexpired lease, as applicable, to the Stalking Horse Bidder, and (ii) the corresponding Cure Payment.

    d.    **Eliminations.** The Stalking Horse Bidder may remove any executory contract or unexpired lease, as applicable, to be assumed by the Debtors and assigned to the Stalking Horse Bidder (the "**Eliminated Agreements**") until the Designation Deadline. Following the Stalking Horse Bidder's removal of an Eliminated Agreement, the Debtors shall as soon as reasonably practicable thereafter serve a notice (a "**Removal Notice**") on each of the impacted counterparties and their counsel of

record, if any, indicating that the Debtors no longer intend to assign the counterparty's contract or unexpired lease, as applicable, to the Stalking Horse Bidder in connection with the Sale.

e. **Supplemental Contract Assumption Notice.** Although the Debtors intend to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover certain executory contracts inadvertently omitted from the Assigned Contracts list or Successful Bidders may identify other executory contracts that they desire to assume and assign in connection with the Sale. Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse Agreement, or as otherwise agreed by the Debtors and the Successful Bidder, at any time after the Assumption and Assignment Service Deadline and before the closing of a Sale, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such Assigned Contracts and their counsel of record, if any, and the Consultation Parties; *provided*, *however*, the Debtors may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice.

f. **Objections.** Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and the Case Management Order, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by proposed counsel to the Debtors and counsel to the Stalking Horse Bidder on or before 14 days after service of the Contract Assumption Notice (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice. If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then the deadline to object to assumption and assignment solely with respect to the adequate assurance of future payment shall be extended to the date that is two days after the conclusion of the Auction, but any such objection must be received before the start of

the Sale Hearing; *provided*, *however*, that the deadline to object to the Cure Payment shall not be extended.

22. Any party failing to timely file an objection to the cure amount, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or Successful Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Bidder or Successful Bidder, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

23. The Debtors shall have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment.

**VI.    Other Related Relief**

24. Any objections to the entry of this Order and the relief granted herein that have not been withdrawn, waived, resolved or settled, and all reservations of rights included therein, are hereby overruled.

25. Any obligations of the Debtors set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein. The Original Stalking Horse Agreement shall be amended to clarify that the Debtors' directors' and officers' insurance policies and proceeds thereof are "Excluded Assets" as defined in the Original Stalking Horse Agreement.

26. Unless otherwise expressly waived herein or in the Bidding Procedures, nothing in this Bidding Procedures Order or the Bidding Procedures shall constitute a waiver of, or be construed to waive, any of the DIP Agent's or DIP Lenders' rights or remedies under the *Second Interim Order*, the Prepetition Loan Documents (as defined in the Second Interim Order), the DIP Loan Documents (as defined in the Second Interim Order), the First Interim Order (as defined in the Second Interim Order) or any Final Order (as defined in the Second Interim Order) that may be entered by the Bankruptcy Court with respect to the DIP Facility.

27. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

28. To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

29. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

30. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: New York, New York
      January 7, 2019

                                                             /s/ *James L. Garrity, Jr.*
                                                             Hon. James L. Garrity, Jr
                                                             United States Bankruptcy Judge