**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x
                                                           :
In re:                                                     :        Chapter 11
                                                           :
SYNERGY PHARMACEUTICALS INC., et al.,                      :        Case No. 18-14010 (JLG)
                                                           :
        Debtors.[1]                                        :        (Jointly Administered)
                                                           :
                                                           :        Related Docket Nos. 15, 50 & 113
------------------------------------------------------------ x

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

Upon the motion **[Docket No. 15]** (the "**Motion**")[2] of Debtors Synergy Pharmaceuticals

Inc. ("**Synergy Pharmaceuticals**" or the "**Borrower**") and Synergy Advanced Pharmaceuticals,

Inc. ("**Synergy Advanced**" or the "**Guarantor,**" and together with Synergy Pharmaceuticals, the

"**Debtors**") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

364(e), 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002,

4001, 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and Rule 4001 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

**Bankruptcy Rules**"), seeking, among other things:

> (1)     authorization for the Borrower to obtain, and for the Guarantor to guarantee,
>          unconditionally, on a joint and several basis, postpetition financing consisting of a

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Synergy Pharmaceuticals Inc. (5269); Synergy Advanced Pharmaceuticals, Inc. (4596). The address of the Debtors' corporate headquarters is 420 Lexington Avenue, Suite 2012, New York, New York 10170.

[2]   Capitalized terms used but not defined in this Final Order shall have the same meanings ascribed to such terms in the DIP Credit Agreement (as defined below) or, if not defined therein, in the Motion.

senior secured, super-priority multiple delayed draw term loan credit facility (the "**DIP Facility**"), on and subject to the terms and conditions set forth in the *Senior Secured, Priming and Superpriority Debtor-in-Possession Credit Agreement*, a copy of which is attached hereto as **Exhibit A-1** (as the same may be amended,[3] restated, supplemented, waived, or otherwise modified from time to time, the "**DIP Credit Agreement**" and together with any other related agreements, documents, security agreements or pledge agreements, the "**DIP Loan Documents**"), made by and among the Borrower, the Guarantor, CRG Servicing LLC, as administrative agent and collateral agent (in such capacities, together with its successors and assigns, the "**DIP Loan Agent**") and each of the lenders party thereto (the "**DIP Lenders**" and, together with the DIP Loan Agent, the "**DIP Secured Parties**"), in an aggregate principal amount of **$159,107,870.46** (the "**DIP Loans**"), comprised of (i) approximately **$114,107,870.46** of loans (the "**Roll-Up DIP Loans**") representing a partial "roll-up" of the Prepetition Secured Obligations equal to the sum of (a) outstanding principal <u>plus</u> (b) accrued and unpaid interest, including accrued and unpaid postpetition interest at the Default Rate specified in the Prepetition Loan Agreement from the Petition Date (as defined below) through and including the date of the entry of this Final Order <u>plus</u> (c) any and all unreimbursed costs, fees and expenses of the DIP Secured Parties (in their capacities under the Prepetition Loan Documents, hereinafter referred to as the "**Prepetition Lenders**") incurred through entry of the Final Order; and (ii) **$45,000,000** of "new money" loans (the "**New Money DIP Loans**"), $8,000,000 of which (the "**First Initial DIP Advance**") was advanced by the DIP Lenders to the Borrower pursuant to the Second Interim Order (as defined below), $12,000,000 of which (the "**Second Initial DIP Advance**") was advanced by the DIP Lenders to the Borrower pursuant to the Third Interim Order (as defined below) and $25,000,000 of which will be advanced by the DIP Lenders to the Borrower upon entry of this Final Order (the "**Final DIP Advance**"), subject to the terms and conditions of the DIP Loan Documents, to be used by the Borrower in accordance with this Final Order and the Budget (as defined below) (subject to Permitted Variances (as defined below));

(2)    authorization for Debtors, immediately upon entry of this Final Order, to execute, deliver, and enter into the Third Amendment to DIP Credit Agreement (the "**Third DIP Amendment**" and to perform all of the Debtors' respective obligations thereunder and under DIP Loan Documents;

---

[3] The First Amendment to Senior Secured, Priming and Superpriority Debtor-in-Possession Credit Agreement, dated as of January 11, 2019, is attached hereto as Exhibit **A-2**; the Second Amendment to Senior Secured, Priming and Superpriority Debtor-in-Possession Credit Agreement, dated as of January 17, 2019 is attached as Exhibit **A-3** hereto; the form of the Third Amendment (as defined below) to the DIP Credit Agreement is attached as Exhibit **A-4** hereto.

(3)     authorization for the Debtors, subject to the terms and conditions of the DIP Loan Documents and this Final Order, to implement a partial "roll-up" of the Prepetition Secured Obligations, including accrued and unpaid postpetition interest at the Default Rate specified in the Prepetition Loan Agreement from and after the Petition Date through the date of entry of this Final Order (the "**Final Order Date**") and all applicable unreimbursed costs, fees and expenses of the Prepetition Lenders incurred through the Final Order Date, but not including the Prepayment Premium or the Back-End Facility Fee (the Prepayment Premium and the Back-End Facility Fee are hereinafter collectively referred to as the "**Remaining Prepetition Secured Claims**") in the aggregate amount of approximately **$62,107,870.46**[4] and to deem such rolled-up Prepetition Secured Obligations to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents;

(4)     authorization for the Debtors, immediately upon entry of this Final Order, to use proceeds of the Final DIP Advance as permitted in the DIP Loan Documents and consistent with this Final Order and the Budget (subject to Permitted Variances);

(5)     immediately upon entry of this Final Order, subject to the Carve Out (as defined below), with respect to all claims of the DIP Loan Agent and DIP Lenders under the DIP Facility with respect to the DIP Loans and the DIP Obligations, grant to the DIP Loan Agent and the DIP Lenders:

    a.   pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority claim status in the Cases (as defined below), which claims shall be payable from and have recourse to all DIP Collateral (as defined below) including avoidance actions and any proceeds thereof that are not purchased in an Acceptable 363 Sale (as defined below) but excluding (i) Avoidance Actions and any proceeds thereof that are purchased in an Acceptable 363 Sale and (ii) the Debtors' interests in directors and officers insurance policies and any proceeds thereof (the items described in the foregoing clauses (i) and (ii) , together, the "**Excluded Collateral**");

    b.   pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first priority lien on all DIP Collateral (not including the Excluded Collateral) subject only to Prior Senior Liens;

    c.   pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior lien on all property of the Debtors that is subject to a Prior Senior Lien; and

---

[4] Amount calculated as of February 26, 2019.

d.  pursuant to section 364(d)(1) of the Bankruptcy Code a perfected first priority, senior priming lien on all of the property of the Debtors (including, without limitation, inventory, receivables, equipment, machinery, intellectual property, general intangibles, real property, capital stock of subsidiaries, membership interests in limited liability companies and avoidance actions and the proceeds thereof not purchased in an Acceptable 363 Sale) that is subject to the existing liens that secure the obligations of the Debtors to the Prepetition Lenders under or in connection with the Prepetition Loan Documents and the Prepetition Secured Obligations;

(6)  approval of certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(7)  with respect to the indebtedness represented by the Remaining Prepetition Secured Claims, acknowledgment by the Debtors that such indebtedness constitutes, as of the Petition Date, a valid and enforceable prepetition secured claim on behalf the Prepetition Lenders;

(8)  immediately upon entry of this Final Order, authorization for the Debtors to continue to use the Cash Collateral securing the Prepetition Secured Obligations and all other Prepetition Collateral in which agent under the Prepetition Loan Documents (the "**Prepetition Agent**") and/or the Prepetition Lenders have an interest consistent with the Budget (subject to Permitted Variances) until the Maturity Date (as defined in the DIP Loan Documents);

(9)  as adequate protection for the use of the Cash Collateral and other Prepetition Collateral securing the Prepetition Secured Obligations and the priming of the Prepetition Liens by virtue of making the New Money DIP Loans, immediately upon entry of this Final Order, granting to the Prepetition Agent and the Prepetition Lenders with respect to the Remaining Prepetition Secured Claims, to the extent of any diminution in the value of the Prepetition Collateral:

a.  superpriority administrative expense claim status;

b.  replacement liens on all DIP Collateral, junior only to (x) the liens of the DIP Loan Agent and the DIP Lenders and (y) Prior Senior Liens;

c.  payment on a monthly basis of postpetition interest accruing at the Default Rate (as specified in the Prepetition Loan Agreement) from the Final Order Date through the earlier of (i) the effective date of a plan of reorganization or liquidation for the Debtors (the "**Plan Effective Date**") and (ii) May 8, 2019; and

       d.   reimbursement of all fees, costs and expenses incurred in connection with (i) defending the validity and enforceability of the Prepetition Secured Obligations, the Prepetition Liens or the Remaining Prepetition Secured Claims and (ii) subsequent to payment in full of all DIP Obligations, participation in these Cases (as defined below) until the date on which distributions to unsecured creditors are first made pursuant to an Acceptable Plan;

(10)    effective upon entry of this Final Order, the waiver of the Debtors' right to assert a 506(c) claim on account of amounts covered by the Carve Out (as defined below);

(11)    effective upon entry of this Final Order, the waiver of the Debtors' right to assert claims to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code, any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code and the right to request marshalling (or any similar doctrine) with respect to the DIP Collateral.

(12)    modification of the automatic stay to the extent hereinafter set forth; and

(13)    granting the Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on December 13, 2018 (the "**First Interim Hearing**"), the second interim hearing having been held by this Court on December 21, 2018 (the "**Second Interim Hearing**"), the third interim hearing having been held by this Court on January 17, 2019 (the "**Third Interim Hearing**"), and a final hearing having been held by this Court on February 21, 2019 (the "**Final Hearing**" and together with the First Interim Hearing, the Second Interim Hearing and the Third Interim Hearing, the "**Hearings**"), and upon the record made by the Debtors at the Hearings, including the Motion, the First Day Declaration, and the filings and pleadings in the above-captioned chapter 11 proceedings (the "**Cases**"), the Court having found that the relief requested in the Motion is fair and reasonable and is in the best interests of Debtors, their estates (collectively, the "**Estates**"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses; and

appropriate notice of the Motion, the relief requested therein, and the Final Hearing (the "**Notice**") having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Bankruptcy Rules on (i) counsel to the DIP Loan Agent, (ii) the U.S. Trustee (as defined below), (iii) counsel to the Official Committee of Unsecured Creditors appointed in these Cases (the "**Creditors' Committee**"), (iv); the Internal Revenue Service, (v) the Securities and Exchange Commission, (vi) the Stalking Horse Bidder (as defined in the First Day Declaration), (vii) counsel to the Official Committee of Equity Security Holders appointed in these Cases (the "**Equity Committee**"), and (viii) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded prepetition liens or security interests against any of the Debtors' assets; and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     <u>Petition Date</u>.  On December 12, 2018 (the "**Petition Date**"), each Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     <u>Disposition</u>.  The Motion is granted on a final basis in accordance with the terms of this Final Order.  Any objections to the Motion with respect to the entry of the Final Order that have not been withdrawn, waived or settled are hereby denied and overruled on the merits.

C.     <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a

"core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases

and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory

and legal predicates for the relief sought in the Motion are sections 105, 361, 362, 363, 364,

503 and 507 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001, 6003 and 9014 and Local

Bankruptcy Rule 4001.

        D.      Committee Formations. On December 20, 2018, the United States Trustee for

Region 2 (the "**U.S. Trustee**") appointed the Creditors' Committee under section 1102 of the

Bankruptcy Code.  On January 29, 2019, the U.S. Trustee appointed the Equity Committee under

Section 1102 of the Bankruptcy Code.

        E.      The First, Second and Third Interim Orders.

                (i)     On December 13, 2018, the Court entered that certain First Interim

Order (i) Authorizing the Debtors to Obtain Postpetition Financing (ii) Authorizing the Debtors

to Use Cash Collateral, (iii) Granting Liens and Providing Superpriority Administrative Expense

Status, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling a

Final Hearing and (vii) Granting Related Relief **[Docket No. 50]** ("**First Interim Order**").

Pursuant to the First Interim Order, the Debtors were authorized to, among other things, use Cash

Collateral in accordance with the Budget for the Initial Interim Cash Collateral Period (as

defined in the First Interim Order).

                (ii)    On December 24, 2018, the Court entered that certain Second

Interim Order (i) Authorizing the Debtors to Obtain Postpetition Financing (ii) Authorizing the

Debtors to Use Cash Collateral, (iii) Granting Liens and Providing Superpriority Administrative

Expense Status, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi)

Scheduling a Final Hearing and (vii) Granting Related Relief **[Docket No. 113]** ("**Second**

Interim Order"). Pursuant to the Second Interim Order, the Debtors were authorized to, among other things, (i) use Cash Collateral in accordance with the Budget so long as a DIP Termination Event has not occurred, (ii) enter into the DIP Loan Documents; (iii) borrow the First Initial DIP Advance ($8,000,000) pursuant to, and in accordance with, the DIP Loan Documents and (iv) implement a partial roll-up of $16,000,000 of Prepetition Secured Obligations.

(iii)    On January 17, 2019, the Court entered that certain Third Interim Order (i) Authorizing the Debtors to Obtain Postpetition Financing (ii) Authorizing the Debtors to Use Cash Collateral, (iii) Granting Liens and Providing Superpriority Administrative Expense Status, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling a Final Hearing and (vii) Granting Related Relief **[Docket No. 250]** ("**Third Interim Order**"). Pursuant to the Third Interim Order, the Debtors were authorized to, among other things, (i) use Cash Collateral in accordance with the Budget so long as a DIP Termination Event has not occurred, (ii) enter into the DIP Loan Documents; (iii) borrow the Second Initial DIP Advance ($12,000,000) pursuant to, and in accordance with, the DIP Loan Documents and (iv) implement an additional partial roll-up of $36,000,000 of Prepetition Secured Obligations.

F.    Settlement Agreement.    On February 21, 2019, a hearing was held (the "**Settlement Hearing**") on the *Debtors' Motion For Entry of Order Approving Settlement of Objections to Prepetition Secured Obligations And Prepetition Liens* **[Dkt. No. 312]** (the "**Settlement Motion**") and upon the record made by the Debtors at the Settlement Hearing, including the Settlement Motion, and upon this Court's decision of February 22, 2019 read on the record, this Court granted the relief requested in the Settlement Motion and approved, pursuant to Bankruptcy Rule 9019, the terms of the settlement among the Debtors, the Prepetition Lenders and the Creditors' Committee (the "**Settlement Agreement**").

G.    Notice.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Hearings and the relief granted under the First Interim Order, the Second Interim Order, the Third Interim Order and this Final Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and 4001(c).

H.    Debtors' Acknowledgments and Agreements/Termination of Challenge Period.

(i)    In requesting the DIP Facility, and in exchange for, and as a material inducement to, the DIP Lenders and the Prepetition Lenders to enter into the DIP Loan Documents, provide the DIP Facility and allow use of their Cash Collateral, as applicable, after consultation with their attorneys and financial advisors, the Debtors permanently and irrevocably reaffirm, readmit, re-stipulate, re-acknowledge and agree to the Debtors' Acknowledgments and Agreements contained in paragraph F of the First Interim Order.

(ii)    This Court having approved the Settlement Agreement pursuant to Bankruptcy Rule 9019, (A) the Debtors, the Creditors' Committee, the Equity Committee and all other parties-in-interest are bound by the terms of the Settlement Agreement, (B) the Prepetition Secured Obligations, including the Remaining Prepetition Secured Claims, are indefeasible, valid and enforceable obligations of the Debtors and the Guarantors, (C) the liens securing such Prepetition Secured Obligations are valid, enforceable, first priority liens on the Prepetition Collateral, subject only to the liens of the DIP Loan Agent (and the DIP Lenders) and the Prior Senior Liens and (D) the challenge period set forth in Section 3.1 of the First Interim Order, Section 5.1 of the Second Interim Order and Section 5.1 of the Third Interim Order is terminated and neither the Creditors' Committee, the Equity Committee nor any other party in interest may file an Objection or otherwise challenge (1) the existence, validity or amount of any of the

Prepetition Secured Obligations; (2) the extent, legality, validity, perfection or enforceability of any of the Prepetition Liens and security interests in the Prepetition Collateral; (3) the Debtors' stipulations set forth in Paragraph F of the First Interim Order, Paragraph G of the Second Interim Order, Paragraph G of the Third Interim Order or Paragraph H of this Final Order; or (4) the waivers and releases set forth in Section 5 hereof .

     I.    <u>Findings Regarding the DIP Financing and Use of Cash Collateral</u>.

     (i)    <u>Postpetition Financing</u>.  The Debtors have requested from each of the DIP Loan Agent and the DIP Lenders, and the DIP Loan Agent and DIP Lenders are willing to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in the DIP Loan Documents, the First Interim Order, the Second Interim Order, the Third Interim Order, this Final Order and the Budget, respectively.

     (ii)    <u>Need for Postpetition Financing</u>.  The Debtors do not have sufficient available sources of working capital, including Cash Collateral, to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all stakeholders of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Loan Agent and DIP Lenders as set forth in this Final Order and the DIP Credit Agreement, as applicable, is vital to the preservation and maintenance of the going concern values of the Debtors.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the

disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' Estates in order to maximize the recovery to all stakeholders of the Estates.

(iii)    <u>No Credit Available on More Favorable Terms</u>.  The Debtors are unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under sections 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to sections 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code, without granting liens on assets.  The Debtors have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by each of the DIP Loan Agent and DIP Lenders pursuant to the DIP Loan Documents.

(iv)    <u>Budget</u>.  The Debtors prepared and delivered to the DIP Secured Parties a revised 13-week budget for the period commencing on the Petition Date through and including April 30, 2019, a copy of which is attached hereto as **Exhibit B** (the "**Budget**").  The Budget sets forth all forecasted (i) cash receipts of the Debtors (the "**Cash Receipts**"), (ii) cash operating disbursements of the Debtors (the "**Cash Operating Disbursements**") and (iii) non-operating, bankruptcy-related cash disbursements of the Debtors (the "**Cash Bankruptcy Disbursements**"). The Budget shall be approved by the DIP Loan Agent in its sole and absolute discretion and may be modified by the DIP Loan Parties with the written consent of the DIP Loan Agent in its sole and absolute discretion without further order of the Court, provided that (A) the total amount of funding provided pursuant to the Budget shall not exceed the total amount of the DIP Facility authorized by each of the Second Interim Order, the Third Interim Order and this Final Order, as applicable and (B) the reasonable and documented professional fees and expenses incurred by the DIP Secured Parties (in their capacities under the Prepetition

Loan Documents and the DIP Loan Documents) shall not be subject to a cap. Compliance with the Budget will be measured every week starting with the third week following the Petition Date for the period beginning as of the week of the Petition Date and ending the week prior to the week on which compliance is measured.  For purposes of illustration, on the third week following the Petition Date, the Debtors' compliance with the Budget for the first two weeks following the Petition Date shall be measured.  Each date on which compliance with the Budget is measured is referred to herein as a "**Testing Date**".  The Debtors believe that the Budget is reasonable under the facts and circumstances. The DIP Secured Parties are relying upon the Debtors' agreement to comply with the Budget, subject to Permitted Variances, and this Final Order in determining to allow the use of their Cash Collateral.

(v)    Variance.  As of any applicable Testing Date, (a) the cumulative Cash Receipts may vary from the Budget by no more than (1) 25.00% for the first six-week period (and each week thereof) beginning as of the week of the Petition Date, (2) 20.00% for the first seven, eight and nine-week period beginning as of the week of the Petition Date, (3) 15.00% for the first ten and eleven-week period beginning as of the week of the Petition Date and (4) 10.00% for the first twelve-week period and all subsequent weeks of the period beginning as of the week of the Petition Date (the "**Cash Receipt Variance**"), (b) the cumulative Cash Operating Disbursements may vary from the Budget by no more than the following: (1) 20.00% for the first four-week period (and each week thereof), beginning as of the week of the Petition Date, (2) 15.00% for the first five-week period beginning as of the week of the Petition Date, and (3) 10.00% for the first six-week period and all subsequent weeks of the period beginning as of the week of the Petition Date (the "**Cash Operating Variance**"),provided, however, that for each Testing Date occurring on or after February 15, 2019, the forecasted cumulative Cash

Operating Disbursements shall, for purposes of the applicable Variance Report, be reduced by $3,200,000 and (c) the cumulative Cash Bankruptcy Disbursements for the thirteen (13)-week period beginning as of the week of the Petition Date shall not exceed the amount of set forth in the Budget with respect thereto (the "**Cash Bankruptcy Disbursement Cap**"), subject to a variance of no more than 10% (the "**Cash Bankruptcy Disbursement Variance**" and together with the "**Cash Receipt Variance**" and the Cash Operating Variance, the "**Permitted Variances**"). For the avoidance of doubt, the Budget shall not be construed as a limitation on the allowance of professional fee claims. The Debtors shall be deemed to be in compliance with the Budget for all purposes under the DIP Loan Documents, and this Final Order unless, as of any applicable date of determination, the Debtors' (x) cumulative Cash Receipts, (y) cumulative Cash Operating Disbursements, or (z) cumulative Cash Bankruptcy Disbursements, as applicable, vary from the Budget by more than the applicable Permitted Variance as measured on any applicable Testing Date (it being understood and agreed that no Testing Date with respect to cumulative Cash Bankruptcy Disbursements shall occur prior to the end of the 13-week period beginning the week of the Petition Date); provided, however, that with respect to cumulative Cash Receipts, the DIP Loan Parties shall not be deemed to have failed to comply with the Budget unless the Debtors' cumulative Cash Receipts fall beneath the amounts set forth in the Budget as measured on any two consecutive Testing Dates during the first six week period beginning as of the Petition Date.  After the first three weeks following the Petition Date, the Debtors shall provide the DIP Loan Agent (with a copy to counsel to the Committee and counsel to the Equity Committee) with weekly and cumulative variance reporting on a line item basis for Cash Receipts, Cash Operating Disbursements and Cash Bankruptcy Disbursements, which reporting shall detail the variance, if any, of actual cash disbursements and actual cash receipts

from the Budget and provide an explanation of any per line item variance greater than 5.00%. All references to the Budget in the First Interim Order, the Second Interim Order, the Third Interim Order or this Final Order shall be construed to be qualified by the phrase "subject to Permitted Variances."

(vi)    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.    Based upon the pleadings and proceedings of record in the Cases, the terms of the DIP Facility (including the Roll-Up), the use of the Prepetition Collateral (including Cash Collateral), the First Interim Order, the Second Interim Order, the Third Interim Order and this Final Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the DIP Loan Documents, the First Interim Order, the Second Interim Order, the Third Interim Order and this Final Order have been negotiated in good faith and at arms' length by and among the Debtors and the DIP Loan Agent, with all parties being represented by counsel.  Any credit extended under the terms of the Second Interim Order, the Third Interim Order and/or this Final Order shall be deemed to have been extended in good faith by the DIP Loan Agent and DIP Lenders, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event the Second Interim Order, the Third Interim Order, this Final Order or any provision thereof or hereof is vacated, reversed or modified on appeal or otherwise.

(vii)    <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their stakeholders and

their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and ongoing operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' stakeholders, and (3) avoid immediate and irreparable harm to the Debtors, their stakeholders, their businesses, their employees, and their assets.

(viii)   Proposed Section 363 Sale.  The Debtors contemplate utilizing their Cases to effectuate the sale of all or substantially all of their assets under section 363 of the Bankruptcy Code, pursuant to the terms and conditions set forth in the DIP Credit Agreement (as more specifically defined therein, an "**Acceptable 363 Sale**").  In connection therewith, on the Petition Date, the Debtors filed a motion **[Docket No. 17]** seeking an order (i) approving procedures to govern the rules and process of the Acceptable 363 Sale, and (ii) approving the Acceptable 363 Sale. In connection therewith, the Debtors have entered into that certain Asset Purchase Agreement (as amended, restated, modified, or supplemented, from time to time, the "**BH APA**") with Bausch Health Companies Inc. and its wholly-owned subsidiary, Bausch Health Ireland Limited (collectively, the "**Stalking Horse Bidder**"), to purchase all or substantially all of the DIP Collateral on the terms and conditions set forth therein.  By order, dated January 7, 2019 (the "**Bidding Procedures Order**") **[Docket No. 181]**, this Court approved the procedures governing the Acceptable 363 Sale.

(ix)   The Plan.  The Debtors intend to solicit and prosecute a joint chapter 11 plan of liquidation, pursuant to the terms and conditions set forth in the DIP Credit Agreement (as amended) (as more specifically defined therein, an "**Acceptable Plan**"), substantially concurrently with the sale process to ensure a timely emergence from bankruptcy.   An Acceptable Plan and related disclosure statement were filed on December 21, 2018 at Docket

Nos. 111 and 112, respectively, as amended by the *Amended Joint Plan of Reorganization of Synergy Pharmaceuticals, Inc. and its Debtor Affiliate* and related amended disclosure statement filed on January 24, 2019 [**Dkt. Nos. 267 and 269**, respectively], as to be further amended to reflect the terms of the Settlement Agreement by a *Second Amended Joint Plan of Reorganization of Synergy Pharmaceuticals, Inc. and its Debtor Affiliate* and related amended disclosure statement to be filed on or before February 28, 2019.

(x)    Roll-Up. As soon as commercially practicable (but in any event, within one (1) Business Day) following entry of this Final Order, $**62,107,870.46**[5] of the Roll-Up DIP Loans will be used to reduce, on a dollar-for-dollar basis, a portion of the Prepetition Secured Obligations, including prepetition accrued and unpaid interest and accrued and unpaid postpetition interest at the Default Rate under the Prepetition Loan Documents from the Petition Date through and including the date of the entry of this Final Order (which shall not include, for the avoidance of doubt, any portion of the Remaining Prepetition Secured Claims).   The Prepetition Secured Obligations so "rolled up," together with the Prepetition Secured Obligations "rolled up" pursuant to the Second Interim Order and the Third Interim Order, shall be deemed to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents (collectively, the "**Roll-Up**").   The remainder of the Prepetition Secured Obligations, including (A) all prepetition accrued and unpaid interest, and accrued and unpaid postpetition interest at the Default Rate under the Prepetition Loan Documents from the Petition Date through and including the date of the entry of the Final Order that was not included in the Initial Roll-Up, plus (B) any and all unreimbursed costs, fees and expenses of the Prepetition

---

[5] Amount calculated as of February 26, 2019.

Secured Parties incurred in accordance with the Prepetition Loan Documents, but not including the amount of the Remaining Prepetition Secured Claims as of the Petition Date, shall be reduced on a dollar-for-dollar basis with the balance of the Roll-Up DIP Loans upon entry of this Final Order (the "**Final Roll-Up**", together with the Interim Roll-Up, the "**Roll-Up**").  Inclusion of the Roll-Up in the DIP Obligations was necessary for the DIP Secured Parties to agree to the DIP Facility and the use of Cash Collateral.

(xi)    Debtors Will Not Challenge Credit Bid Rights. No Debtor or Debtor's affiliate shall object to any DIP Secured Parties' right (in its capacity under the DIP Loan Documents and/or under the Prepetition Loan Documents) to credit bid up to the full amount of the DIP Obligations, plus the full amount of the Remaining Prepetition Secured Claims, including, without limitation, any accrued interest and expenses, in connection with an Acceptable 363 Sale or an Acceptable Plan, as applicable, provided, however, that the DIP Loan Agent shall not be entitled to exercise such right to credit bid unless and until the BH APA is terminated or modified in a manner adverse in any material respect to the DIP Secured Parties, provided that such credit bid rights are subject to the terms of the Bidding Procedures Order.

(xii)    Use of Cash Collateral.  The Prepetition Lenders consent to the Debtors' use of their Cash Collateral, in accordance with the First Interim Order, the Second Interim Order, the Third Interim Order, this Final Order and the Budget (subject to Permitted Variances); provided, however, that the Debtors shall operate their cash management system consistent with the final order entered by the Bankruptcy Court [**Dkt. No. 253**] granting the Debtors' "first-day" motion to continue the use of its cash management system (the "**Cash Management Order**").

(xiii)    Adequate Protection. The Prepetition Lenders are entitled pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against

any diminution in value of their respective interests in the Prepetition Collateral (including the

Cash Collateral), to the extent set forth in the First Interim Order, the Second Interim Order, the

Third Interim Order and this Final Order.

(xiv)    Immediate Entry.  Sufficient cause exists for immediate entry of this Final

Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Cases has filed or

made an objection to the relief sought in the Motion or the entry of this Final Order, or any

objections that were made (to the extent such objections have not been withdrawn) are hereby

overruled.

Based upon the foregoing, and upon the record made before the Court at the Final

Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy

Rule 4001(c)(2) to the extent provided in this Final Order.  Except as otherwise expressly

provided in this Final Order, any objection to the entry of this Final Order that has not been

withdrawn, waived, resolved or settled is hereby denied and overruled on the merits.

1.2    Ratification of the First Interim Order, the Second Interim Order and the

Third Interim Order.  The terms of the First Interim Order, the Second Interim Order and the

Third Interim Order are hereby ratified and confirmed except to the extent amended or modified

by this Final Order.

1.3    Authorization to Borrow and Use Loan Proceeds.  Subject to the terms and

conditions of this Final Order and the DIP Loan Documents (as amended), the Debtors are

hereby authorized and empowered to immediately borrow, incur and guarantee, as applicable,

the DIP Loans and all other DIP Obligations (as defined in the DIP Credit Agreement, the "**DIP**

**Obligations**").  As soon as commercially practicable (but, in any event, within one (1) Business Day) following entry of this Final Order, the DIP Secured Parties shall advance to the Debtors the Final DIP Advance (in an aggregate principal amount of $25,000,000) to be used by the Debtors in accordance with, and subject to, the terms and conditions of this Final Order, the DIP Credit Agreement and other DIP Loan Documents, and the Budget (subject to Permitted Variances).

      1.4    <u>DIP Loan Documents</u>

      1.4.1    <u>Authorization</u>.  The Debtors are hereby authorized to enter into, execute, deliver, perform and comply with all of the terms, conditions and covenants of the Third DIP Amendment and the other DIP Loan Documents, except as otherwise provided in this Final Order.  Upon execution and delivery of the Third DIP Amendment, the Third DIP Amendment shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms thereof and this Final Order.  No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

      1.4.2    <u>Approval; Evidence of Borrowing Arrangements</u>.  All terms, conditions and covenants set forth in the DIP Loan Documents (including, without limitation, the DIP Credit Agreement) are approved.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, the DIP Loan Agent and DIP Lenders, and of each Debtor's assumption and adoption of all of the terms, conditions and covenants of the DIP Credit Agreement and the other DIP Loan

Documents for all purposes, including, without limitation, the Plan Milestones and the Acceptable Plan, and, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of the DIP Secured Parties' reasonable and documented out-of-pocket costs and expenses, as more fully set forth in the DIP Loan Documents and Section 1.8 of this Final Order.

    1.4.3 <u>Amendment</u>.  Subject to the terms and conditions of the DIP Credit Agreement and the other DIP Loan Documents, the Debtors, the DIP Loan Agent and the DIP Lenders may amend, modify, supplement or waive any provision of the DIP Loan Documents (a "**DIP Loan Amendment**") without further approval or order of the Court so long as (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean, any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the DIP Loan Documents, increase the principal amount of the DIP Loans, add specific new events of default or enlarge the nature and extent of default remedies available to the DIP Loan Agent and DIP Lenders following an event of default, or otherwise modify any terms and conditions in any DIP Loan Document in a manner materially less favorable to Debtors) and is undertaken in good faith by the DIP Loan Agent, DIP Lenders and Debtors; (b) the Debtors provide prior written notice of the DIP Loan Amendment (the "**DIP Loan Amendment Notice**") to (i) the U.S. Trustee, (ii) counsel to the Committee, (iii) counsel to the Stalking Horse Bidder, (iv) counsel to the DIP Loan Agent and (v) counsel to the Equity Committee; (c) the Debtors file the DIP Loan Amendment Notice with the Court; and (d) no objection to the DIP Loan Amendment is filed with the Court within four (4) Business Days from the later of the date the DIP Loan Amendment Notice is served or the date the DIP Loan

Amendment Notice is filed with the Court in accordance with this Section.  Any material DIP

Loan Amendment to the DIP Loan Documents must be approved by the Court to be effective.

        1.4.4   <u>Payment of DIP Fees</u>.  Any and all fees payable pursuant to the

DIP Loan Documents, including the Upfront Fee (as defined in the DIP Credit Agreement) and

the Exit Fee (as defined in the DIP Credit Agreement) as more fully set forth in the DIP Loan

Documents, are hereby approved with respect to the First Initial DIP Advance, the Second Initial

DIP Advance and the Final DIP Advance, and the Debtors are authorized to (a) pay the Upfront

Fee on the date the Final DIP Advance is made and (b) pay the Exit Fee on the Maturity Date (as

defined in the DIP Loan Documents).

        1.5   <u>Partial Roll-Up of Prepetition Secured Obligations</u>.  As soon as

commercially practicable (but, in any event, within one (1) Business Day) following entry of this

Final Order (a) $**62,107,870.46** of the Roll-Up DIP Loans shall be used to reduce, on a dollar-

for-dollar basis, all of the Prepetition Secured Obligations not previously rolled-up pursuant to

the First Interim Order, the Second Interim Order or the Third Interim Order (other than the

Remaining Prepetition Secured Claims). The "rolled-up" Prepetition Secured Obligations shall

be deemed to have been issued or provided, as applicable, under the DIP Credit Agreement and

the other DIP Loan Documents.

        1.6   <u>Payments and Application of Payments</u>.  The Debtors are authorized to

make all payments and transfers of Estate property to the DIP Loan Agent as provided for,

permitted and/or required under the DIP Credit Agreement and the other DIP Loan Documents,

which payments and transfers shall not be avoidable or recoverable from the DIP Loan Agent or

any DIP Lender under sections 547, 548, 550, 553 or any other section of the Bankruptcy Code,

or any other claim, charge, assessment or other liability, whether by application of the

Bankruptcy Code, other law or otherwise.  All proceeds of the Prepetition Collateral received by

the DIP Loan Agent or any DIP Lender, and any other amounts or payments received by the DIP

Loan Agent or any DIP Lender in respect of the DIP Obligations, may be applied or deemed to

be applied on a dollar-for-dollar basis by the DIP Loan Agent, in its discretion, first to the

repayment in full of the DIP Obligations, and then in repayment of the Remaining Prepetition

Secured Claims, all in accordance with the DIP Credit Agreement, the other DIP Loan

Documents, the Second Interim Order, the Third Interim Order and this Final Order.

       1.7    Continuation of Prepetition Procedures.  Except to the extent expressly set

forth in the DIP Loan Documents, all prepetition practices and procedures for the payment and

collection of proceeds of the DIP Collateral, the turnover of cash, the delivery of property to the

DIP Loan Agent and the DIP Lenders, including any lockbox, as set forth in the Cash

Management Order, are hereby approved and shall continue without interruption after the

commencement of the Cases.

       1.8    Costs, Fees and Expenses of DIP Secured Parties.

       1.8.1    Payment of Fees and Expenses.  On a monthly basis, from and

after the date of the Second Interim Order, the Debtors shall pay any and all reasonable and

documented fees and expenses of the DIP Secured Parties incurred from and after entry of the

Second Interim Order in connection with the DIP Facility and as provided for in the DIP Loan

Documents, whether or not the transactions contemplated hereby are consummated or such fees

and expenses are set forth in the Budget, including fees and expenses incurred in connection with

(i) the preparation, negotiations and execution of the DIP Loan Documents; (ii) the creation,

perfection or protection of the liens under the DIP Loan Documents (including all search, filing

and recording fees); (iii) the ongoing administration of the DIP Loan Documents (including the

preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and participation in the Cases; (iv) any refinancing or restructuring of the DIP Facility; (v) the enforcement of the DIP Loan Documents; (vi) any legal proceeding relating to or arising out of the DIP Facility; and (vii) as otherwise provided for in the Second Interim Order, the Third Interim Order, this Final Order or the DIP Loan Documents.

        1.8.2    <u>Procedures for Payment</u>.    The reasonable and documented fees and expenses of the DIP Secured Parties as provided in the Second Interim Order, the Third Interim Order and this Final Order shall not be subject to allowance by the Court or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; <u>provided</u>, <u>however,</u> that copies of any such invoices provided to the Debtors shall be provided contemporaneously to the U.S. Trustee, counsel to the Committee and counsel to the Equity Committee.[6] If the Debtors, the U.S. Trustee, the Committee or the Equity Committee objects to the reasonableness of the fees and expenses of any DIP Secured Parties, and such objection cannot be resolved within ten (10) calendar days of receipt of such invoices, the Debtors, the U.S. Trustee, the Committee or the Equity Committee shall file with the Court and serve on such DIP Loan Agent and such professional (with a copy to the Debtors) an objection limited to the reasonableness of such fees

---

[6]      For the avoidance of doubt, the fees provided for in the Second Interim Order, the Third Interim Order and this Final Order must be reasonable. Although the U.S. Trustee fee guidelines do not specifically apply, professionals shall be required to submit time and expense detail with their invoices, and any further information or back up documentation required to determine the reasonableness of the request. Invoices for such fees and expenses provided to any party other than U.S. Trustee may be redacted to delete any information subject to the attorney-client privilege and any information constituting attorney work product. Any invoices submitted pursuant to the terms hereof shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.

and expenses and detailing with specificity which fees and/or expenses are being objected to (each, a "**Fee Objection**"). The professional fees of the DIP Secured Parties shall not be subject to the provisions of sections 327, 328, 329 or 331 of the Bankruptcy Code. The Debtors shall pay the fees and expenses of the DIP Parties in accordance with the terms and conditions of the DIP Documents, the Second Interim Order, the Third Interim Order and this Final Order, (a) in the full amount invoiced if no Fee Objection has been timely filed, and (b) in the amount of the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.

      1.9    <u>Indemnification.</u> The DIP Loan Agent and the DIP Lenders (and their affiliates and respective officers, directors, employees, advisors and agents) (each such person, an "**Indemnitee**") will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the DIP Facility or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence or willful misconduct of the relevant Indemnitee. Such indemnity shall not be available (i) to the extent arising from a material breach of any obligation of such Indemnitee under the DIP Loan Documents or (ii) to the extent arising out of any loss, claim, damage, liability or expense that does not involve an act or omission of the DIP Loan Parties and that is brought by an Indemnitee against another Indemnitee (other than claims against an Indemnitee in its capacity or in fulfilling its role as DIP Loan Agent or any similar role under the DIP Loan Documents).

Section 2.    <u>Postpetition Lien; Superpriority Administrative Claim Status.</u>

      2.1    <u>Postpetition Lien</u>.

         2.1.1    <u>Postpetition Lien Granting</u>.  To secure the prompt payment and performance of any and all DIP Obligations of the Debtors to the DIP Secured Parties of

whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Loan Agent, for the benefit of itself and the DIP Lenders, shall have and is hereby granted, effective as of the Petition Date, valid, binding, enforceable, non-avoidable and automatically and properly perfected superpriority security interests in and liens upon (collectively, the "**DIP Liens**") all of the Prepetition Collateral (other than Excluded Assets (as defined in the DIP Credit Agreement)) and the Debtors' remaining assets, including any and all unencumbered assets (collectively hereinafter referred to as the "**DIP Collateral**") including, without limitation, all assets and property of each Debtor and its Estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, contract rights, licenses, general intangibles, instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, trade names and other intellectual property, all equity interests, all books and records relating to the foregoing, all other personal and real property of the Debtors, avoidance actions not purchased in an Acceptable 363 Sale and all other collateral pledged under the DIP Loan Documents, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of New York (and, if defined in more than one Article of such Uniform Commercial Code, shall have the meaning given in Article 9 thereof)), ***provided***, ***however***, that the Excluded Collateral and the Excluded

Assets (as defined in the DIP Credit Agreement) shall not constitute DIP Collateral under this Final Order.

2.1.2    <u>DIP Liens Priority in Collateral</u>.  The DIP Liens securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with and any liens or other interests granted pursuant to sections 363, 364 or any other section of the Bankruptcy Code or other applicable law; <u>provided</u>, <u>however</u>, that the DIP Liens on the DIP Collateral shall be subject only to (a) Prior Senior Liens, and (b) the Carve Out solely to the extent provided for in Sections 2.3 of this Final Order (Prior Senior Liens and the Carve Out are collectively referred to herein as the "**Permitted Liens and Claims**").

2.1.3    <u>Postpetition Lien Perfection.</u>  The Second Interim Order, the Third Interim Order and/or this Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the DIP Liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to any deposit control agreement or other depository account consisting of the DIP Collateral (a "**Perfection Act**"). Notwithstanding the foregoing, if the DIP Loan Agent, in its sole discretion, elects for any reason to file, record or otherwise effectuate any Perfection Act, then the DIP Loan Agent is authorized to perform such act, and the Debtors are authorized to perform such act to the extent reasonably requested by the DIP Loan Agent, which act or acts shall be deemed to have been accomplished

as of the date and time of entry of the Second Interim Order notwithstanding the date and time

actually accomplished, and in such event, the subject filing or recording office is authorized to

accept, file or record any document in regard to such act in accordance with applicable law.  The

DIP Loan Agent may choose to file, record or present a certified copy of the Second Interim

Order, the Third Interim Order or this Final Order in the same manner as a Perfection Act, which

shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office

is authorized to accept, file or record such certified copy of the Second Interim Order, the Third

Interim Order or this Final Order in accordance with applicable law.  Should the DIP Loan Agent

so choose and attempt to file, record or perform a Perfection Act, no defect or failure in

connection with such attempt shall in any way limit, waive or alter the validity, enforceability,

attachment or perfection of the DIP Liens and security interests granted herein by virtue of the

entry of the Second Interim Order, the Third Interim Order and/or this Final Order.

> 2.1.4    <u>Pre-emption of Certain Perfection Requirements</u>.  To the extent

that any applicable non-bankruptcy law otherwise would restrict the granting, scope,

enforceability, attachment or perfection of the DIP Secured Parties' liens and security interests

granted and created by the Second Interim Order, the Third Interim Order, this Final Order or

otherwise would impose filing or registration requirements with respect to such liens and

security interests, such law is hereby pre-empted to the maximum extent permitted by the

Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of the

United States Bankruptcy Court.  By virtue of the terms of the Second Interim Order, the Third

Interim Order and/or this Final Order, to the extent that the DIP Loan Agent has filed Uniform

Commercial Code financing statements, mortgages, deeds of trust or other security or perfection

documents under the names of any of the Debtors in respect of the DIP Liens, such filings shall

be deemed to properly perfect its DIP Liens granted and confirmed by the Second Interim Order, the Third Interim Order and/or this Final Order without further action by the DIP Loan Agent.

        2.1.5   Nullifying Prepetition Restrictions to Postpetition Financing. Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the DIP Loan Documents, any provision that restricts, limits or impairs in any way any Debtor from granting the DIP Loan Agent security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Loan Documents, the Second Interim Order, the Third Interim Order or this Final Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the DIP Loan Documents, shall not (a) be effective and/or enforceable against any such Debtor(s), the DIP Loan Agent or the DIP Lenders, as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the DIP Loan Agent and the DIP Lenders pursuant to the Second Interim Order, the Third Interim Order, this Final Order or the DIP Loan Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

        2.1.6   The DIP Liens and the DIP Superpriority Claims.  The DIP Liens and the DIP Superpriority Claims (as defined herein) (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of these Cases (or any successor cases) and shall be valid and enforceable against the Debtors, their

Estates, any trustee or any other estate representative appointed or elected in these Cases (or any successor cases) and/or upon the dismissal of any of these Cases (or any successor cases), (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code; provided, however, that notwithstanding the foregoing, the DIP Liens and DIP Superpriority Claims (as defined herein) shall be subject to the Permitted Liens and Claims and shall not apply to the Excluded Collateral or the Excluded Assets (as defined in the DIP Credit Agreement).

2.2    Superpriority Administrative Expenses.

2.2.1    DIP Loans.    For all DIP Obligations now existing or hereafter arising pursuant to the Second Interim Order, the Third Interim Order, this Final Order or the DIP Loan Documents, the DIP Loan Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors (other than the Carve Out), whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (the "**DIP Superpriority Claim**") other than the Excluded Collateral and the Excluded Assets (as defined in the DIP Credit Agreement).

2.3    Carve Out.

2.3.1    Carve Out.    The Prepetition Replacement Liens on the DIP Collateral, the Prepetition Adequate Protection Superpriority Claim, the DIP Liens and DIP Superpriority Claim shall be subject to the following expenses (collectively, the "**Carve Out**"), subject to Section 2.3.2 below: (a) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under 28 U.S.C. §1930(a); (b) all reasonable fees and expenses up to $50,000 incurred by a trustee under Section 729(b) of the Bankruptcy Code; and (c) in the event of the occurrence and during the continuance of a DIP Termination Event, the payment of documented unpaid professional fees and disbursements incurred by professionals of the Debtors and any statutory committees appointed in the Cases (collectively, the "**Professionals**"), in each case to the extent allowed by the Court (the "**Allowed Professional Fees**"), (i) in an aggregate amount not to exceed all accrued and unpaid professional fees and disbursements as of the date of the DIP Termination Event (whether allowed as of such date or subsequent thereto), plus (ii) in an aggregate amount not to exceed $2,500,000 (the "**Post-Default Professional Fee Carve Out Cap**") for unpaid professional fees and disbursements that accrue after the date of a DIP Termination Event ("**Post-Default Fees**").

2.3.2    Carve Out Limitations.    Notwithstanding anything to the contrary in this Final Order, none of the Carve Out, the DIP Facility, the DIP Collateral, the Prepetition Collateral, the DIP Loans, the Cash Collateral or any other credit or financial accommodations provided under or in connection with any of the DIP Loan Documents, nor the proceeds of any of the foregoing, shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional, directly or indirectly, or by any of the Debtors, the Committee, the Equity Committee or any trustee or other estate representative appointed in these

Cases (or any successor cases) or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with any challenge to (i) the amount, extent, priority, validity, perfection or enforcement of the indebtedness of, or other claims against, the Debtors owing to the DIP Secured Parties, the Prepetition Agent or the Prepetition Lenders or (ii) the collateral securing such indebtedness or the perfection, priority, validity or enforceability of the liens granted in favor of the DIP Secured Parties or the Prepetition Agent or Prepetition Lenders with respect thereto.

2.3.3   <u>No Reduction</u>.  The Carve Out shall not reduce the amounts payable to the DIP Secured Parties, the Prepetition Agent or the Prepetition Lenders under the DIP Loan Documents or the Prepetition Loan Documents.

2.3.4   <u>No Direct Obligation to Pay Allowed Professional Fees.</u>  None of the DIP Secured Parties, the Prepetition Agent or the Prepetition Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional incurred in connection with these Cases (or any successor cases under any chapter of the Bankruptcy Code). Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties, the Prepetition Agent or the Prepetition Lenders in any way, to pay compensation to, or to reimburse expenses of, any Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

2.3.5   <u>Payment of Carve Out on or after a DIP Termination Event</u>.  Any payment or reimbursement made on or after the occurrence of the DIP Termination Event in respect of any Post-Default Fees shall permanently reduce the Post-Default Professional Fee Carve Out Cap on a dollar-for-dollar basis.

2.3.6    <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of Professionals or shall affect the right of the DIP Secured Parties to object to the allowance any payment of such fees and expenses.  So long as no DIP Termination Event (as defined herein) has occurred and is continuing, the Debtors shall be permitted to pay Allowed Professional Fees as the same may be due and payable, solely to the extent set forth in the Budget (subject to Permitted Variances).

Section 3.        <u>Use of Cash Collateral; Adequate Protection.</u>

3.1        <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in accordance with the Budget (subject to Permitted Variances), the Debtors shall be and are hereby authorized to continue use of the Cash Collateral so long as no DIP Termination Event other than a DIP Termination Event arising from the occurrence of the Maturity Date pursuant to clause (b) of the definition thereof has occurred. Postpetition interest on the remaining outstanding amount of the Prepetition Secured Obligations shall continue to accrue at the applicable rate (which the Debtors and the DIP Lenders have stipulated, as among themselves and without prejudice to the rights of other parties in interest, is the Default Rate) under the Prepetition Credit Agreement.  Nothing in the First Interim Order, the Second Interim Order, the Third Interim Order or this Final Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Loan Documents and in accordance with the Budget (subject to Permitted Variances).  Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall not be used as a basis to challenge any of the Prepetition Secured Obligations, or the extent, validity, enforceability or perfected status of any of the Prepetition Liens.

3.2    <u>Replacement Liens</u>.  As adequate protection for the diminution in value of their interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out, the Prepetition Agent and the Prepetition Lenders are hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all of the DIP Collateral (which shall not include, for the avoidance of doubt, (x) the Excluded Assets (as defined in the DIP Credit Agreement) or (y) the Excluded Collateral) (the "**Prepetition Replacement Liens**").  The Prepetition Replacement Liens shall be junior and subordinate only to (A) the Permitted Liens and Claims, and (B) the DIP Liens, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

3.3    <u>Section 507(b) Priority Claims</u>.  As further adequate protection for the diminution in value of their interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out, the Prepetition Agent and the Prepetition Lenders, to the extent the Prepetition Replacement Liens granted hereunder do not adequately protect their interests in the Prepetition Collateral (including Cash Collateral), are hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and (any successor cases) (the "**Prepetition Adequate Protection Superpriority Claim**").  The Prepetition Adequate Protection Superpriority Claim shall be junior only to (A) the Permitted Liens and Claims, and (B) the DIP Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their Estates now

existing or hereafter arising, of any kind or nature whatsoever; provided, however, that the Prepetition Agent and the Prepetition Lenders shall not have recourse against the Excluded Collateral or the Excluded Assets (as defined in the DIP Credit Agreement) in respect of the Prepetition Adequate Protection Superpriority Claim

        3.4      Adequate Protection Reservation.  The receipt by the Prepetition Agent and the Prepetition Lenders of the adequate protection pursuant to Section 3 of this Final Order shall not be deemed an admission that the interests of the Prepetition Agent and/or the Prepetition Lenders are adequately protected.  Further, nothing contained in this Final Order shall prejudice or limit the rights of the Prepetition Agent and/or the Prepetition Lenders to seek additional adequate protection.

        3.5      Reimbursement of Fees and Expenses.   Notwithstanding anything contained herein to the contrary, (a) if the Prepetition Agent and/or the Prepetition Lenders are forced to defend the validity, enforceability or priority of the Prepetition Obligations or the Prepetition Liens for any reason, the Debtors agree to, and shall, reimburse all reasonable and documented fees, costs and expenses of the Prepetition Agent and/or the Prepetition Lenders in connection with such defense promptly in accordance with Section 1.8 hereof and (b) after payment in full of the DIP Obligations, the Debtors agree to, and shall, reimburse all reasonable and documented fees, costs and expenses of the Prepetition Agent and/or the Prepetition Lenders, promptly in accordance with Section 1.8 hereof, in connection with participation in these Cases until the date on which distributions to unsecured creditors are first made pursuant to an Acceptable Plan.

Section 4.      Default; Rights and Remedies; Relief from Stay.

        4.1      DIP Termination Event.  The occurrence of the Maturity Date (as defined in the DIP Credit Agreement), whether by acceleration or otherwise, shall constitute a "**DIP**

**Termination Event**" hereunder, unless waived in writing by the DIP Secured Parties in accordance with the DIP Credit Agreement.

        4.2    <u>Rights and Remedies upon a DIP Termination Event</u>.  Subject to the Waiting Period and the Waiting Period Procedures (each as defined below), and the Debtors' rights with respect thereto, upon the occurrence of the Maturity Date, the DIP Loan Agent shall be entitled to take any act or exercise any right or remedy as provided in this Final Order or any DIP Loan Document, as applicable, including, without limitation, (subject to Section 4.3 below), (a) declaring by a DIP Termination Event Notice (as defined below) the commitment of the DIP Lenders to make DIP Loans and consent to use of Cash Collateral to be terminated, whereupon such commitment and consent shall be terminated, (b) declaring by a DIP Termination Event Notice all unpaid DIP Obligations and Prepetition Secured Obligations, including all interest accrued and unpaid thereon, and all other amounts owing or payable under the DIP Loan Documents, the Prepetition Loan Documents, the Second Interim Order, the Third Interim Order or this Final Order to be immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Debtors, or (c) taking any other action or exercise any other right or remedy (including, without limitation, with respect to the liens in favor of the DIP Loan Agent and the DIP Lenders) permitted under the DIP Loan Documents, the Second Interim Order, the Third Interim Order, this Final Order or by applicable law.  For the avoidance of doubt, nothing set forth in the DIP Loan Documents, the Second Interim Order, the Third Interim Order or this Final Order amends, alters or modifies the terms and agreement set forth in the Settlement Agreement.

        4.3    <u>Relief from Automatic Stay</u>.

4.3.1    <u>Automatic Relief</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Loan Agent and each DIP Lender (a) to implement the postpetition financing arrangements authorized by this Final Order and pursuant to the terms of the DIP Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition Secured Obligations and the DIP Obligations (or any portion thereof), as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the DIP Loan Documents and apply such payments to the Prepetition Secured Obligations or DIP Obligations pursuant to the DIP Loan Documents, the Second Interim Order, the Third Interim Order and/or this Final Order, as applicable, in each case, in accordance with the terms of the DIP Loan Documents, the Second Interim Order, the Third Interim Order and/or this Final Order.

4.3.2    <u>Relief Subject to the Waiting Period Procedures</u>.  Notwithstanding Section 4.3.1 of this Final Order and the automatic stay provisions of section 362 of the Bankruptcy Code, upon a DIP Termination Event, the DIP Secured Parties shall be entitled to immediate payment of all obligations under the DIP Facility and to enforce the remedies provided for under the DIP Loan Documents or under applicable law, without further notice, motion or application to, hearing before, or order from, the Bankruptcy Court, subject to the following conditions (the "**Waiting Period Procedures**"): (1) the DIP Secured Parties shall notify the Debtors, by email to Debtors' counsel, that a DIP Termination Event has occurred (such notice, a "**DIP Termination Event Notice**" and the date of any such notice, the "**DIP**

**Termination Event Notice Date**"), (2) a waiting period shall commence upon delivery of the DIP Termination Event Notice and shall expire four (4) business days after delivery of the DIP Termination Event Notice Date (the "**Waiting Period**"), (3) during the Waiting Period, the Debtors shall be entitled to seek an emergency hearing before the Bankruptcy Court for the sole purpose of contesting the occurrence of a DIP Termination Event (including, for the avoidance of doubt, contesting the occurrence of any breach, Default or Event of Default alleged to underlie the occurrence of the DIP Termination Event, (4) during the Waiting Period, the Debtors may continue to use the DIP Collateral, including the Cash Collateral, and (5) none of the DIP Secured Parties, the Prepetition Agent or the Prepetition Lenders shall object to any motion filed by the Debtors during the Waiting Period seeking such expedited hearing nor seek to reduce such Waiting Period.  In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Waiting Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, a DIP Termination Event has occurred and is continuing, and the Debtors shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Loan Agent or the DIP Lenders set forth in the Second Interim Order, the Third Interim Order, this Final Order or the DIP Loan Documents.

Section 5.    Objections; Releases; Covenants; and Waivers.

        5.1.1    Objection Period Expired.    Notwithstanding anything to the contrary in the First Interim Order, the Second Interim Order or the Third Interim Order, by virtue of this Court's approval of the Settlement Agreement as set forth in paragraph E hereof, all Objections (as defined in the First Interim Order, the Second Interim Order and the Third Interim Order), whether asserted or not, are hereby deemed moot and neither the Committee, the Equity Committee nor any other party-in-interest shall be entitled to (a) seek to exercise the rights of the

Debtors' estates to file or prosecute an Objection or (b) otherwise file or assert any Objections, and all pending Objections are hereby dismissed with prejudice.

5.1.2    The (a) Prepetition Secured Obligations, including the Remaining Prepetition Secured Claims, are hereby deemed allowed in full, not subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and not subject to any further objection or challenge by any party at any time, (b) the Prepetition Liens on and security interest in the Prepetition Collateral are hereby deemed legal, valid, perfected, enforceable and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Liens and Claims and (c) the Prepetition Agent and the Prepetition Lenders, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors and assigns, are hereby deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Loan Documents and shall not be subject to any further objection or challenge by any party at any time.

5.1.3    Nothing contained in this Section 5.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to the DIP Loan Agent or any DIP Lenders in connection with the DIP Loans or the Debtors' use of Cash Collateral or any other postpetition financial and credit accommodations provided by the DIP Loan Agent and the DIP Lenders to the Debtors in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Final Order and the DIP Loan Documents, including, without limitation, the right to call an "Event of Default" under the DIP Loan Documents in connection with the DIP Loans and use of Cash Collateral.

5.2    <u>Releases</u>.  In consideration of the DIP Secured Parties and the Prepetition Lenders permitting the Debtors to use the Prepetition Collateral (including Cash Collateral) and

providing other credit and financial accommodations to the Debtors pursuant to the provisions of

the DIP Loan Documents, the First Interim Order, the Second Interim Order, the Third Interim

Order and this Final Order, each Debtor, on behalf of itself and its successors and assigns,

including any successor trustee or other estate representative in these Cases or any successor

Cases, (collectively, the "**Releasors**"), shall, forever release, discharge and acquit the DIP Loan

Agent, each DIP Lender, the Prepetition Agent and each Prepetition Lender, and their respective

successors and assigns, and their present and former shareholders, affiliates, subsidiaries,

divisions, predecessors, directors, officers, attorneys, employees and other representatives

(collectively, the "**Releasees**"), of and from any and all claims, demands, liabilities,

responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind,

nature and description, including, without limitation, any so-called "lender liability" claims or

defenses, that the Releasors had, have or hereafter can or may have against the Releasees as of

the date hereof, in respect of events that occurred on or prior to the date hereof with respect to (a)

the Prepetition Secured Obligations, the Prepetition Loan Documents, and any financial

accommodations made by the Prepetition Agent and/or the Prepetition Lenders pursuant to the

Prepetition Loan Documents or the DIP Loan Documents and (b) the DIP Obligations, the DIP

Loan Documents and any DIP Loans or other financial accommodations made by the DIP Loan

Agent and/or the DIP Lenders to the Debtors pursuant to the DIP Loan Documents.  In addition,

upon the repayment of all DIP Obligations (as defined in the DIP Credit Agreement) owed to the

DIP Loan Agent and the DIP Lenders by the Debtors and termination of the rights and

obligations arising under the DIP Loan Documents (which payment and termination shall be on

terms and conditions consistent with the DIP Loan Documents or otherwise acceptable to the

DIP Loan Agent), the DIP Loan Agent and the DIP Lenders shall be released from any and all

obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Loan Documents, the Second Interim Order, the Third Interim Order or this Final Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve Out and/or the Post-Default Fees in accordance with the terms of this Final Order or otherwise.

5.3     Section 506(c) Waiver.  No costs or expenses of administration which have been or may be incurred in these Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, enhancement or realization by the DIP Agent or the DIP Secured Parties upon the DIP Collateral, or by the Prepetition Agent or the Prepetition Lenders upon the Prepetition Collateral or, with respect to the Replacement Liens, upon the DIP Collateral) shall be charged against any of the DIP Agent, DIP Secured Parties, the Prepetition Agent or the Prepetition Lenders or any of the DIP Obligations or Prepetition Secured Obligations pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the express written consent of the DIP Secured Parties and/or the Prepetition Lenders, as applicable, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of the Budget hereunder).

5.4     Section 552(b) Waiver.  The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, further, the "equities of the case" exception under

40

section 552(b) shall not apply to any of the DIP Agent, the DIP Lenders, the DIP Obligations, the Prepetition Agent, the Prepetition Lenders or the Prepetition Secured Obligations.

       5.5    No Marshaling.  In no event shall any of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders be subject to the equitable doctrine of "marshaling"  or any similar doctrine with respect to the DIP Collateral, the Prepetition Collateral or the Replacement Liens, and all proceeds thereof shall be received and applied in accordance with the DIP Loan Documents and the Prepetition Loan Documents, as applicable, and nothing in this Section 5.5 shall limit or impair the rights of the DIP Agent to credit bid in accordance with section 6.3  hereof.

Section 6.    Other Rights and DIP Obligations.

       6.1    No Modification or Stay of this Final Order.  Any credit extended under the terms of this Final Order shall be deemed to have been extended in good faith by the DIP Loan Agent and DIP Lenders, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event this Final Order or any provision thereof or hereof is vacated, reversed or modified on appeal or otherwise.

       6.2    Proof of Claim.  The (a) acknowledgment by the Debtors of the Prepetition Secured Obligations and the liens, rights, priorities and protections granted to or in favor of the Prepetition Agent and the Prepetition Lenders in respect of the Prepetition Collateral as set forth herein and in the Prepetition Loan Documents and (b) provisions of the First Interim Order, the Second Interim Order, the Third Interim Order and this Final Order shall be deemed a timely filed proof of claim and/or request for administrative expenses on behalf of the Prepetition Agent and the Prepetition Lenders in these Cases, and the Prepetition Agent and the Prepetition

Lenders shall not be required to file proofs of claim or requests for approval of administrative expenses in these Cases or any subsequent chapter 7 cases.

6.3    <u>Right to Credit Bid</u>. The DIP Loan Agent shall have the right to credit bid up to the full amount of the DIP Obligations, <u>plus</u> the full amount of the Remaining Prepetition Secured Claims, including, without limitation, any accrued interest and expenses, in connection with an Acceptable 363 Sale or an Acceptable Plan, as applicable, <u>provided, however</u>, that the DIP Loan Agent shall not be entitled to exercise such right to credit bid unless and until the BH APA is terminated or modified in a manner adverse in any material respect to the DIP Secured Parties, provided that such credit bid rights are subject to the terms of the Bidding Procedures Order. For the avoidance of doubt, any credit bid of the DIP Obligations or the Remaining Prepetition Secured Claims shall be subject to the terms and agreements set forth in the Settlement Agreement.

6.4    <u>Collateral Rights</u>.    Until all Prepetition Secured Obligations and DIP Obligations shall have been indefeasibly paid and satisfied in full in cash:

(a)    no party other than the DIP Loan Agent or the DIP Secured Parties shall foreclose or otherwise seek to enforce any junior lien or claim in the DIP Collateral; and

(b)    upon and after the declaration of the occurrence of a DIP Termination Event, and subject to the expiration of the Waiting Period, in connection with a liquidation of any of the DIP Collateral, the DIP Loan Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by the Debtors, and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and

which are used by the Debtors in their businesses. The DIP Secured Parties will be responsible

for the payment of any applicable fees, rentals, royalties or other amounts due such lessor,

licensor or owner of such property for the period of time that the DIP Loan Agent actually uses

the equipment or the intellectual property (but in no event for any accrued and unpaid fees,

rentals or other amounts due for any period prior to the date that the DIP Loan Agent actually

occupies or uses such assets or properties or for any fees, rentals or other amounts that may

become due following the end of the DIP Loan Agent's occupation or use, it being understood

that such fees, rentals and other amounts shall be the responsibility of the Debtors and may be

paid by the Debtors using Cash Collateral, notwithstanding the occurrence of a DIP Termination

Event).

      6.5    <u>No Unauthorized Disposition of Collateral</u>. The Debtors shall not sell,

transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP Collateral

(including Cash Collateral), other than in the ordinary course of business pursuant to the terms of

this Final Order and the DIP Loan Documents.

      6.6    <u>Inventory</u>. Unless otherwise ordered by this Court, the Debtors shall not,

without the consent of the DIP Loan Agent, (a) enter into any agreement to return any inventory

to any of their creditors for application (by setoff, recoupment or otherwise) against any

prepetition indebtedness under any applicable provision of section 546 of the Bankruptcy Code,

or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based

upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise. For the

avoidance of doubt, nothing in this Section 6.6 shall be construed to restrict the Debtors' ability

to administer their Customer Programs (as defined in the *Debtors' Motion for Entry of Interim*

*and Final Orders Authorizing Debtors to Honor Certain Prepetition Obligations to Customers*

43

*and To Continue Customer Programs* [**Docket No 12**] (the "**Customer Programs Motion**") in the ordinary course of business and in accordance with any interim or final order (as applicable) granting the relief requested in the Customer Programs Motion.

   6.7 <u>Maintenance of DIP Collateral.</u> Unless the DIP Loan Agent, acting at the direction of the DIP Lenders, otherwise consents in writing, until (a) the payment in full in cash or otherwise acceptable satisfaction of all DIP Obligations and (b) the termination of the DIP Secured Parties' obligations to extend credit under the DIP Facility, the Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents and in each case in accordance with the DIP Loan Documents. Upon entry of this Final Order and to the fullest extent provided by applicable law, the DIP Loan Agent (on behalf of the DIP Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

   6.8 <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or beneficiary thereof.

   6.9 <u>Power to Waive Rights; Duties to Third Parties</u>.  The DIP Loan Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Order in respect of the DIP Loan Agent and DIP Lenders (the "**DIP Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).  Any waiver by the DIP Loan Agent of any DIP Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such

DIP Lender Right, nor a waiver of any other DIP Lender Right, subject the DIP Loan Agent or any DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Loan Agent or any DIP Lender. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law.

6.10    <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Final Order are in addition to and without prejudice to the rights of each of the DIP Secured Parties to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the First Interim Order, the Second Interim Order, the Third Interim Order, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral other than as provided in this Final Order or granting of any interest in the DIP Collateral, as applicable, or priority in favor of any other party, to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates or to object to any sale of assets (it being understood and agreed that the DIP Loan Agent has reviewed and approved the BH APA, the agreements, schedules and exhibits thereto, and the bid procedures related to it presented to the DIP Loan Agent prior to the Petition Date, and shall not object to any of the foregoing, so long as the foregoing shall not have been modified or amended in a manner adverse to the rights and interests of the DIP Secured Parties without the prior written consent of the DIP Loan Agent, in its sole and absolute discretion).  Notwithstanding anything contained herein or otherwise, the respective rights of the DIP Loan Agent and the

Stalking Horse Bidder under the Bidding Procedures Order from and after the expiration of the Waiting Period are expressly reserved.

    6.11    <u>Binding Effect</u>.

    6.11.1  <u>Immediate Effectiveness; Survival</u>.  The provisions of this Final Order and the DIP Loan Documents, the DIP Obligations, the Prepetition Adequate Protection Superpriority Claim, the DIP Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of each of the DIP Loan Agent and the DIP Lenders provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization or liquidation, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

    6.11.2  <u>Dismissal</u>.  Any order dismissing one or more of the Cases under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and the DIP Liens on and security interests in the DIP Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Final Order shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

    6.11.3  <u>Modifications After Final Hearing</u>.  In the event this Court modifies any of the provisions of this Final Order or the DIP Loan Documents following the

Final Hearing, such modifications shall not affect the rights or priorities of DIP Loan Agent and DIP Lenders pursuant to this Final Order with respect to the DIP Collateral or any portion of the DIP Obligations which arises or is incurred or is advanced prior to such modifications, and this Final Order shall otherwise remain in full force and effect.

6.11.4 This Final Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor. This Final Order shall also inure to the benefit of the DIP Secured Parties, the Debtors, and their respective successors and assigns.

6.12 <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>. All postpetition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Loan Documents are made in reliance on this Final Order and, until the DIP Obligations have been indefeasibly paid in full in cash, the Debtors shall not seek to have entered in the Cases, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than this Final Order) which (a) authorizes the use of Cash Collateral of the Debtors in which the DIP Loan Agent or the DIP Lenders have an interest, or the sale, lease or other disposition of property of any Debtor's Estate in which the DIP Loan Agent or the DIP Lenders have a lien or security interest, except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Loan Agent or DIP Lenders hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Loan Agent and DIP Lenders herein;

unless, in each instance (x) the DIP Loan Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Loan Agent or any DIP Lender, or (y) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in cash in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents, including, without limitation, all debts and obligations of the Debtors to the DIP Secured Parties which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to the DIP Loan Agent. The security interests and liens granted to or for the benefit of the DIP Secured Parties hereunder and the rights of the DIP Secured Parties pursuant to this Final Order and the DIP Loan Documents with respect to the DIP Obligations and the DIP Collateral are cumulative and shall not be altered, modified, extended, impaired or affected by any plan of reorganization or liquidation of the Debtors and, if the DIP Loan Agent shall expressly consent in writing that the DIP Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

6.13    <u>No Owner/Operator Liability</u>.  Neither the DIP Loan Agent nor any DIP Lender shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

6.14    <u>Conflicts</u>.  In the event of a conflict between the terms and provisions of any of the DIP Loan Documents, the First Interim Order, the Second Interim Order or the Third Interim Order, on the one hand, and this Final Order, on the other hand, the terms and provisions

of this Final Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Loan Documents.

6.15    Objections Overruled.  All objections to the entry of this Final Order are, to the extent not withdrawn, hereby overruled.

6.16    General Authorization.  The Debtors are authorized to take any and all actions necessary to effectuate the relief granted in this Final Order.

6.17    Retention of Exclusive Jurisdiction.  This Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Order and the DIP Loan Documents.

Dated: New York, New York
        February 26, 2019

/s/ *James L. Garrity, Jr.*
UNITED STATES BANKRUPTCY JUDGE