Hearing Date:  **April 9, 2019 at 11:00 a.m. (ET)**
Objection Deadline:  **April 2, 2019 at 4:00 p.m. (ET)**

**VENABLE LLP**
Jeffrey S. Sabin, Esq.
Lawrence H Cooke, Esq.
1270 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598

*Counsel to CRG Servicing LLC and*
  *Affiliated Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
In re:                                                       :       Chapter 11
                                                             :
SYNERGY PHARMACEUTICALS INC., et al.,                        :       Case No. 18-14010 (JLG)
                                                             :
Debtors.[1]                                                  :       (Jointly Administered)
                                                             :
                                                             :       Related Docket Nos. 450, 454, 537, 538 & 553
------------------------------------------------------------ x

### MOTION OF CRG SERVICING LLC FOR AN ORDER, PURSUANT TO 11 U.S.C. § 105(a), (I) ENFORCING PLAN SETTLEMENT STIPULATION, (II) HOLDING THE OFFICIAL EQUITY COMMITTEE AND THE LAW FIRM OF STEVENS & LEE, P.C. IN CONTEMPT OF COURT AND (III) IMPOSING SANCTIONS

CRG Servicing LLC ("**CRG Servicing**"), as agent for, and on behalf of, the lenders

(collectively, the "**Lenders**" and with CRG Servicing, collectively, "**CRG**"), party with Synergy

Pharmaceutical, Inc. and Synergy Advanced Pharmaceutical, Inc., the above-captioned debtors

and debtors-in-possession (collectively, the "**Debtors**"), to the *Term Loan Agreement*, dated as of

September 1, 2017, as amended (the "**Prepetition Loan Agreement**") and the *Senior Secured*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Synergy Pharmaceuticals Inc. (5269); Synergy Advanced Pharmaceuticals, Inc. (4596). The address of the Debtors' corporate headquarters is 420 Lexington Avenue, Suite 2012, New York, New York 10170.

*Priming and Superpriority Debtor-in-Possession Credit Agreement*, dated as of December 21, 2018, as amended (the "**DIP Credit Agreement**"), by and through their undersigned counsel, hereby submits this *Motion of CRG Servicing LLC For an Order Pursuant to 11 U.S.C. § 105(a) (I) Enforcing Plan Settlement Stipulation, (II) Holding the Official Equity Committee and the Law Firm of Stevens & Lee, P.C. In Contempt of Court and (III) Imposing Sanctions* (this "**Motion**"), and respectfully represents as follows:[2]

## PRELIMINARY STATEMENT

In what can only be described as a vindictive, "scorched earth" effort to jeopardize the apparent successful resolution of these Chapter 11 Cases, the Equity Committee surprised all interested parties on March 12, 2019 by filing a Notice of Appeal to the Settlement Order and a Notice of Appeal to the Final DIP Order (collectively, the "**Appeals**") only hours after indicating no objection to this Court's approval, on the record, of the Debtors' Disclosure Statement. Not only did the Equity Committee's silence make a mockery of the Disclosure Statement hearing by immediately rendering the Disclosure Statement inadequate,[3] the very filing of the Appeals violates the Equity Committee's obligations under the Plan Settlement Stipulation that the Equity Committee had signed only hours before the Appeals were filed and which it had requested that this Court approve.  Pursuant to section 6 of the Plan Settlement Stipulation, the Equity Committee, having obtained the benefits of the Plan Settlement Stipulation incorporated in the Plan (including exculpation rights, governance rights related to the Litigation Trust, membership

---

[2] All capitalized terms used herein and not otherwise defined herein shall have the same meaning as is ascribed to such terms in the Debtors' Third Amended Joint Plan of Reorganization, dated March 11, 2019 [**Dkt. No. 516**] (the "**Plan**").

[3] Fortunately, the Debtors, CRG and the Creditors' Committee were able to formulate modifications to the Disclosure Statement and obtain this Court's approval on March 13, 2019.

on the Oversight Committee and consent rights to the election of a Litigation Trustee and Plan

Administrator), expressly agreed not to object to various key provisions of the Plan, including

those Plan provisions that incorporate (a) Section 5.1.2 of the Final DIP Order and otherwise

provide releases to CRG and (b) the terms of the Settlement Agreement, including the

establishment, funding (and use of CRG's cash collateral) and vesting of assets (including

Avoidance Actions on which CRG has a lien) in the Litigation Trust.  By filing the Final DIP

Order Appeal and the Settlement Order Appeal, the Equity Committee is essentially objecting to,

and seeking to overturn, the releases, settlements, compromises and claim allowances set forth in

the Final DIP Order and in the Settlement Agreement that have been incorporated into the

provisions of the Plan to which the Equity Committee agreed not to challenge.  The Equity

Committee is simply disregarding this Court's order approving the Plan Settlement Stipulation

and ignoring the agreements it made thereunder.

Prior to the Plan Settlement Stipulation having been negotiated, in February, the Equity

Committee filed objections to the Settlement Agreement and to the Final DIP Order, hoping to

renegotiate the Settlement Agreement and re-litigate the Court-approved bidding and auction

procedures.[4]  The morning of the hearing to consider approval of the Settlement Agreement, the

Equity Committee also filed an objection to CRG's Remaining Prepetition Secured Claims.[5] The

next day, after the Court read into the record its decision approving the Settlement Agreement

and just prior to the hearing on the Final DIP Order, the Equity Committee stated that it would

---

[4] *See Objection of the Official Committee of Equity Security Holders of Synergy Pharmaceuticals to the Debtors'
Motion forEntry of Order Approving Settlement of Objections to Prepetition Secured Obligations and Prepetition
Liens* [Dkt. No. 351] (the "**Equity Committee Settlement Objection**") and *Objection of the Official Committee of
Equity Security Holders to The Debtors' Motion for an Order Authorizing the Debtors to Obtain Postpetition
Financing* [Dkt. No. 349] (the "**Equity Committee DIP Objection**").

[5] *See Objection of the Official Committee of Equity Security Holders of Synergy Pharmaceuticals to the Claim of CRG
Servicing LLC and Certain Affiliate Lenders* [**Dkt. No. 412**] (the "**Equity Committee Claim Objection**").

not go forward with the Equity Committee DIP Objection. Rather, in the hopes of seeing a robust auction for the Debtors' assets and knowing that CRG was unlikely to fund the $25 million remaining DIP Facility advance if the Final DIP Order were not then timely entered, the Equity Committee chose to abandon its objections to the Final DIP Order. Within days after the Final DIP Order was entered, it became clear that there would be no auction for the Debtors' assets, that the purchase price Bausch would pay for the assets would be insufficient to provide any recovery to equity holders, and that the only potential source for recovery for interest holders would be the claims vested in the Litigation Trust. The Equity Committee, thus, embarked on negotiations with the Debtors, CRG and the Creditors' Committee to obtain as much involvement in the Litigation Trust as possible and to have input on certain officer and director release issues that were still unresolved.[6] The Plan Settlement Stipulation (as approved by this Court and now embedded in the Plan) is the culmination of those negotiations.

Apparently, at the same time it was negotiating the Plan Settlement Stipulation, the Equity Committee had surreptitiously hired (without application for or receiving court approval) new counsel to prepare and file the Final DIP Order Appeal and the Settlement Order Appeal. CRG submits that these 11th hour, undisclosed tactics were purposeful, given that, without use of CRG's new loans and cash collateral under the Final DIP Order, the Debtor could not have continued to operate, entertain bids, hold an auction or close on its asset sale, to the potential detriment of the equity holders, nor would CRG (or presumably the Debtors and the Creditors' Committee) have consented to the Plan Settlement Stipulation.

---

[6] The Debtors became party to the Settlement Agreement on condition that the Plan would release the Debtors' breach of fiduciary duty claims against officers and directors although the Creditors' Committee and CRG reserved their rights to object to such release.

Moreover, the Plan, which the Debtors, CRG and the Creditors' Committee have worked diligently to negotiate and craft, incorporates the terms of, and consideration provided in, the Settlement Agreement and provides the only source of recovery for creditors. Even if the Settlement Order and the Final DIP Order were overturned and CRG's Remaining Prepetition Secured Claims were disallowed in full, there would still not be enough cash in these estates to provide a recovery to equity security holders. They are "out of the money" and the filing of the Appeals is simply the Equity Committee's last-ditch effort to force creditors to relinquish a portion of the recovery. While the Equity Committee may believe it has very little to lose by jeopardizing the Plan, the creditors, who are the true parties-in-interest here, should be entitled to see the fruition of their efforts in these Chapter 11 Cases.

Accordingly, CRG respectfully submits that this Court should enforce its order approving the Plan Settlement Stipulation by compelling the Equity Committee to withdraw the Appeals within two (2) business days of entry of the attached Proposed Order. In the alternative, the Equity Committee should be estopped (whether judicially or equitably) from perfecting and prosecuting the Appeals, as the filing of the Appeals violates the Equity Committee's consent to, and obligations under, the Plan Settlement Stipulation, its express agreement to the provisions thereof and this Court's order of approval with respect thereto, and the Equity Committee's knowing concealment of its intention to file the Appeals and so violate the Plan Settlement Stipulation would prejudice the other entities to the agreement as well as the other stakeholders of these estates. Moreover, by filing the Appeals and violating this Court's order, the Equity Committee and the law firm that filed the Appeals (Stevens & Lee P.C.) are in contempt of Court, and this Court should compel the Equity Committee and Stevens & Lee P.C. to come into compliance with the "so-ordered" Plan Settlement Stipulation by immediately withdrawing their

Appeals and impose coercive sanctions of an appropriate amount to be determined by the Court

if the Equity Committee and Stevens & Lee P.C. do not timely come into compliance.  Finally,

this Court should impose compensatory sanctions on the Equity Committee and Stevens & Lee,

P.C. in favor of CRG to reimburse CRG for the documented fees and costs of responding to the

Appeals and litigating this Motion[7]

## BACKGROUND

1.  On December 12, 2018 (the "**Petition Date**"), the Debtors filed for relief under

chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are

continuing in possession of their property and are operating their businesses as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  On December 20, 2018, the Office of the United States Trustee appointed an

Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), and on January 29,

2019, the Office of the United States Trustee appointed an Official Committee of Equity Security

Holders (the "**Equity Committee**").  Shortly thereafter, this Court approved the Equity

Committee's retention of the law firm of Gibson, Dunn & Crutcher ("**Gibson Dunn**") as counsel

to the Equity Committee.

3.  On February 26, 2019, this Court entered the *Order Approving Settlement of*

*Objections to Prepetition Secured Obligations and Prepetition Liens* [**Dkt. No. 450**] as corrected

by Errata Order [**Dkt. No. 512**] (the "**Settlement Order**") over the objection of the Equity

Committee.  The Settlement Order approved the terms of a Settlement Agreement (the

"**Settlement Agreement**") among the Debtors, CRG and the Creditors' Committee with respect

---

[7] CRG reserves its rights to seek discovery of the members of the Equity Committee prior to the hearing on this Motion with respect to whether they individually acted in willful violation of the Plan Settlement Stipulation.

to, among other things, CRG's unrolled up, prepetition prepayment penalty and back-end fee secured claims (the "**Remaining Prepetition Secured Claims**") and other sale and plan-related disputes. The Debtors' Plan is, in large part, based on the terms and compromises contained in the Settlement Agreement, including, without limitation, the creation of a Litigation Trust, the funding of a Wind Down Budget from CRG's cash collateral, a portion of which will fund the Litigation Trust's costs, and CRG's release of its liens on the Debtors' Avoidance Actions and proceeds thereof so that the actions and proceeds can be contributed to the Litigation Trust for the benefit of unsecured creditors and equity holders. This Court approved the Settlement Agreement under Bankruptcy Rule 9019 and the standards of reasonableness dictated thereby.

4. On February 26, 2019, this Court entered the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay and (VI) Granting Related Relief* (Dkt. No. 454) (the "**Final DIP Order**"). The Final DIP Order authorized the Debtors to enter into the (the "**DIP Credit Agreement**") and further provided for, among other things, the use of CRG's cash collateral, the lending by CRG to the Debtors of the final new money loans in the amount of $25 million, the roll-up of all of CRG's prepetition secured claims other than the Remaining Prepetition Secured Claims, the allowance in full of CRG's Remaining Prepetition Secured Claims, the approval of CRG's liens and security interests, the dismissal of all objections thereto, including the Equity Committee DIP Objection, and the release of CRG in connection with any suits or actions arising out of the Prepetition Loan Agreement. Though the Equity Committee had filed its Equity Committee DIP Objection, at the hearing on February 22nd, it chose not to

litigate its objection. *See Tr. Feb. 22 Hr'g* at 48:6-16 ("It appears that all our arguments have

been largely mooted.  There's no need to relitigate them here today. (Mr. Etkin [sic] Kelsey)")

5.   On February 26, 2019, CRG made its final new money advance of $25 million to

the Debtors and permitted the usage of its cash collateral to support the Debtors' operations and

administration of their chapter 11 estates.  Most importantly, such advance permitted the Debtors

to complete (unfortunately, in vain) its auction process and close the sale of substantially all of

its assets to Bausch (defined below).

6.   On March 1, 2019, this Court approved the sale of substantially all of the Debtors'

assets to Bausch Health Ireland Limited ("**Bausch**") [Dkt. No. 484], and on March 6, 2019, the

Debtors consummated the sale of substantially all of their assets to Bausch, paid all of their DIP

Obligations and retained net sale proceeds of approximately $20 million.

7.   On March 12, 2019, this Court indicated its approval of the *Stipulation and Order*

*Resolving Objections to (I) Debtors' Motion for Entry of Order Approving Appointment and*

*Compensation of Independent Director Nunc Pro Tunc to February 13, 2019 and (II) Debtors'*

*Application For Entry Of An Order Authorizing the Retention and Employment of Kirkland &*

*Ellis LLP and Kirkland & Ellis International LLP as Attorneys For Synergy Pharmaceuticals*

*Inc. Effective Nunc Pro Tunc to February 13, 2019*  (the "**Plan Settlement Stipulation**") and

entered an order approving the Plan Settlement Stipulation thereafter [**Dkt. No. 553**].  The

Debtors, CRG, the Creditors' Committee and the Equity Committee all executed the Plan

Settlement Stipulation, which provided numerous benefits to the Equity Committee and its

current, former and ex-officio members, including exculpation rights, governance rights with

respect to the Litigation Trust, membership on the Oversight Committee, consent rights

regarding the appointment of the Litigation Trustee and the Plan Administrator and other negotiated for benefits.

8.    Thereafter, on the same day, this Court held a hearing to consider the adequacy of the Debtors' *Third Amended Disclosure Statement to the Third Amended Joint Plan of Reorganization* [Dkt. No. 518] (the "**Disclosure Statement**").  The Equity Committee had filed a joinder to the Creditors' Committee's Disclosure Statement objection,[8] but the Plan Settlement Stipulation "so ordered" by the Court had resolved *in toto* both the Creditors' Committee's objection and the Equity Committee's joinder.  On March 13, 2019, this Court entered an order approved the Disclosure Statement [**Dkt. No. 541**] (the "**Disclosure Statement Order**").

9.    Within hours after the conclusion of the March 12th hearings, the Equity Committee filed a *Notice of Appeal of Order Approving Settlement of Objections to Prepetition Secured Obligations and Prepetition Liens* [**Dkt. No. 537**] (the "**Settlement Order Appeal**") and a *Notice of Appeal of Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay and (VI) Granting Related Relief* (Dkt. No. 538] ("**Final DIP Order Appeal**").

10. The Equity Committee has not applied for, nor obtained, a stay of either the Settlement Order or the Final DIP Order, nor are either of these orders currently stayed pending

---

[8] *See Joinder of the Official Committee of Equity Security Holders to Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion for Order (I) Approving the Form and Manner of Notice of the Disclosure Statement Hearing; (II) Approving Disclosure Statement; (III) Scheduling Hearing on Confirmation of Plan; (IV) Establishing Deadlines and Procedures for Filing Objections to Confirmation of Plan; (V) Establishing Deadlines and Procedures for Voting on the Plan; (VI) Approving Solicitation Procedures; (VII) Establishing Procedures for Tabulation of Votes; and (VIII) Granting Related Relief* [**Dkt. No. 490**].

appeal. As a result, as of today and until the Plan Effective Date, CRG's Remaining Prepetition

Secured Claims are allowed in full, its liens are valid, property perfected and fully enforceable

against all of the Debtors' assets, including Avoidance Actions and the proceeds thereof, all

pending objections to the Remaining Prepetition Secured Claims were dismissed with prejudice,

and CRG's claims are to be treated in accordance with the Settlement Agreement and the Plan

Settlement Agreement which are incorporated into the Plan.[9]

## REQUEST FOR RELIEF

11. By this Motion, CRG requests that this Court enter an order (i) enforcing the

order approving the Plan Settlement Stipulation by compelling the Equity Committee to

withdraw the Settlement Order Appeal and the Final DIP Order Appeal within two (2) business

days of entry of the attached Proposed Order or, in the alternative, estopping (whether judicially

or equitably) the Equity Committee from perfecting and prosecuting the Appeals; (ii) holding the

Equity Committee and the law firm of Stevens & Lee P.C. in contempt of court for having

violated the "so-ordered" Plan Settlement Stipulation and requiring the Equity Committee and

Stevens & Lee P.C. to come into compliance with the "so-ordered" Plan Settlement Stipulation

by withdrawing their Appeals; (iii) imposing coercive sanctions of an appropriate amount to be

determined by the Court if the Equity Committee and Stevens & Lee P.C. do not timely comply

with the Court's order; and (iv) imposing compensatory sanctions on the Equity Committee and

Stevens & Lee, P.C. in favor of CRG to reimburse CRG for the documented fees and costs of

responding to the Appeals and litigating this Motion.

---

[9] On March 14, 2019, the Equity Committee filed a *Notice of Adjournment* [**Dkt. No. 551**] of a hearing on the Equity Committee Claim Objection even though that objection was (and remains today) dismissed with prejudice by this Court pursuant to Section 5.1.1 of the Final DIP Order. CRG reserves its rights as part of this Motion to seek sanctions against the Equity Committee and Gibson Dunn unless the *Notice of Adjournment* is immediately withdrawn and no further action with respect to their dismissed Equity Committee Claim Objection is taken.

**This Court Has the Authority to Compel the Equity Committee to Comply With the Order Approving the Plan Settlement Stipulation**

12. This Court retains jurisdiction to enforce its own orders. *See Travelers Indemnity Co. v. Bailey* 557 U.S. 137, 151, 129 S. Ct. 2195, 2205, 174 L. Ed. 2d 99 (2009) (a bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior orders."); *In re Continental Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders"); *In re Johns-Manville Corp.* 2004 Bankr. LEXIS 2519, *78 (Bankr. S.D.N.Y. Aug. 17, 2004) (court has jurisdiction to enforce its own confirmation orders and settlement orders to assure compliance therewith). Moreover, pursuant to 11 U.S.C. § 105(a), this Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" or that the Court determines is necessary or appropriate "to prevent an abuse of process."   11 U.S.C. § 105(a). Courts have, thus, invoked Section 105(a) to issue contempt orders and impose sanctions in bankruptcy cases and to enforce prior orders of the court. *See Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) ("The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders.") *citing Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994); *In re River Ctr. Holdings LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008) (court used section 105(a) to enforce its prior order approving a settlement agreement, holding that "section 105(a) plainly may be used 'to enforce and implement' earlier orders).

13. This Court has the authority to enforce the "so-ordered" Plan Settlement Stipulation in accordance with its terms. In filing the Appeals, the Equity Committee has violated its obligations under the Plan Settlement Stipulation as follows:

   a.   Section 6 of the Plan Settlement Stipulation provides, in pertinent part:

11

the Equity Committee agrees not to object to: (a) Sections 5.03, 5.09(a), 5.09(c), 5.14, 5.16, 5.17, 9.04, 9.05, 9.06, 9.08, 9.09 . . . of the Third Amended Plan . . ." *Plan Settlement Stip.* ¶ 6.

b.  Section 5.03 of the Plan provides for the establishment, funding and vesting of assets in the Litigation Trust (the "**Litigation Trust Provisions**"), including the transfer by the Debtors on the Effective Date of the "Litigation Trust Cash Contribution" (defined as not less than $1,500,000 of the Wind-Down Budget) to be used to fund investigation and/or prosecution of Avoidance Actions and Causes of Action that vest in the Trust, and vesting in the Litigation Trust of all Avoidance Actions and Causes of Action belonging to the Debtors that are neither acquired by Bausch or "released pursuant to this Plan o the Final DIP Order." *Plan* § 5.03

c.  Section 9.04 of the Plan provides for the Debtors' releases of the "Released Parties" which includes, among others, CRG.  *Plan* § 9.04.

d.  Section 9.05 of the Plan provides for third-party releases (including by the Equity Committee) of the same "Released Parties," including CRG, of, among other things, "suits" and "remedies" that such entity "would have been legally entitled to assert" relating to the Chapter 11 Cases, the DIP Agreement or the "subject matter of any Claim treated in the Plan."  Section 9.05 also expressly provides that such third-party release "shall not affect the releases granted to the applicable entities pursuant to Sections 5.1.2 of the Final DIP Order" (which includes allowance of the Remaining Prepetition Secured Claims and an injunction from any challenges thereto). As a result, ***pursuant to Section 9.05, as of the Effective Date, the Equity Committee releases CRG and waives forever any suits or***

12

*remedies with respect to CRG's Remaining Prepetition Secured Claims that are treated under the Plan*.  *Plan* §§ 3.01(c) and 9.05.

e.   Section 9.06 of the Plan exculpates, among others, CRG from any claim or liability for any postpetition action taken related to the DIP Credit Agreement, among other things.  *Plan* § 9.06.

f.   Section 9.09 of the Plan, as of the Effective Date, enjoins certain entities, including exculpated parties such as the Equity Committee, from taking or continuing any action with respect to (a) compromises and settlements made during the Chapter 11 Cases, including the settlements made in the Plan Settlement Stipulation (by virtue of Section 6 thereof) and (b) any matters released under Section 9.05 of the Plan. The Equity Committee is therefore enjoined from taking any actions (i.e., the Appeals) that relate to the releases, allowances and injunctions contained in Section 5.1.1 and 5.1.2 of the Final DIP Order.

g.   Section 5.1.1 of the Final DIP Order dismissed with prejudice the Equity Committee's Claim Objection and further enjoins all parties, including the Equity Committee, from filing or asserting any objections or challenges to the Remaining Prepetition Secured Claims or the liens securing such claims.

  *Final DIP Order* § 5.1.1.

h.   Section 5.1.2 of the Final DIP Order provides that (i) the Remaining Prepetition Secured Claims are allowed in full and "not subject to any further objection or challenge by any party at any time," (ii) the liens securing the Remaining Prepetition Secured Claims are "deemed legal, valid, perfected, enforceable and

13

non-avoidable for all purposes, and (iii) CRG (as Prepetition Agent and

Prepetition Lenders) are "deemed released and discharged from any and all claims

and causes of action related to or arising out of the Prepetition Loan Documents

and shall not be subject to any further objection or challenge by any party at any

time." *Final DIP Order* § 5.1.2.

i.  By filing the Settlement Order Appeal, the Equity Committee is seeking to

terminate, overturn or challenge the Settlement Agreement, including terms that

impact the Litigation Trust Provision such as (i) CRG's funding of the Wind-

Down Budget from its cash collateral, (ii) funding of the Litigation Trust from the

Wind-Down Budget, and (iii) contribution to the Litigation Trust of the

Avoidance Actions and proceeds thereof on which CRG has a lien that it has

agreed to release, all in violation of Section 6 of the Plan Settlement Stipulation.

j.  By filing the Final DIP Order Appeal, the Equity Committee is seeking to

terminate, overturn or challenge the Final DIP Order, including the claim

allowances, protections and releases provided in Sections 5.1.1 and 5.1.2 of the

Final DIP Order, each of which is also incorporated, and separately set forth, in

the Plan by virtue of Sections 9.04, 9.05 and 9.09 thereof and, as such, violates

Section 6 of the Plan Settlement Stipulation.

14.  The Equity Committee's breach of the "so-ordered" Plan Settlement Stipulation

constitutes a violation of this Court's order.  This Court has the authority to enforce its own

orders and, accordingly, should compel the Equity Committee to withdraw the Appeals in order

to comply with the order approving the Plan Settlement Stipulation.

14

**The Equity Committee Should Be JudiciallyAnd/Or Estopped From Appealing the Settlement Order and the Final DIP Order**

15.      Another ground for enforcing the Plan Settlement Stipulation is the doctrine of

judicial estoppel.  The Supreme Court has described the doctrine of judicial estoppel in the

following terms:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal

quotation marks, brackets, and citation omitted).

16.      "'[C]ourts have uniformly recognized' that the purpose of the doctrine 'is to

protect the integrity of the judicial process by prohibiting parties from deliberately changing

positions according to the exigencies of the moment,' and because judicial estoppel is designed

'to prevent improper use of judicial machinery,' it is 'an equitable doctrine invoked by a court at

its discretion.'"  *Intellivision v. Microsoft Corp.,* 484 F. App'x 616, 618–19 (2d Cir. 2012)

*quoting New Hampshire*, 532 U.S. at 749-50.  Courts have described threats to their integrity as

occurring when litigants "play fast and loose with the system" to suit the exigencies of self-

interest, *In re Enron Creditors Recovery Corp.*, 2008 WL 4181708, at *1–2 (Bankr. S.D.N.Y.

Sept. 4, 2008), *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999), or "'abus[e] the

judicial process through cynical gamesmanship, achieving success on one position, then arguing

the opposite to suit an exigency of the moment[]'",*Warda v. Comm'r*, 15 F.3d 533, 538 (6th Cir.

1994), *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F. Supp. 2d 369, 373–74

(S.D.N.Y. 2004).

17.    Courts have also recognized "that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Intellivision*, 83 F. App'x at 619 *quoting New Hampsire*, 532 U.S. at 750.  "Nevertheless, in evaluating whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors: (1) that a party's new position is clearly inconsistent with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id. citing New Hampshire,* 532 U.S. at 750–51. "But the Supreme Court has made clear that these factors do not constitute 'inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel,' and that '[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id. quoting New Hampshire,* 532 U.S. at 751.

18.    The doctrine of judicial estoppel may apply to inconsistent positions taken in the same action.  *In re Andrews,* 385 B.R. 496, 502 (Bankr. D. Conn. 2008); *see New Hampshire*, 532 U.S. at 749 (holding that judicial estoppel "generally prevents a party from prevailing *in one phase of a case* on an argument and then relying on contradictory argument to prevail *in another phase*") (emphasis added); *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005) (judicial estoppel could apply to inconsistent statements made in same action, but doctrine was inapplicable because prior statements were not relied on).  Moreover, a chapter 11 debtor can be judicially estopped from taking a position that is inconsistent with an earlier position taken in a stipulation and stipulated order entered in the bankruptcy case.  *See In re Peck,* 155 B.R. 301, 305-06 (Bankr. D. Conn. 1993).

16

19.    As discussed in more detail above, the Equity Committee negotiated and entered into the Plan Settlement Stipulation, pursuant to which it agreed not to object to certain provisions of the Plan, including the Debtors' releases of CRG, third party releases (including the Equity Committee's release) of CRG's Remaining Prepetition Secured Claims and the establishment, funding and vesting of assets in the Litigation Trust.  Immediately thereafter, the Equity Committee filed the Appeals, which are in effect objections to the very Plan provisions that the Equity Committee had agreed not to object to in the Plan Settlement Stipulation.  The Appeals clearly contravene the Equity Committee's obligations under the Plan Settlement Stipulation, which was approved and accepted by the Court when it so-ordered the Plan Settlement Stipulation on March 14, 2019.  If not estopped from pursuing the Appeals in violation of the Plan Settlement Stipulation, the Equity Committee will potentially be free to reap the benefits thereof without being burdened by the obligations to which it agreed to be bound (*i.e.*, the wavier of certain Plan objections), all to the detriment of CRG and other creditors.  The Court should exercise its discretion to prevent such bad faith gamesmanship and enter an order judicially estopping the Equity Committee from filing the Appeals.

20.    A final ground for enforcing the Plan Settlement Stipulation is the doctrine of equitable estoppel.  "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 725 (2d Cir. 2001).  "The application of the concept of equitable estoppel lies in a court's sound discretion…." *In re Chateaugay Corp.,* 156 B.R. 391, 403 n. 16 (S.D.N.Y.1993).

21.     To establish equitable estoppel under New York law, a party must show, by clear
and convincing evidence, that "(1) an act constituting a concealment of facts or a false
misrepresentation; (2) an intention or expectation that such acts will be relied upon; (3) actual or
constructive knowledge of the true facts by the wrongdoers; [and] (4) reliance upon the
misrepresentations which causes the innocent part to change its position to its substantial
detriment." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280
F.R.D. 147, 163–64 (S.D.N.Y. 2012) (internal quotation omitted).  The misrepresentation "need
not be intentional." *Id.* (internal quotation omitted).  "Rather, [i]t is sufficient that the party being
estopped knew or had reason to believe that their acts or inaction might prejudice the party
asserting the estoppel." *Id.* (internal quotation omitted).  "Accordingly, even '[a]n innocent
misleading of another party may estop one from claiming the benefits of his or her deception.'"
*Id. quoting One Beacon Ins. Co. v. Old Williamsburg Candle Corp.*, 386 F.Supp.2d 394, 401
(S.D.N.Y. 2005).

22.     The Plan Settlement Stipulation was heavily negotiated by the parties thereto -
*i.e.,* the Debtors, Creditors' Committee, CRG and the Equity Committee.  Each party received
certain benefits and made certain concessions associated with the agreement.  From CRG's
perspective (and the Debtors' and Creditors' Committee, no doubt), its willingness to enter into
the Plan Settlement Stipulation was reliant on the Equity Committee's agreement not to object
the Plan provisions set forth in paragraph 6 of the Plan Settlement Stipulation.  This was clear to
all in light of the fact that the waiver was extensively negotiated and central to the compromises
set forth in the Plan Settlement Stipulation.

23.     Nevertheless, immediately after the parties entered into the Plan Settlement
Stipulation and this Court indicated its approval thereof, the Equity Committee filed the Appeals,

18

which are in effect objections to the Plan provisions that the Equity Committee had agreed not to

object to.  At no time during the negotiation of the Plan Settlement Stipulation (or the

modifications to the Disclosure Statement and Plan) did the Equity Committee mention that it

intended to appeal either the Final DIP Order or the Settlement Order (necessarily effectuating an

immediate breach of the Plan Settlement Stipulation it just entered).  It was not until the hearing

on the Disclosure Statement had concluded that the Equity Committee first informed CRG of its

intent to file the Appeals later that day.  Had the Equity Committee not concealed this fact, CRG

(and likely the other parties to the Plan Settlement Stipulation) would not have entered into the

Plan Settlement Stipulation as drafted.  The purpose of the doctrine of equitable estoppel "is

to prevent a plaintiff from, in effect, trying to have [its] cake and eat it too." *Birmingham*

*Assocs. Ltd. v. Abbott Labs.,* 547 F. Supp. 2d 295, 304 (S.D.N.Y. 2008), *aff'd,* 328 F. App'x 42

(2d Cir. 2009).  The Court should effectuate this purpose by enforcing the Plan Settlement

Stipulation and estopping the Equity Committee from pursuing the Appeals.  *See Peck,* 155 B.R.

at 305-06 (Chapter 11 debtor was equitably estopped from arguing that his fiduciary obligations

to company in which he owned 51% of stock freed him from any restraint established by a

stipulation and stipulated order, which was entered in his bankruptcy case to induce aggrieved

creditor to vote in favor of plan, with respect to foreclosure actions against company's property);

*cf. Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045–46 (9th Cir.

2009) (equitable  estoppel precludes a party from claiming the benefits of a contract while

simultaneously attempting to avoid the burdens that contract imposes).

**The Court Should Hold the Equity Committee and the law firm of Stevens & Lee, P.C. In Contempt of Court and Impose Sanctions**

24.      "Courts have inherent power to enforce compliance with their lawful orders

through civil contempt."  *O'Toole v. Wrobel (In re Sledziejowski)*, No. 13-22050 (RDD), 2015

Bankr. LEXIS 1523, at *17 (Bankr. S.D.N.Y. May 4, 2015) (quotation marks omitted); *accord In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007) (explaining that the purpose of civil contempt is to compel a party to comply with court orders).  Civil contempt sanctions coerce the non-compliant party "into compliance with the court's order" or "compensate[s] the complainant for losses sustained."  *See In re Sledziejowski*,  2015 Bankr. LEXIS 1523, at *17 (quotation marks omitted) (alteration in original).

25.    "Civil contempt sanctions may also compensate for any harm that previously resulted." *In re Chief Exec. Officers Clubs*, 359 B.R. at 534; *In re Sledziejowski*, 2015 Bankr. LEXIS 1523, at *17 ("A contempt sanction is considered civil if it is remedial, and for the benefit of the complainant. . . ." (quotation marks omitted) (alteration in original)).  "When a contempt sanction is intended to compensate an injured party, proof of actual pecuniary losses is not necessary." *In re Sledziejowski*, 2015 Bankr. LEXIS 1523, at *17 (quotation marks omitted).

26.    "It is generally agreed that bankruptcy courts possess the same inherent sanction powers that district courts enjoy," including the "inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at *17-18 (quotation marks omitted).  "The majority of courts agree that, in core proceedings [like this one], bankruptcy courts have civil contempt power pursuant to 11 U.S.C. § 105." *Id.* at *18 (collecting cases); *see also In re Chief Exec. Officers Clubs*, 359 B.R. at 534 ("[I]t is well established that bankruptcy courts have power to enter civil contempt orders.").

27.    "Other courts have held that the inherent powers of a bankruptcy court to sanction arise independently of any statutory authority." *Id.*  "Pursuant to this inherent power, courts have broad discretion to fashion appropriate sanctions for abuses of court processes." *Id.* (quotation marks omitted).  "Federal courts consider two factors in determining whether to hold a party in

civil contempt: whether the alleged contemnor had notice of the court order, and whether that

person complied with the order." *In re Residential Capital, LLC*, 571 B.R. 581, 585 (Bankr.

S.D.N.Y. 2017).  "With respect to compliance with a specific order, the court may impose civil

contempt only where (1) the underlying order is clear and unambiguous, (2) proof of non-

compliance is clear and convincing, and (3) the contemnor has not been reasonably diligent and

energetic in attempting to accomplish what was ordered."  *Id.*; *In re Sledziejowski*, 2015 Bankr.

LEXIS 1523, at *18 (relying upon same elements).

28.    "'Clear and unambiguous' means that the clarity of the order must be such that it

enables the enjoined party to ascertain from the four corners of the order precisely what acts are

forbidden."  *In re Sledziejowski*, 2015 Bankr. LEXIS 1523, at *18 (quotation marks omitted).

"In the context of civil contempt, the clear and convincing standard requires a quantum of proof

adequate to demonstrate 'reasonable certainty' that a violation occurred.  *Id.* at *18-19 (quotation

mark omitted).  "[A] finding of bad faith, willfulness, or substantial fault is *not* a prerequisite to a

finding of civil contempt."  *Id.* (emphasis added) (quotation marks omitted).  Instead, "[w]here

contempt is found, the defendant must not have diligently attempted to comply with the order."

*Id.* (quotation marks omitted).

29.    The standards for holding the Equity Committee and Stevens & Lee, P.C. in civil

contempt and imposing appropriate sanctions is easily met.  As a threshold matter, the parties

requested, and this Court agreed, to "retain jurisdiction with respect to all matters arising from or

related to the implementation or interpretation of" the Plan Settlement Stipulation.  *Plan

Settlement Stipulation* ¶ 10.

30.    Pursuant to the Plan Settlement Stipulation (which the Equity Committee

participated in drafting and executed), the Equity Committee agreed to not object to key

21

provisions of the Plan.  By filing the Appeals, however, the Equity Committee is necessarily

objecting to, and seeking to overturn, critical components of the Plan (as described in detail

above) in violation of the Equity Committee's agreement not to do so, thereby knowingly

violating the Plan Settlement Stipulation.

31.     The Equity Committee's conduct was bold indeed.  As recently as March 12,

during the hearing to consider the Plan Settlement Stipulation and the Disclosure Statement, the

Equity Committee knowingly and intentionally misled this Court.  Knowing it was just a few

hours away from filing the Appeals, the Equity Committee represented to this Court that it was

on board with the Plan Settlement Stipulation, the Plan and Disclosure Statement.  After the

Debtors' counsel explained in detail the provisions of the Plan Settlement Stipulation, including

Section 6 thereof, the Court asked whether anyone besides the Debtors and the United States

Trustee wished to be heard on the matter and the Equity Committee said absolutely nothing.  *See*

*Tr. Mar. 12 Hr'g* at 27:11-20.

32.     Later, after the Debtors had presented in detail the revisions to the Plan dictated

by the Plan Settlement Stipulation (which were numerous), the Court expressly asked the Equity

Committee whether it supported the Plan, and the Equity Committee responded:  "We support

the Plan."  *Id.* at 43:5-6.  Subsequently, the Equity Committee clarified its response by saying,

"The equity committee supports the plan to the extent it implements the [Plan Settlement

Stipulation] settlement.  And we believe that the sections identified by Ms. Okine in going

through the stipulations accurately supports that. . . We do explicitly reserve all rights with other

aspects of the plan."  *Id.* at 44:4-9.

33.     Finally, at the end of the hearing, the Court gave the Equity Committee another

chance to raise issues or be heard with respect to the Plan or the Disclosure Statement and, again,

the Equity Committee said absolutely nothing.  *Id.* at 56:17-19.  Noting that the Equity

Committee had been "heavily involved, now, for several weeks," the Court expressed its

confidence that the solicitation timing was adequate.  *Id.* at 57:2-9.  At no point did the Equity

Committee disclose to the Court that it was planning on filing the Appeals later that afternoon, so

that the Disclosure Statement the Court has just approved would no longer provide adequate

information regarding the Plan, or that the Plan Settlement Stipulation that had just been

approved would be immediately breached.  It was only after the conclusion of the hearing that

counsel to the Equity Committee first disclosed to CRG that it intended to file the Appeals later

that day.

          34.    The Equity Committee's actions, when seen in the context of its behavior

throughout these Chapter 11 Cases, is intended to wreak havoc on the Debtors' prospects for

maximizing recovery to creditors and relies on a "scorched earth" policy to exact a payoff from

CRG and the Debtors' general unsecured creditors.  Once this Court approved the Settlement

Agreement under Bankruptcy Rule 9019, allowing CRG's Remaining Prepetition Secured Claim

and providing terms on which a plan could be developed, confirmed and implemented, the

Equity Committee chose not to continue litigating the Equity Committee DIP Objection and

purposely chose not to immediately file a Notice of Appeal to either the Settlement Order or the

Final DIP Order.  Instead, it knowingly acquiesced in CRG's funding of the $25 million final

DIP Facility advance to gain any benefits it could from continuation of the bidding process, the

auction process and ultimately the closing of the asset sale.  Moreover, once it became clear that

the net sales proceeds of the Bausch transaction would not provide any recovery for equity

holders and the only source of potential recovery were the claims that would vest in the

Litigation Trust, the Equity Committee participated actively in negotiating, and ultimately

23

executing, the Plan Settlement Stipulation to ensure that the Debtors would not be providing

unlimited releases to their officers and directors and to gain some control over the Litigation

Trust.  Only now that the sale process is complete, the Plan Settlement Stipulation has been

entered and the Disclosure Statement has been approved has the Equity Committee revealed its

plan to challenge the very orders on which the Plan is based. The Equity Committee's actions

wreak of bad faith gamesmanship.

35.     Courts will regularly hold parties in contempt and issue appropriate sanctions for

violations of court order agreements, like the one the Equity Committee and Stevens & Lee, P.C.

are violating here.  *See, e.g.*, *In re Residential Capital, LLC*, 571 B.R. at 583-82, 585-86

(imposing sanctions against party for filing "seeking 'judicial notice'" in violation of permanent

injunction); *In re Peck*, 155 B.R. 301, 308-309 (Bankr. D. Conn. 1993) (holding party in

contempt for violating stipulated order, explaining that "[j]ust as violations of consent orders

may result in a finding of contempt, so may violations of stipulations or settlement agreements

ordered and approved by a court" (internal citation omitted)); *In re Stein & Day, Inc.*, 83 B.R.

221, 226 (Bankr. S.D.N.Y 1988) (holding non-compliant party in contempt, explaining that "[i]f

the parties submit [a] stipulation to the court and it is 'So ordered and approved' by the court, the

noncompliance by one of the parties with such stipulation may give rise to a contempt order

because a 'So ordered stipulation has a double aspect both as a contract and as a court order");

*see also, e.g.*, *Sprague v. Williams (In re Van Winkel)*, 583 B.R. 759, 772 (10th Cir. BAP 2018)

("[W]e affirm the bankruptcy court's determination that Appellants violated the Stipulated

Order, so some damage award is undoubtedly appropriate.  Bankruptcy courts clearly have the

power to enter monetary sanctions against a party for civil contempt . . . ."); *In re Galleria

Enters. of Md., Ltd.*, 102 B.R. 472, 475 (Bankr. D. Md. 1989) ("This Court has found the

24

defendant Michael Fox Auctioneers, Inc., to be liable to the plaintiff for having committed civil contempt by violating the terms of the Order approving the Stipulation of Settlement dated October 16, 1986."); *Williams v. Johanns*, 529 F. Supp. 2d 22, 22-24 (D.D.C. 2008) (holding attorney in contempt for violating court's confidentiality order); *In re Schissler*, No. 07-61319, 2007 Bankr. LEXIS 3806, at *12-13 (Bankr. N.D.N.Y. Nov. 2, 2007) (holding law firm in contempt for willfully and knowingly violating court order requiring it to seek court authorization before settling separate personal injury matter); *SEC v. ACI Invs. Protective Ass'n*, No. 95-56644, 1996 U.S. App. LEXIS 27593, at *1-2, 8-10 (9th Cir. Oct. 22, 1996) (affirming district court's decision finding attorney in civil contempt for violating a stipulated order); *Cottman Transmission Sys. v. Metro Distrib.*, No. 92-2131, 1996 U.S. Dist. LEXIS 1052, at *12-15 (E.D. Pa. Feb. 2, 1996) (holding attorney in contempt for knowingly violating a preliminary injunction order involving his client defendant), *aff'd* 100 F.3d 946 (3rd Cir. 1996); *Jolly v. Pittore*, 170 B.R. 793, 796-98 (S.D.N.Y. 1994) (holding party and its counsel in contempt for having secured a delay in appointment of liquidating trustee based in part on representations to court that it would not file bankruptcy but did so anyway thereafter).

36.     Accordingly, this Court should issue an order requiring the Equity Committee and Stevens & Lee P.C. to expeditiously come into compliance with the "so-ordered" Plan Settlement Stipulation by withdrawing their Appeals and should impose coercive sanctions of an appropriate amount to be determined by the Court if they do not timely comply with the Court's order.  This Court should also impose compensatory sanctions on the Equity Committee and Stevens & Lee, P.C. in favor of CRG to compensate CRG for the documented fees and costs of responding to the Appeals and litigating this Motion.

**The Equity Committee Has No Economic Interest At Stake And Should Not Be Allowed To Hold These Cases Hostage to Its Own Obstructionist Agenda**

37.     Finally, the equity security holders are completely out of the money in these Chapter 11 Cases.  Given the net sale proceeds of approximately $20 million, the huge administrative expenses incurred in these cases and the $38 million in general unsecured claims that are senior to the equity holders, even if the Settlement Order and the Final DIP Order were overturned and the $37.1 million Remaining Prepetition Secured Claims were disallowed in full, the Equity Committee would still not receive a cash recovery from the Debtors' estates but would receive only a hope certificate to a contingent recovery from the Litigation Trust.  As such, the equity security holders have no economic interest these Chapter 11 Cases.  Accordingly, the Equity Committee should not be allowed to delay the Debtors' Plan process to the detriment of the real parties-in-interest, i.e., the creditors.[10]

## CONCLUSION

WHEREFORE, CRG respectfully requests that this Court enter an order (i) enforcing the order approving the Plan Settlement Stipulation by compelling the Equity Committee to withdraw the Settlement Order Appeal and the Final DIP Order Appeal within two (2) business days of entry of the attached Proposed Order or, in the alternative, estopping (whether judicially or equitably) the Equity Committee from perfecting and prosecuting the Appeals; (ii) holding the Equity Committee and the law firm of Stevens & Lee P.C. in contempt of court for having violated the "so-ordered" Plan Settlement Stipulation and requiring the Equity Committee and Stevens & Lee P.C. to come into compliance with the "so-ordered" Plan Settlement Stipulation

---

[10] CRG submits that, at this point in these cases, the United States Trustee should reconsider the appointment of the Equity Committee and consider disbanding the Equity Committee and terminating the retention of all of its professionals.

26

by withdrawing their Appeals; (iii) imposing coercive sanctions of an appropriate amount to be

determined by the Court if the Equity Committee and Stevens & Lee P.C. do not timely comply

with the Court's order; (iv) imposing compensatory sanctions on the Equity Committee and

Stevens & Lee, P.C. in favor of CRG to reimburse CRG for the documented fees and costs of

responding to the Appeals and litigating this Motion and/or (v) granting such other and further

relief as is just and proper.

Dated:  March 15, 2019
         New York, New York

                                    **VENABLE LLP**

                                    */s/ Jeffrey S. Sabin*
                                    Jeffrey S. Sabin, Esq.
                                    1270 Avenue of the Americas
                                    New York, New York 10020
                                    Telephone:    (212) 307-5500
                                    Facsimile:     (212) 307-5598

                                    *Counsel to CRG Servicing LLC and*
                                    *  Affiliated Lenders*