| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: April 23, 2019<br>Hearing Time: 11:00 a.m. |

-------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| SYNERGY PHARMACEUTICALS, INC. *et al.*, | Case No. 18-14010 (JLG) |
| Debtors. | (Jointly Administered) |

-------------------------------------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE TO
THE FOURTH AMENDED PLAN OF REORGANZATION OF SYNERGY
PHARMACEUTICALS, INC. AND ITS DEBTOR AFFILIATE**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby submits his objection (the "**Objection**") to the approval of the Fourth Amended Plan [ECF Doc. No.651-2] (the "**Plan**") of Synergy Pharmaceuticals, Inc. and Synergy Advanced Pharmaceuticals, Inc. (collectively, the "**Debtors**").[1] In support thereof, the United States Trustee respectfully states:

**PRELIMINARY STATEMENT**

The United States Trustee and other parties objected to various release and exculpation provisions in the Plan at the disclosure statement stage. As a result of these objections, the Debtors made certain changes to the release and exculpation provisions. Recognizing that changes were made to these provisions as contained in the Plan, the United States Trustee still has several concerns:

a. The definitions of Released Parties, Releasing Parties, and Exculpated Parties continue to be overly broad. The definitions of Released Parties and Exculpated Parties include a wide range of parties some of which do not appear to have any connection to these cases and cannot be said to have made "contributions" "to facilitate

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as defined in the Plan.

and implement the Plan" as the Debtors contend. *See* Plan at Sections 1.131, 1.75. The Definition of Releasing Parties is overly broad and almost certainly captures parties who were not able to indicate their affirmative consent to giving releases. *See* Plan at Section 1.132.

  b. The Plan provides for prospective exculpation of certain entities, specifically the Litigation Trustee and the Plan Administrator, that do not yet exist and will not exist until after the Effective Date.

  c. The Plan impermissibly deviates from the Bankruptcy Code's priority scheme without the consent of affected creditors. The Plan, as recently modified, now provides for a distribution to equity security holders, while unsecured creditors are not being paid in full. This deviation from the Bankruptcy Code's priority scheme cannot be approved without the consent of unsecured creditors. Additionally, under Bankruptcy Rule 3019, the Debtors should solicit unsecured creditors and equity security holders as the terms of the Plan have changed in a material way.

  For these reasons, as detailed below, the United States Trustee objects to confirmation of the Plan.

## BACKGROUND

### General Background

1. The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code on December 12, 2018 (the "**Petition Date**").

2. The Debtors are biopharmaceutical companies focused on the development and commercialization of novel gastrointestinal therapies. Declaration of

Gary G. Gemignani, dated December 12, 2018 (the "**Gemignani Declaration**"), ECF Doc. No. 16. ¶ 8.

3. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF Doc. No. 52.

5. On December 20, 2018, the United States Trustee appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). ECF Doc. No. 92. On January 29, 2019, the United States Trustee appointed an official committee of equity security holders (the "**Equity Committee**" and together with the Creditors' Committee, the "**Committees**").

6. On March 11, 2019, the Debtors filed a prior version of the plan and a disclosure statement (the "**Disclosure Statement**"). The Court held a hearing on the Disclosure Statement on March 12, 2019 (the "**Disclosure Statement Hearing**").

7. Prior to the hearing to the Disclosure Statement Hearing, the Debtors, CRG Servicing LLC ("**CRG**"), Creditor's Committee, Equity Committee, and Houlihan Lokey Capital, Inc. ("**Houlihan**") entered into a stipulation resolving the objections of key stakeholders (including the Equity Committee) to the Debtors' Motion for Entry of Order Approving Appointment and Compensation of Independent Director Nunc Pro Tunc to February 13, 2019 [Docket No. 373] (the "**Independent Director Motion**") and certain of the Equity Committee's objections to the Plan (the "**Independent Director**

3

**Settlement Stipulation**"). Under the Independent Director Settlement Stipulation, the Creditors' Committee agreed to support the Plan, and the Equity Committee agreed not to object to specified provisions of the Plan.

8. On March 13, 2019, the Court entered an order approving, among other things, the adequacy of the Disclosure Statement and certain procedures for solicitation of votes on the Plan [Docket No. 541] (the "**Disclosure Statement Order**"). The Disclosure Statement Order established April 11, 2019 as the deadline for: (a) creditors to cast votes on the Plan and (b) parties-in-interest to object to the Plan. Disclosure Statement Order ¶¶ 7, 13. The Disclosure Statement Order was entered contemporaneously with the Independent Director Settlement Stipulation, which resolved the Equity Committee's and the Creditors' Committee's objections to the Disclosure Statement, and pursuant to which both Committees withdrew their objections to the Disclosure Statement.

### The April 9, 2019 Settlement

9. On April 10, 2019, the Court entered a further Order (I) approving the settlement among the Debtors, CRG Servicing LLC ("**CRG**"), the Committees, and Houlihan; and (II) finding that the proposed modifications to the Plan do not require further solicitation (the "**Equity Committee Appeal Order**") [Dkt. No. 651].

10. Under the Plan, Class 8 claimants ("**Equity Holders**" or "**Class 8**") were deemed to reject the Plan and were not entitled to vote. Under the Equity Committee Appeal Order, the Court found that Class 8 need not be solicited.

11. Under the Terms of the Equity Committee Appeal Order, the Plan Administrator will escrow $50,000 with the Litigation Trustee to be used solely for the

4

benefit of the Equity Committee's designees on the Oversight Committee to investigate and object to any settlement of claims proposed by the Litigation Trustee.

**The Plan and Disclosure Statement**

12. The Plan provides for the liquidation of the Debtors' estates following a sale of substantially all of the Debtors' assets. *See* Disclosure Statement at 15.

13. The Plan provides for the vesting of the estates' retained causes of action into a litigation trust (the "**Litigation Trust**") to be administered by a trustee (the "**Litigation Trustee**") for the benefit of unsecured creditors and equity holders upon the effective date. *See* Plan at Section 5.03. The Plan provides for a plan administrator ("**Plan Administrator**") to oversee the wind-down of the Debtors' estates. *Id*.

14. The Plan contains certain releases by the Debtors (the "**Debtor Release**") and certain releases by third parties (the "**Third Party Release**"). Plan at Sections 9.04 and 9.05.

15. The Debtor Release provides that the Debtors and their estates shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged certain "Released Parties" from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever. *See* Plan at Section 9.04.

16. The Third Party Release provides that certain defined "Releasing Parties" shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each of the "Released Parties" from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever. *See* Plan at Section 9.05.

5

17.     The Plan contains the following definition of Released Parties:

"**Released Parties**" means, collectively, each of the following in their respective capacities as such: means, collectively, each of the following in their respective capacities as such: (a) the Prepetition Secured Parties; (b) the DIP Secured Parties; (c) the Debtors' Professionals; (d) the Creditors' Committee and each of its current and former members, but solely in their capacities as such; (e) the Equity Committee and each of its current, former and ex-officio members, but solely in their capacities as such; and (f) with respect to each of the foregoing entities in clauses (a) through (e), **such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, Affiliates, subsidiaries, divisions, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, managing members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case solely in their capacity as such.** For the avoidance of doubt, and notwithstanding anything herein to the contrary, in no event shall holders of Interests in Synergy Pharmaceuticals (other than current, former and ex-officio members of the Equity Committee, but solely in their capacities as such), be considered "Released Parties".

Plan at Section 1.131 (emphasis added).

18.     The Plan contains the following definition of Releasing Parties:

"**Releasing Parties**" means, collectively, each of the following in their respective capacities as such:  (a) the Released Parties; (b) all Holders of Claims that vote to accept the Plan; (c) all Holders of Claims entitled to vote on the Plan who abstain from voting on the Plan and elect on their ballot to opt-in to the Third Party Release; and (d) with respect to each of the foregoing entities in clauses (a) through (c), such Entity and its current and **former Affiliates**, and such Entities' and their **current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, Affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, managing members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such**; provided, however, that Entities identified in this subsection (d) shall not be considered "Releasing Parties" where their

6

respective Holder has not checked the box on the ballot and returned the ballot in accordance with the Disclosure Statement Order to opt in to the Third Party Release contained in Section 9.05 of the Plan; provided, further, that holders of Interests in Synergy Pharmaceuticals (other than current, former and ex-officio members of the Equity Committee, but solely in their capacities as such) shall not be considered "Releasing Parties".

Plan at Section 1.132 (emphasis added).

19. The Plan contains an exculpation provision. The Debtors seek exculpation for a list of "Exculpated Parties" in connection with "any postpetition action taken or omitted to be taken during the period commencing on the Petition Date through and including the Effective Date in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Asset Purchase Agreement, the DIP Credit Agreement, the Chapter 11 Cases, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, *provided* that, nothing in this Section 9.06 shall be construed to release the Exculpated Parties from gross negligence, willful misconduct, or fraud as determined by a Final Order." Plan at Section 9.06.

20. Exculpated Parties are defined as follows:

"**Exculpated Parties**" means, collectively, each of the following in their respective capacities as such: (a) the Debtors; (b) the Liquidating Debtors; (c) the Plan Administrator; (d) the Litigation Trustee; (e) the Debtors' current officers, directors, and managers; (f) the Prepetition Secured Parties; (g) the DIP Secured Parties; (h) the Creditors' Committee and each of its current and former members, but solely in their capacities as such; (i) the Equity Committee and each of its current, former and ex-officio members, but solely in their capacities as such; and (j) with respect

7

to each of the foregoing entities in clauses (a) through (i) (excluding, in each case, the Debtors' former officers and directors), **such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, Affiliates, subsidiaries, divisions, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, managing members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such**; provided that Holders of Interests in Synergy Pharmaceuticals (other than current, former and ex-officio members of the Equity Committee, but solely in their capacities as such) shall not be Exculpated Parties.

Plan at Section 1.75 (emphasis added).

## ARGUMENT

### A. The Definitions of Released Parties, Releasing Parties, and Exculpated Parties Continue to be Overly Broad

The Released Parties are beneficiaries of both the Debtor Release and the Third Party Release. The definition of Released Parties and Releasing Parties both entail a lengthy list that includes not just case parties but also all of these parties' current and former affiliates, current and former directors, managers, officers, equity holders, predecessors, participants, successors, assigns, affiliates, divisions, managed accounts or funds, and host of advisors, consultants and professionals. *See* Plan at Section 1.131. The Definition of Exculpated Parties contains a similar laundry of list of tangential parties whose identities are not disclosed and whose connections to these cases are not explained. *See* Plan at Section 1.75.

Debtor releases (to the extent they are not granted to insiders) are evaluated under a business judgment standard, and are approved so long as they do not fall below the lowest range of reasonableness. *In re Chassix Holdings*, 533 B.R. 54, 70 (Bankr.

8

S.D.N.Y. 2015)(citations omitted). While this standard is deferential, it is not toothless. On the current record, the Court cannot possibly determine the reasonableness of the Debtors' proposed release of this overbroadly list of unidentified parties whose connections to these cases are unexplained.

The overly broad definition of Released Parties and Releasing Parties also renders the Third Party Release unconfirmable. In effect, a lengthy list of unidentified third parties are being forced to release claims they may have against an equally lengthy list of unidentified third parties. This raises questions about the Court's subject matter jurisdiction, appropriate notice, consent, adequate consideration, and reasonableness. For a debtor to ask a court to approve a consensual release by one identified third party against another identified third party is one thing. For the Debtors, here, to ask the Court to require an unnamed tangential third party (for example, an equity holder of one of the identified Releasing Parties) to release all claims it may have against another unnamed tangential third party (for example, a former affiliate of one of the identified Released Parties) is entirely inappropriate. Moreover, this issue can be easily resolved by narrowly and appropriately tailoring the list of the Released and Releasing Parties.

The list of Exculpated Parties is also overly broad. Exculpation provisions are based "to some extent . . . on the theory that court-supervised fiduciaries are entitled to qualified immunity for their actions. *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW), 2019 WL 1527968, at *2 (Bankr. S.D.N.Y. Apr. 8, 2019) (citations omitted). Here, the Plan not only exculpates certain case parties, but also all of their current and former directors, managers, officers, equity holders, predecessors, participants, successors, assigns, affiliates, subsidiaries, divisions, managed accounts or

funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, managing members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals." This lengthy list of tangential entities should be substantially reduced before the Court approves the Plan.

### B.  **Prospective Exculpation**

The definition of Exculpated Parties includes the Litigation Trustee and the Plan Administrator.  Plan at Section 1.75.  These entities do not come into existence until the Plan goes effective.  The exculpation provision is limited temporally to end as of the Effective Date of the Plan.  *See* Plan at Section 9.06.  The Debtors cannot grant prospective exculpation.  The Debtors' argument that this provision is necessary to attract qualified candidates for these positions is not persuasive.  The Litigation Trust Agreement and Plan Administrator Agreement can provide whatever appropriate exculpation provisions are necessary to attract qualified candidates.

### C.  **The Plan Impermissibly Deviates from the Bankruptcy Code's Priority Scheme without the Consent of Affected Creditors**

Unsecured creditors are not being paid in full under the Plan.  Nevertheless, the Plan, which incorporates the recent settlement, now provides for a distribution to equity.  Unsecured creditors, at large, have not had an opportunity to consent to or reject this modification to the Plan.  In the dismissal context, the United States Supreme Court has held that without the consent of affected creditors, bankruptcy courts may not approve structured dismissals providing for distributions that "deviate from the basic priority rules that apply under the primary mechanisms the [Bankruptcy] Code establishes for final

10

distributions of estate value in business bankruptcies." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978, 197 L. Ed. 2d 398 (2017). Similarly, here, the Plan provides for a final distribution that does not comply with the Bankruptcy Code's priority scheme. Such a deviation cannot be approved without the consent of unsecured creditors.

### D.    Impermissible Waiver of Solicitation

The Bankruptcy Code builds in certain required notice and solicitation rights for parties whose rights will be impacted by a chapter 11 plan. These protections cannot be overridden with an agreement between the sophisticated parties in interest.

Bankruptcy Rule 2002 requires 28 days' notice to all creditors of the deadline for "filing objections and the hearing to consider confirmation of a . . . chapter 11 plan." Fed. R. Bankr. P. 2002(b). Bankruptcy Rule 2002 further provides a separate 28 day notice period of the time for filing objections to confirmation of a proposed plan, and Bankruptcy Rule 3020(b)(1) provides that objections to confirmation of a plan must be filed and served "within a time fixed by the court." *Id.*; and Fed. R. Bankr. P. 3020(b)(1).[2]

Despite the Bankruptcy Rules which, in effect, emphasize the importance of notice to creditors and other parties with respect to disclosure statements and the confirmation of plans, the Debtors seek to establish a process which effectively hamstrings parties that might otherwise seek to examine the Debtors, inquire into the terms of the Plan, and object to the Plan. Indeed, the basic principle of due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

---

[2] Although Federal Rule of Bankruptcy Procedure 9006(c) enables a party to ask the Court to shorten certain notice periods, the Debtors have made no motion and have offered no justification to shorten the notice period for a disclosure statement and/or plan from 28 days to 3 days. Fed. R. Bankr. P. 9006(c)(2).

11

objections. *Folger Adam Security, Inc. v. DeMatteis/MacGregor*, 209 F.3d 252, 265 (3d Cir. 2000).

Section 1127(a) of the Bankruptcy Code provides that "[t]he proponent of a plan may modify such plan at any time before confirmation . . . . After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan." 11 U.S.C. § 1127(a). In fact, "[a]ny holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection." *Id*. § 1127(d). Likewise, Bankruptcy Rule 3019(a) provides that a plan proponent may modify the plan even after the plan has been accepted, but before its confirmation. *See* Fed. R. Bankr. P. 3019(a).

Further, [i]f the court finds after hearing on notice to the trustee, any committee appointed under the [Bankruptcy] Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of Bankruptcy Rule 3019(a) applies "after a plan has been accepted and before its confirmation," Fed. R. Bankr. P. 3019(a), and thus, is not applicable to all parties, as solicitation concluded on April 11, 2019, after the date of the and not all parties have voted on the Plan yet.

Section 1126(g) of the Bankruptcy Code provides: Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests. 11 U.S.C. § 1126(g).  The holders of Class 8 (equity holders) will

12

receive a settlement payment as consideration for the withdrawal of the Appeals and the resolution of all objections to the Plan.

The treatment of unsecured creditors and equity security holders under the Plan has changed in a material way as a result of the recent settlement. Equity security holders are giving up rights in exchange for a minor distribution. Unsecured creditors are being "skipped" in the priority scheme. All rights were reserved for anyone to object to confirmation of the Plan. These classes should be resolicited before the Plan is confirmed.

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court deny confirmation of the Plan.

Dated: New York, New York
April 12, 2019

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Greg M. Zipes*
Greg M. Zipes
Office of the United States Trustee
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500