SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Lisa Laukitis
Christine A. Okike
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

– and –

Ron E. Meisler (admitted *pro hac vice*)
Christopher M. Dressel (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
155 North Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Neil M. Berger
Kyle J. Ortiz
One Penn Plaza
Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Fax: (212) 967-4258

*Counsels to Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*<br><br>**SYNERGY PHARMACEUTICALS INC.,** *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br><br>**Case No. 18-14010 (JLG)**<br><br>**Jointly Administered**<br><br>**Related Docket Nos. 541, 546, 549, 632, 666, 671, 685, 687, 688, 689 & 690** |

**NOTICE OF FILING OF PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW
AND ORDER CONFIRMING FOURTH AMENDED JOINT PLAN OF
REORGANIZATION OF SYNERGY PHARMACEUTICALS INC.
AND ITS DEBTOR AFFILIATE**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Synergy Pharmaceuticals Inc. (5269); Synergy Advanced Pharmaceuticals, Inc. (4596). The address of the Debtors' corporate headquarters is 620 Lee Road, Chesterbrook, Pennsylvania 19087.

      **PLEASE TAKE NOTICE** that, on the date hereof, the debtors and debtors-in-possession in the above-captioned cases (the "**Debtors**"), filed the *Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* (the "**Fourth Amended Plan**") [Docket No. 685]; the *Declaration of Sean A. Gumbs, a Senior Managing Director at FTI Consulting, Inc., in Support of the Confirmation of the Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* (the "Gumbs Declaration") [Docket No. 688]; the *Declaration of Gary G. Gemignani in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* (the "**Gemignani Declaration**") [Docket No. 689]; the *Debtors' Memorandum of Law (I) in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate and (II) in Response to Objections Thereto* (the "**Confirmation Brief**") [Docket No. 690]; and the *Notice of Filing of Second Plan Supplement to the Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* (the "**Second Plan Supplement**") [Docket No. 687].

      **PLEASE TAKE FURTHER NOTICE** that the Debtors' hereby file the proposed *Findings of Fact, Conclusions of Law and Order Confirming Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* (the "**Proposed Confirmation Order**"), which is attached hereto as <u>Exhibit 1</u>.

      **PLEASE TAKE FURTHER NOTICE** that the hearing to consider the Proposed Confirmation Order is currently scheduled for **April 23, 2019 at 11:00 a.m. (Prevailing Eastern Time)** (the "**Confirmation Hearing**") before the Honorable  James L. Garrity Jr., Courtroom 601, of the United States Bankruptcy Court, for the Southern District of New York, One Bowling Green, New York, New York 10004.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, to alter, amend, modify, or supplement the Fourth Amended Plan, the Proposed Confirmation Order and any related documents; provided that, if any such document is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a blackline of such document with the Bankruptcy Court.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Fourth Amended Plan, the Gemignani Declaration, the Gumbs Declaration, the Confirmation Brief, the Second Plan Supplement and the Proposed Confirmation Order, filed in the chapter 11 cases are available free of charge by visiting https://cases.primeclerk.com/Synergy or by calling 1-855-388-4579 (toll free from the U.S. and Canada); or 1-646-795-6978 (international) or by e-mail at synergyinfo@primeclerk.com.  You may also obtain copies of any pleadings by visiting the Court's website at https://ecf.nysb.uscourts.gov.  Note that a PACER password is needed to access documents on the Court's website.

*[Remainder of Page Intentionally Left Blank]*

Dated: New York, New York
       April 18, 2019

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Ron E. Meisler*
Lisa Laukitis
Christine A. Okike
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

– and –

Ron E. Meisler (admitted *pro hac vice*)
Christopher M. Dressel (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
155 North Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Neil M. Berger
Kyle J. Ortiz
One Penn Plaza
Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Fax: (212) 967-4258

*Counsels to Debtors
and Debtors-in-Possession*

<u>EXHIBIT 1</u>

<u>Proposed Confirmation Order</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **SYNERGY PHARMACEUTICALS INC.,** *et al.*, | **Case No. 18-14010 (JLG)** |
| Debtors.[1] | **Jointly Administered** |
|  | **Related Docket Nos. 541, 546, 549, 632, 666, 671, 685, 687, 688, 689 & 690** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF SYNERGY PHARMACEUTICALS INC. AND ITS DEBTOR AFFILIATE

The Court having considered the *Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate*, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**," "**Synergy**" or the "**Company**," or, as applicable after the Effective Date, the "**Liquidating Debtor**"), dated as of April 18, 2019 [Docket No. 685] (as may be amended or supplemented from time to time in accordance with its terms and including all exhibits and supplements thereto, the "**Plan**"),[2] and the *Third Amended Disclosure Statement for the Third Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate*, dated as of March 13, 2019 [Docket No. 546] (the "**Disclosure Statement**"); and upon the *Order (I) Approving the Form and Manner of Notice of the Disclosure Statement Hearing; (II) Approving Disclosure Statement; (III) Scheduling*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Synergy Pharmaceuticals Inc. (5269); Synergy Advanced Pharmaceuticals, Inc. (4596). The address of the Debtors' corporate headquarters is 620 Lee Road, Suite 200, Chesterbrook, Pennsylvania 19087.

[2]     Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as **Exhibit A**.

*Hearing on Confirmation of Plan; (IV) Establishing Deadlines and Procedures for Filing Objections to Confirmation of Plan; (V) Establishing Deadlines and Procedures for Voting on the Plan; (VI) Approving Solicitation Procedures; (VII) Establishing Procedures for Tabulation of Votes; and (VIII) Granting Related Relief*, entered on March 13, 2019 [Docket No. 541] (the "**Solicitation Procedures Order**"); and upon the Stipulation and Order, entered on March 14, 2019 [Docket No. 553], approving an agreement between the Debtors, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), the Official Committee of Equity Security Holders (the "**Equity Committee**"), and CRG Servicing LLC and affiliated lenders (collectively, "**CRG**" and, together with the Debtors, the Creditors' Committee, and the Equity Committee, the "**Parties**") resolving, among other things, certain objections to the Plan; and upon the CRG-ESH Settlement Order, entered on April 9, 2019 [Docket No. 651], approving the CRG-ESH Settlement between the parties thereto as set forth in Section 5.18 of the Plan; and the Court on April [23], 2019 having held a hearing pursuant to section 1129 of the Bankruptcy Code to consider Confirmation (the "**Confirmation Hearing**"); and the Court having considered the *Debtor's Memorandum of Law (I) in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate and (II) in Response to Objections Thereto*, filed by the Debtors on April 18, 2019 [Docket No. 690] (the "**Confirmation Brief**"), the *Declaration of Gary G. Gemignani, Chief Financial Officer of the Debtors, in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 689] (the "**Gemignani Declaration**"), the *Declaration of Sean A. Gumbs, a Senior Managing Director at FTI Consulting, Inc., in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 688] (the

2

"**Gumbs Declaration**"), and the *Declaration of James Daloia of Prime Clerk, LLC ("**Prime Clerk**") Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Third Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 671] (the "**Voting Certification**"), each filed by the Debtors (and in the case of the Voting Certification, Prime Clerk) in advance of the Confirmation Hearing; the Court having admitted into the record and considered evidence at the Confirmation Hearing; the Court having overruled any and all unresolved objections to confirmation of the Plan and all reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; the Court having taken judicial notice of the contents of the docket of the Chapter 11 Cases (defined below) maintained by the clerk of the Bankruptcy Court of the Southern District of New York (the "**Clerk of the Court**") or its duly-appointed agent, including all pleadings and other documents filed, all orders entered thereon, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Cases; and after due deliberation thereon, good and sufficient cause appearing therefor, and, in addition to the following, in accordance with the findings and decrees made by the Court on the record at the Confirmation Hearing,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

3

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.    **Jurisdiction; Venue; Core Proceeding**. This Court has jurisdiction over

the above-captioned chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine

whether the Plan complies with the applicable provisions of title 11 of the United States Code

(the "**Bankruptcy Code**") and should be confirmed.

B.    **Eligibility for Relief**. The Debtors were and are Entities eligible for relief

under section 109 of the Bankruptcy Code.

C.    **Commencement and Administration of the Chapter 11 Cases**. On

December 12, 2018 (the "**Petition Date**"), the Debtors each commenced a case by filing a

petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The

Chapter 11 Cases are jointly administered. The Debtors have operated their businesses and

managed their properties as debtors-in-possession pursuant to section 1107(a) and 1108 of the

Bankruptcy Code. No trustee has been appointed in the Chapter 11 Cases.

D.    **Filing of Plan and Plan Exhibits**. On December 21, 2018, the Debtors

filed the *Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate*

[Docket No. 111] and the *Disclosure Statement for the Joint Plan of Reorganization of Synergy*

*Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 112]. On January 24, 2019, the

Debtors filed the *Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its*

---

[3]    All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation
to Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent
herewith. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a
conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or
incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of
fact.

4

*Debtor Affiliate* [Docket No. 267] and the *Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 269]. On February 28, 2019, the Debtors filed the *Second Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 474] and the *Second Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 476]. On March 11, 2019, the Debtors filed the *Third Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 516] and the *Third Amended Disclosure Statement for the Third Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 518]. On March 13, 2019, the Debtors filed the solicitation versions of the *Third Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 545] and the *Third Amended Disclosure Statement for the Third Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 546]. On April 18, 2019 the Debtors filed the *Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate* [Docket No. 685]. On April 4, 2019, the Debtors filed the Plan Supplement [Docket No. 632], which contained the following documents: (i) the Plan Administrator Agreement; (ii) the Litigation Trust Agreement; (iii) a notice of assumption of Executory Contracts by the Debtors and the Schedule of Assumed Executory Contracts; (iv) amended corporate organization documents, including the certificate of conversion, certificate of formation, and limited liability company agreement for Synergy Pharmaceuticals, LLC; (v) a summary of Retained Causes of Action; (vi) a notice designating the membership of the Oversight Committee; and (vii) the Administrative Claim Request Form. The Plan Supplement was served in the manner set forth in the Affidavit of Service of Ryan

Vyskocil filed by Prime Clerk on April 10, 2019 [Docket No. 656]. On April 18, 2019, the

Debtors filed the Second Plan Supplement [Docket No. 687], which contained the following

documents: (i) the Amended Plan Administrator Agreement with blackline; (ii) the Revised

Litigation Trust Agreement with blackline; (iii) the Wind-Down Budget; (iv) a notice

designating the Plan Administrator; (v) a schedule of Post-Effective Date employees and

compensation; and (vi) a form of employment agreement for Gary G. Gemignani. On [●], the

Debtors filed the Third Plan Supplement [Docket No. [●]], which contained the following

documents: [●]. The Plan Supplement and the documents contained therein, as amended, comply

with the terms of the Plan, and the filing and notice of the Plan Supplement materials were good

and proper, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the

Solicitation Procedures Order, and no other or further notice is or shall be required.

E.     **Transmittal of Solicitation Package**. On or before March 16, 2019, the

Debtors, through their solicitation agent, Prime Clerk (the "**Claims and Solicitation Agent**"),

caused the applicable forms of ballots in the forms attached to the Solicitation Procedures Order

(as modified, collectively, the "**Ballots**") and the Solicitation Packages (as defined in the

Solicitation Procedures Order) to be served and distributed as required by the Solicitation

Procedures Order, section 1125 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the

local rules for this Court (the "**Local Rules**"), all other applicable provisions of the Bankruptcy

Code, and all other applicable rules, laws, and regulations applicable to such solicitation, all as

set forth in the Affidavit of Service of James Daloia regarding service of solicitation materials

filed on March 20, 2019 [Docket No. 572] (the "**Solicitation Affidavit**"). The Solicitation

Packages were transmitted to all creditors entitled to vote on the Plan and sufficient time was

prescribed for creditors to accept or reject the Plan. The transmittal and service of the Solicitation

6

Packages and Ballots were adequate and sufficient under the circumstances and no other or further notice is or shall be required.

F.       **Adequate Notice**. As described herein and as evidenced by the Solicitation Affidavit, due, adequate and sufficient notice of the Plan and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan was given in compliance with the Bankruptcy Code and the Bankruptcy Rules. The Debtors, through the Claims and Solicitation Agent, caused the Confirmation Hearing Notice (as set forth in Exhibit A-2 to the Solicitation Procedures Order) to be mailed to all of their known creditors, record holders of equity securities as of the Record Date, the Senior Notes Indenture Trustee, the Term Loan Agent and DIP Agent, and all other entities required to be served under Bankruptcy Rules 2002 and 3017. The Debtors also published the Confirmation Hearing Notice in the national and international editions of *The New York Times* on March 22, 2019, as evidenced by the affidavit of publication filed by Prime Clerk on March 22, 2019 [Docket No. 589], in compliance with the Solicitation Procedures Order and Bankruptcy Rule 2002(l). Thus, the Debtors have given proper, adequate and sufficient notice of the Confirmation Hearing and no other or further notice is or shall be required.

G.       **Solicitation**. Votes on the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation. Pursuant to the solicitation procedures (as set forth in the Solicitation Procedures Order), the Debtors transmitted Solicitation Packages (as defined in the Solicitation Procedures Order) to those Holders of Claims entitled to vote on the Plan as of

7

the March 5, 2019 record date, including to the Nominees (or their mailing agents) of the

Holders of Senior Notes.

       H.     **Voting Certification**. On April 15, 2019, the Claims and Solicitation

Agent filed the Voting Certification, certifying the method and results of the ballot tabulation for

the Classes entitled to vote under the Plan, Classes 3 and 4 (collectively, the "**Voting Classes**").

As evidenced by the Voting Certification, as supplemented on the record at the Confirmation

Hearing, both Voting Classes voted to accept the Plan, without including any acceptance of the

Plan by any insider, in accordance with section 1126 of the Bankruptcy Code.

       I.     **Plan Modifications**. Subsequent to solicitation, the Debtors made certain

modifications to the Plan. All such modifications since the entry of the Solicitation Procedures

Order are consistent with all of the provisions of the Bankruptcy Code, including sections 1122,

1123, 1125, and 1127 of the Bankruptcy Code. None of the aforementioned modifications is

material or adversely affects the treatment of any Holder of a Claim or Interest under the Plan.

Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications

require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of

votes under section 1126 of the Bankruptcy Code. Prior notice regarding the substance of any

modifications to the Plan, together with the filing with the Bankruptcy Court of the Plan as

modified, and the disclosure of the Plan modifications on the record at or prior to the

Confirmation Hearing constitute due and sufficient notice of any and all such modifications.

Further, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all

Holders of Claims who voted to accept the Plan or who are conclusively presumed to have

accepted the Plan are deemed to have accepted the Plan as modified by the Plan modifications.

No Holder of a Claim shall be permitted to change its vote as a consequence of the Plan

modifications unless otherwise agreed to by the Holder of the Claim and the Debtors and such

change is approved by the Court in accordance with Bankruptcy Rule 3018(a). The modifications

to the Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code and

Bankruptcy Rule 3019. The Plan as modified shall constitute the Plan submitted for

Confirmation.

       J.      **Bankruptcy Rule 3016**. The Plan is dated and identifies the Entities

submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement

with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

       K.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))**. The

Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable

provisions of the Bankruptcy Code, including, but not limited to: (a) the proper classification of

Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of Unimpaired

Classes of Claims and Interests (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of

Impaired Classes of Claims and Interests (11 U.S.C. § 1123(a)(3)); (d) provision for the same

treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for

adequate and proper means for implementation of the Plan (11 U.S.C. § 1123(a)(5)); (f) the

prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6));

(g) adequate disclosure of the identities and affiliations of the Plan Administrator, Litigation

Trustee, the Oversight Committee, and successor Entities with respect to the Liquidating Debtor,

as set forth in the Plan Supplement; and (h) additional plan provisions permitted to effectuate the

restructuring of the Chapter 11 Cases (11 U.S.C. § 1123(b)).

       (a)      **Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))**. The

classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In

accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan

adequately and properly identifies and classifies all Claims and Interests (other than

Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims, which are

addressed in Article II of the Plan, and which are not required to be designated as separate

Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). The Plan provides for the

separate classification of Claims and Interests into eight Classes based on differences in the legal

nature or priority of such Claims and Interests. Each Class of Claims and Interests contains only

Claims or Interests that are substantially similar to the other Claims and Interests within that

Class, and such classification therefore satisfies section 1122 of the Bankruptcy Code. Valid

business, factual, and legal reasons exist for the separate classification of the various Classes of

Claims and Interests under the Plan, the classifications were not made for any improper purpose,

and the creation of such Classes does not unfairly discriminate between or among Holders of

Claims or Interests. Accordingly, the requirements of section 1123(a)(1) of the Bankruptcy Code

are satisfied.

(b)     **Specified Treatment of Unimpaired Classes (11 U.S.C.**

**§ 1123(a)(2))**. The Plan specifies in Article III that Classes 1 and 2 are Unimpaired, thereby

satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     **Specified Treatment of Impaired Classes (11 U.S.C.**

**§ 1123(a)(3))**. The Plan specifies in Article III that Classes 3, 4, 5, 6, 7, and 8 are Impaired,

thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     **No Discrimination (11 U.S.C. § 1123(a)(4))**. Article III of the Plan

provides for the same treatment for each Claim or Interest in each respective Class unless the

Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)     **Implementation of the Plan (11 U.S.C. § 1123(a)(5))**. Article V of the Plan provides for adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)     **Non-voting Equity Securities (11 U.S.C. § 1123(a)(6))**.

Section 5.06 of the Plan provides that the organizational documents of the Debtors shall be amended as may be required so that they are consistent with the provisions of the Plan and otherwise comply with the Bankruptcy Code. The limited liability company agreement of the Liquidating Debtor includes a provision prohibiting the issuance of non-voting equity securities pursuant to and to the extent required by section 1123(a)(6) of the Bankruptcy Code, as set forth in Section 5.06 of the Plan. Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

(g)     **Selection of Successor Entities (11 U.S.C. § 1123(a)(7))**.

Article V of the Plan sets forth the manner of selection of the successor Entities of the Liquidating Debtor. The Debtors have properly and adequately disclosed the identity and affiliations of all individuals proposed to serve on or after the Effective Date, including the Plan Administrator, the Litigation Trustee, and the Oversight Committee as set forth in Exhibit I of the Plan Supplement [Docket No. 632], Exhibit G of the Second Plan Supplement [Docket No. 687] and Exhibit [●] of the Third Plan Supplement  [Docket No.[●]]. The appointment, employment, or manner of selection of such individuals or entities and the proposed compensation and indemnification arrangements for such individuals are consistent with the

interests of Holders of Claims and Interests and with public policy. Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

(h)    **Postpetition Person Service Payments (11 U.S.C. § 1123(a)(8)).** The Debtors are not "individuals" (as that term is defined in the Bankruptcy Code), as such section 1123(a)(8) of the Bankruptcy Code is inapplicable to the Plan.

(i)    **Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)).** Pursuant to Article III of the Plan, as set forth in section 1123(b)(1) of the Bankruptcy Code, Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired and Class 3 (Term Loan Claims), Class 4 (General Unsecured Claims), Class 5 (Section 510(b) Claims), Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), and Class 8 (Interests) are Impaired.

(j)    **Assumption and Rejection (11 U.S.C. § 1123(b)(2)).** Article VI of the Plan addresses the assumption and rejection of Executory Contracts, and meets the requirements of section 365 of the Bankruptcy Code. In accordance with Section 6.02(d) of the Plan, the Debtors have filed and served, as set forth in the Affidavit of Service of Ryan Vyskocil filed by Prime Clerk on April 10, 2019 [Docket No. 656], the *Notice of Assumption of Executory Contracts by the Liquidating Debtors* [Docket No. 633] (the "**Cure Notice**"). The time given to parties-in-interest to object to the assumption or rejection of their Executory Contracts was good and sufficient and no other or further notice is required.

(k)    **Settlement and Retention of Claims and Causes of Action and Reservation of Rights (11 U.S.C. § 1123(b)(3)).** Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good

12

faith compromise or settlement of all Claims, Interests, and controversies resolved thereunder,

and the entry of this Confirmation Order constitutes approval of the compromise or settlement of

all such Claims, Interests, and controversies, as well as a finding by the Court that such

compromise and settlement is (a) in the best interests of the Debtors, their Estates, and their

respective property and stakeholders, including the holders of Claims and Interests, and (b) fair,

equitable, and within the range of reasonableness. Further, in accordance and compliance with

section 1123(b)(3)(A) of the Bankruptcy Code, Section 5.13 of the Plan properly retains certain

Causes of Action and Avoidance Actions of the Debtors and, in accordance and compliance with

section 1123(b)(3)(B) of the Bankruptcy Code, Section 5.03 of the Plan properly transfers and

provides for commencement and pursuit of Causes of Action and Avoidance Actions that are

expressly preserved and neither (i) acquired by the Purchaser or otherwise released pursuant to

the Asset Purchase Agreement nor (ii) released pursuant to the Plan or the Final DIP Order, by

the Litigation Trust.

(l)    **Sale of Substantially All Assets (11 U.S.C. § 1123(b)(4))**. The Plan

provides for the distribution of the proceeds of the sale of substantially all the Debtors assets to

the Purchaser pursuant to the Asset Purchase Agreement. Thus, the Plan complies with

section 1123(b)(4) of the Bankruptcy Code.

(m)    **Rights of Holders of Classes of Claims (11 U.S.C. § 1123(b)(5))**.

In accordance and in compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan

properly modifies the rights of Holders of Claims in Class 3 (Term Loan Claims), Class 4

(General Unsecured Claims), Class 5 (Section 510(b) Claims), and Class 6 (Intercompany

Claims). The Plan leaves unaffected the rights of Holders of Claims in Class 1 (Other Priority

13

Claims) and Class 2 (Other Secured Claims). Thus, the Plan complies with section 1123(b)(5) of the Bankruptcy Code.

(n)   **Additional Plan Provisions (11 U.S.C. § 1123(b)(6))**. The Plan's additional provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for: (i) the general settlement of Claims and Interests (including the Settlement Agreement pursuant to the Settlement Order [Docket No. 450], the Stipulation and Order, and the CRG-ESH Settlement pursuant to the CRG-ESH Settlement Order ); (ii) distributions to Holders of Claims and, if applicable, Interests; (iii) transferring of the Litigation Trust Cash Contribution and vesting of those Avoidance Actions and Causes of Action identified in Section 5.03 of the Plan, in each case, to the Litigation Trust; (v) indemnification obligations; (vi) releases by the Debtors of the Released Parties; (vii) releases by the Releasing Parties of the Released Parties; (viii) the injunctions contained at Section 9.08 and 9.09 of the Plan; and (ix) the exculpation of the Exculpated Parties.

(o)   **Debtors Are Not Individuals (11 U.S.C. § 1123(c))**. The Debtors are not individuals. Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

(p)   **Cure of Defaults (11 U.S.C. § 1123(d))**. Section 6.02 of the Plan provides for the satisfaction of any defaults associated with each Executory Contract to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

L.   **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**. The Debtors have complied with the applicable provisions of the Bankruptcy Code, the

14

Bankruptcy Rules, the Solicitation Procedures Order, and other orders of this Court, thereby

satisfying section 1129(a)(2) of the Bankruptcy Code.

M.    **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).** The Debtors

have proposed the Plan in good faith and not by any means forbidden by law. In determining that

the Plan has been proposed in good faith, the Court has examined the totality of the

circumstances surrounding the filing of the Chapter 11 Cases, the formulation and negotiation of

the Plan and all modifications thereto, the Settlement Agreement, the Stipulation and Order, and

the CRG-ESH Settlement. The Chapter 11 Cases were filed, and the Plan and all modifications

thereto and the Settlement Agreement, Stipulation and Order, and CRG-ESH Settlement were

proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of

the Debtors and the recovery to Holders of Claims and Interests. Therefore, the Debtors have

proposed the Plan in good faith and not by any means forbidden by law, and section 1129(a)(3)

of the Bankruptcy Code is satisfied with respect to the Plan.

N.    **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

Any payment made or to be made by the Debtors for services or for costs and expenses in

connection with the Chapter 11 Cases, including administrative expense and substantial

contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with

the Plan and incident to the Chapter 11 Cases, either has been approved by or is subject to the

approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy

Code.

O.    **Disclosure of Identities of Successor Entities (11 U.S.C. § 1129(a)(5)).**

The Debtors, as proponents of the Plan, have complied with section 1129(a)(5) of the

Bankruptcy Code. The Debtors have properly and adequately disclosed the identity and

15

affiliations of all individuals proposed to serve on or after the Effective Date, including the Plan

Administrator, the Litigation Trustee, and the Oversight Committee as set forth in Exhibit I of

the Plan Supplement [Docket No. 632], Exhibit G of the Second Plan Supplement [Docket No.

687], and Exhibit [●] of the Third Plan Supplement [Docket No. [●]] and the appointment to such

offices of such Entities is consistent with the interests of Holders of Claims and Interests and

with public policy.

      P.     **No Rate Changes (11 U.S.C. § 1129(a)(6))**. Section 1129(a)(6) of the

Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over

which a governmental regulatory commission has jurisdiction.

      Q.     **Best Interests Test (11 U.S.C. § 1129(a)(7))**. The liquidation analysis

attached as Exhibit B to the Disclosure Statement, the Gumbs Declaration, and other evidence

proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based

upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation

values of the Debtors upon hypothetical conversion to a case under chapter 7 of the Bankruptcy

Code, and (4) establish that each Holder of a Claim or Interest in an Impaired Class that has not

accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest,

property of a value, as of the Effective Date, that is not less than the amount that such Holder

would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such

date. Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

      R.     **Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8))**. Classes 1 and

2 are Unimpaired by the Plan and therefore, under section 1126(f) of the Bankruptcy Code, such

Classes are conclusively presumed to have accepted the Plan. All Voting Classes voted to accept

the Plan, without including any acceptance of the Plan by any insider. The Plan has not been

accepted by Classes 5, 6, 7, and 8, each of which is deemed to reject the Plan. Therefore, section

1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes that are

deemed to reject the Plan. Accordingly, Confirmation is sought pursuant to section 1129(b) of

the Bankruptcy Code with respect to such Classes.

    S.  **Treatment of Administrative Claims, DIP Claims, Priority Tax
Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))**. The treatment of Administrative

Claims, DIP Claims, and Other Priority Claims under the Plan satisfies the requirements of

section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims

under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

    T.  **Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))**. At least one

Impaired Class of Claims in the Chapter 11 Cases voted to accept the Plan determined without

including any acceptance of the Plan by any "insiders." Therefore, section 1129(a)(10) of the

Bankruptcy Code is satisfied with respect to the Plan.

    U.  **Feasibility (11 U.S.C. § 1129(a)(11))**. The information in the Disclosure

Statement (i) is persuasive and credible, (ii) has not been controverted by other evidence, and

(iii) together with the record of the Chapter 11 Cases and the evidence presented at the

Confirmation Hearing, establishes that the Plan is feasible and provides adequate and appropriate

means for its implementation and an orderly wind down of the Debtors' Estates, thereby

satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

    V.  **Payment of Fees (11 U.S.C. § 1129(a)(12))**. The Debtors have paid or,

pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930,

thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

W.      **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))**. The
Debtors did not provide any retiree benefits, as that term is defined in section 1114 of the
Bankruptcy Code, at any time prior to confirmation of the Plan and therefore, section 1129(a)(13)
of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

X.      **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))**. The
Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic
support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in
these Chapter 11 Cases.

Y.      **Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))**. The Debtors are
not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in
these Chapter 11 Cases.

Z.      **No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C.
§ 1129(a)(16))**. Each of Debtors is a moneyed business, commercial corporation, or trust and
accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11
Cases.

AA.     **Section 1129(b); Confirmation of the Plan Over Nonacceptance of
Impaired Classes**. Classes 5, 6, 7, and 8 are deemed to reject the Plan (the "**Rejecting Classes**").
Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding
that not all Impaired Classes have voted to accept the Plan. All of the requirements of section
1129(a) of the Bankruptcy Code with respect to such Classes, other than section 1129(a)(8), have
been met. With respect to the Rejecting Classes, no Holders of Claims or Interests junior to the
Holders of such Classes will receive or retain any property under the Plan on account of such
Claims or Interests. Additionally, no Class of Claims or Interests is receiving property under the

18

Plan having a value more than the Allowed amount of such Claim or Interest. Further, the Plan

does not unfairly discriminate among Classes of Claims and Interests because Holders of Claims

with similar legal rights will not be receiving materially different treatment under the Plan.

Specifically, classifications and recoveries under the Plan are based on the legal rights of Holders

of Claims, including rights under applicable credit and debt agreements and security interests

against the applicable Debtor. Further, there is no unfair discrimination between Class 5 (Section

510(b) Claims) and Class 8 (Interests) as any payments to Holders of Interests in Class 8 under

the Plan as provided for by the CRG–ESH Settlement are not on account of the Interests in Class

8 but on account of settlement of the Equity Committee's Appeals and Plan objections.

Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by

section 1129(b) of the Bankruptcy Code, and may be confirmed under Bankruptcy Code section

1129(b) notwithstanding such Classes' rejection or deemed rejection of the Plan.

> BB.    **Only One Plan (11 U.S.C. § 1129(c))**. The Plan is the only plan filed in

each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is

inapplicable in these Chapter 11 Cases.

> CC.    **Principal Purpose of Plan (11 U.S.C. § 1129(d))**. The principal purpose

of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the

Securities Act of 1933 (15 U.S.C. § 77e). Accordingly, the Plan satisfies the requirements of

section 1129(d) of the Bankruptcy Code.

> DD.    **Small Business Case (11 U.S.C. § 1129(e))**. None of these Chapter 11

Cases are a "small business case," as that term is defined in the Bankruptcy Code, and,

accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

EE.    **Plan Settlements**. In accordance with Bankruptcy Rule 9019, the Plan is dependent upon and incorporates the terms of compromises and settlements (the "**Plan Settlements**"), which include the Settlement Order, Stipulation and Order and the CRG–ESH Settlement pursuant to the CRG–ESH Settlement Order. Accordingly, the Plan Settlements are fair, equitable, reasonable, and appropriate in light of the facts and circumstances, and are in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests. The terms of the Plan Settlements are approved and the Debtors, the Liquidating Debtor, the Plan Administrator, the Litigation Trust, the Litigation Trustee, and the Oversight Committee as applicable, are directed to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan Settlements.

FF.    **Litigation Trust**. Entry into the Litigation Trust Agreement is in the best interests of the Debtors and the Debtors' Estates and creditors. Each of the establishment of the Litigation Trust, the selection of [●] to serve as the Litigation Trustee, and the form of the proposed Litigation Trust Agreement (as it may be modified or amended) is appropriate and in the best interests of the Debtors' stakeholders. The Litigation Trust Agreement shall, upon execution, be valid, binding, and enforceable in accordance with its terms. The Holders of Allowed Claims or Interests in Class 4 (General Unsecured Claims), Class 5 (Section 510(b) Claims), and Class 8 (Interests) shall receive beneficial interests in the Litigation Trust entitling each Holder of Claims or Interests in such Classes to receive its Pro Rata Share of any recovery from Causes of Action or Avoidance Actions that vest in the Litigation Trust on the Effective Date, in accordance with the terms set forth in the Plan and the Litigation Trust Agreement.

GG.    **Executory Contracts**. The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts and unexpired

leases pursuant to Article VI of the Plan, which provides that except as otherwise provided under

the Plan, each Executory Contract and Unexpired Lease of the Debtors shall be deemed

automatically rejected (subject to certain exceptions, including, without limitation, those

contracts that are expressly assumed pursuant to Section 6.02 of the Plan) pursuant to sections

365 and 1123 of the Bankruptcy Code subject to the occurrence of the Effective Date with such

rejection to be effective as of such date. Each assumption (pursuant to Schedule A of Exhibit C

of the Plan Supplement (the Schedule of Assumed Executory Contracts)) or rejection of an

Executory Contract pursuant to Article VI of the Plan shall be legal, valid, and binding upon the

Debtors or Liquidating Debtor and their successors or assignees (if any) and all non-debtor

parties (and their assignees or successors) to such Executory Contract, all to the same extent as if

such assumption or rejection had been effectuated pursuant to an order of the Court entered

before the Confirmation Date under section 365 of the Bankruptcy Code.

HH.    **Adequate Assurance**. The Debtors have cured, or provided adequate

assurance that the Liquidating Debtor or its successors or assignees (if any) will cure, defaults (if

any) under or relating to each of the executory contracts that are being assumed by the Debtors

pursuant to the Plan. In addition, the Debtors have provided adequate assurance of future

performance regarding the Executory Contracts that are being assumed by the Debtors, as

contemplated pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

II.    **Releases**. The release, injunction, indemnification, and exculpation

provisions described in Article IX of the Plan, including Sections 9.04, 9.05, 9.06, 9.07, 9.08,

9.09, and 9.14, were adequately disclosed and explained in the Disclosure Statement, in the Plan,

and further on the Ballots with respect to the third-party releases set forth in Section 9.05 of the

Plan (the "**Third Party Release**"); were the product of extensive good faith, arm's-length

negotiations and settlements of the matters covered thereby; are otherwise approved by this
Court as appropriate pursuant to applicable law; or are consensual with respect to the Third Party
Release as to (a) the Released Parties, (b) all Holders of a Claim that voted to accept the Plan and
(c) all Holders of a Claim entitled to vote on the Plan who abstained from voting on the Plan and
elected on their Ballot to opt-in to the Third Party Release. Such compromises and settlements
are made in exchange for consideration and are fair, equitable, and reasonable, and are integral
elements of the Chapter 11 Cases in accordance with the Plan. Each of the release, injunction,
indemnification, and exculpation provisions set forth in the Plan: (i) is within the jurisdiction of
the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (ii) is an essential means of implementing the
Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral and non-severable
element of the settlements and transactions incorporated into the Plan; (iv) confers a material
benefit on, and is in the best interests of, the Debtors, their Estates, and the Holders of Claims
and Interests; (v) is important to the overall objectives of the Plan to finally resolve all Claims
and Interests among or against the parties-in-interest in the Chapter 11 Cases with respect to the
Debtors, their organization, operation, and reorganization; and (vi) is consistent with sections
105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The failure to give
effect to the release, injunction, indemnification and exculpation provisions set forth in the Plan,
as approved by this Confirmation Order, would impair the Debtors' ability to confirm and
implement the Plan.

JJ.    **Plan Conditions to Consummation**. Each of the conditions precedent to
the Effective Date, as set forth in Section 10.01 of the Plan, is reasonably likely to be satisfied or
waived in accordance with the terms of the Plan.

KK.    **Judicial Notice**. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

LL.    **Burden of Proof**. The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

MM.    **Retention of Jurisdiction**. This Court properly may retain jurisdiction over the matters set forth in Article XI of the Plan.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Confirmation of Plan

1.    **Confirmation**. The Plan, attached hereto as **Exhibit A**, including all Exhibits attached thereto or included in the Plan Supplement, is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order and the Debtors are authorized to implement their provisions and consummate the Plan without any further authorization except as expressly required by the Plan or this Confirmation Order.

2.    **Notice**. Notice of the Plan, its exhibits, and all amendments and modifications thereto, the Disclosure Statement and the Solicitation Packages was proper and adequate.

23

3.      **Objections**. For the reasons stated on the record at the Confirmation

Hearing, all Objections and all reservations of rights that have not been withdrawn, waived, or

settled pertaining to the Confirmation of the Plan are overruled on the merits.

4.      **Authorization to Implement the Plan**. Upon the entry of this

Confirmation Order, the Debtors, the Liquidating Debtor, the Plan Administrator, the Litigation

Trust, the Litigation Trustee, the Oversight Committee, and any third party Distribution Agent,

as applicable, and their respective professionals, are authorized to take, or cause to be taken, all

actions necessary or appropriate to implement all provisions of, and to consummate, the Plan,

and to execute, enter into, or otherwise make effective all documents arising in connection

therewith, prior to, on, and after the Effective Date. All such actions taken or caused to be taken

shall be, and hereby are, authorized and approved by this Court, such that no further approval,

act, or action need be taken under any applicable law, order, rule, or regulation, including,

without limitation, (a) the incurrence of all obligations contemplated by the Plan and the making

of Distributions and (b) the implementation of all settlements and compromises as set forth in or

contemplated by the Plan.

5.      The Debtors are authorized to make payments required to be made under

the Plan at any time on and after the Effective Date.

6.      **Releases, Injunctions, Limitations of Liability, and Exculpation**. All

releases, injunctions, limitations of liability, and exculpation provisions in the Plan, including,

without limitation, those in Article IX of the Plan, are fair and equitable and given for valuable

consideration and are in the best interest of the Debtors and all parties in interest, and such

provisions shall be effective and binding on all persons and entities, to the extent provided

24

therein, and are incorporated in this Confirmation Order as if set forth in full herein and are

hereby approved in their entirety.

7.     **Plan Classification and Treatment**. All Claims and Interests shall be, and

hereby are, classified and treated as set forth in the Plan. The Plan's classification scheme shall

be, and hereby is, approved. The classifications set forth in connection with voting on the Plan:

(a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do

not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the

actual classification of such Claims under the Plan for distribution purposes; (c) may not be

relied upon by any creditor as representing the actual classification of such Claims under the

Plan for distribution purposes; and (d) shall not bind the Debtors, the Liquidating Debtor, the

Plan Administrator, the Litigation Trust, the Litigation Trustee, or any third party Disbursing

Agent. The treatment of Claims and Interests as provided for in the Plan is approved.

8.     **Cancellation of Existing Securities and Agreements**. Except as

otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates,

agreements, indentures, mortgages, security documents, and other documents evidencing Claims

or Interests, including Term Loan Claims, Senior Notes Claims, and Interests in Synergy

Pharmaceuticals, shall be deemed canceled and surrendered without any need for further action

or approval of the Bankruptcy Court or any Holder or other person and the obligations of the

Debtors or the Liquidating Debtor, as applicable, thereunder or in any way related thereto shall

be deemed satisfied in full, and the Senior Notes Indenture Trustee and the Term Loan Agent

shall be released from all duties thereunder; *provided* that any such indenture or agreement that

governs rights of the Holder of a Claim shall continue in effect solely for purposes of:

(a) allowing Holders to receive distributions under the Plan; (b) allowing the Senior Notes

25

Indenture Trustee and the Term Loan Agent to enforce their rights, claims, and interests vis-à-vis

any parties other than the Debtors, the Liquidating Debtor or the Released Parties; (c) allowing

the Senior Notes Indenture Trustee and the Term Loan Agent to make the distributions in

accordance with the Plan (if any), as applicable; (d) preserving any rights of the Senior Notes

Indenture Trustee and the Term Loan Agent to payment of fees, expenses, and indemnification

obligations solely as against any money or property distributable to the Holders under the

relevant indenture or the relevant credit agreement, including any rights to priority of payment or

to exercise charging liens; (e) allowing the Senior Notes Indenture Trustee and the Term Loan

Agent to enforce any obligations owed to each of them under the Plan; (f) allowing the Senior

Notes Indenture Trustee and the Term Loan Agent to exercise rights and obligations relating to

the interests of the Holders under the relevant indentures and credit agreements; (g) allowing the

Senior Notes Indenture Trustee and the Term Loan Agent to appear in the Chapter 11 Cases or in

any proceeding in the Bankruptcy Court, including, but not limited, to enforce the respective

obligations owed to such parties under the Plan; and (h) permitting the Senior Notes Indenture

Trustee and the Term Loan Agent to perform any functions that are necessary to effectuate the

foregoing; *provided*, *further*, that except as provided in the Plan, the preceding proviso shall not

affect the settlement and release of Claims or Interests pursuant to the Bankruptcy Code, this

Confirmation Order, the Plan, the Settlement Order, the Stipulation and Order, or the CRG-ESH

Settlement Order, as applicable, or result in any expense or liability to the Debtors or the

Liquidating Debtor, as applicable.

9.      **Substantive Consolidation**. In light of the fact that substantive

consolidation will promote a more equitable distribution of the Debtors' assets, the substantive

consolidation of the Chapter 11 Cases and Estates that comprise the Debtors is in the best

26

interests of the Debtors' stakeholders and is appropriate under Bankruptcy Code section 105(a) and is hereby approved for distribution purposes only. On the Effective Date, each Claim filed or to be filed against any Debtor shall be deemed filed only against Synergy Pharmaceuticals and shall be deemed a single Claim against and a single obligation of Synergy Pharmaceuticals for distribution purposes only and the claims register shall be updated accordingly without the need for further Court Order.

10.    **Merger and Dissolution of the Debtors**. Immediately following the occurrence of the Effective Date and without further order of the Bankruptcy Court: (a) the members of the boards of directors of the Debtors shall be deemed to have resigned; (b) Synergy Advanced shall be deemed merged with and into Synergy Pharmaceuticals; (c) Synergy Pharmaceuticals Inc. shall convert into Synergy Pharmaceuticals, LLC; and (d) Synergy Pharmaceuticals, LLC shall continue to exist as the Liquidating Debtor after the Effective Date in accordance with the laws of the State of Delaware and pursuant to its certificate of conversion, certificate of formation, limited liability company agreement, and other organizational documents in effect prior to the Effective Date, except to the extent such organizational documents are amended under the Plan, for the limited purposes set forth in the Plan Administrator Agreement, which include (i) liquidating certain assets of the Estates and making distributions in accordance with the Plan, (ii) administering or settling Administrative Claims, Professional Claims, Priority Tax Claims, and Other Priority Claims, subject to the Administrative Claims Protocol set forth in Section 5.11(b) of the Plan, (iii) administering and winding down the Debtors' employee benefit plans, (iv) preserving applicable privileges of the Liquidating Debtor as set forth in more detail in Section 5.16 of the Plan, (v) maintaining and administering the Administrative and Priority Claims Reserve, the Disputed Claims Reserve, the

27

Professional Claims Reserve, and the Wind-Down Reserve, and establishing any other necessary reserves that may be required as set forth in Section 5.11(e) of the Plan, and (vi) administering the CRG–ESH Settlement Fund in accordance with the terms of the CRG–ESH Settlement Order and the Plan and making payments under the CRG–ESH Settlement Fund; in each case, without the necessity of any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; *provided*, *however*, that the Debtors or the Plan Administrator, on behalf of the Liquidating Debtor, may execute and file documents and take all other actions as they deem appropriate relating to the foregoing corporate actions under the laws of the State of Delaware and, in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt merger of the Debtors as provided herein and under the Plan, without the payment of any fee, tax or charge and without the need for the filing of reports or certificates. Moreover, on and after the first day following the Effective Date, Synergy Pharmaceuticals and Synergy Advanced (1) shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, and (2) shall not be liable in any manner to any taxing or other authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

11.    **Exemption from Certain Transfer Taxes and Recording Fees**. To the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan or any transfers of property made in connection therewith (whether such transfers are made by the Debtors, Liquidating Debtor, or other Person) shall not be subject to any stamp tax or similar tax, and upon entry of this Confirmation Order, the appropriate state or

28

local governmental officials or agents shall forgo the collection of any such tax or governmental

assessment and accept for filing and recordation any of the foregoing instruments or other

documents without the payment of any such tax or governmental assessment. The Bankruptcy

Court shall retain specific jurisdiction with respect to these matters.

12.     **Utility Deposits**. On the Effective Date, the Debtors are authorized to

release any and all funds deposited into any segregated accounts maintained for the benefit of

any utility companies pursuant to any interim or final order of the Court approving the Debtors'

proposed form of adequate assurance of payment for future utility services and granting related

relief.

<strong>Unexpired Leases and Executory Contracts</strong>

13.     **Rejection and Assumption of Executory Contracts and Unexpired**

**Leases**. The Executory Contract and Unexpired Lease provisions of Article VI of the Plan are

approved.

(a)     **Automatic Rejection**. Except as otherwise provided in the Plan,

each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant

to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such

Executory Contract or Unexpired Lease: (i) is listed on the Schedule of Assumed Executory

Contracts contained in Exhibit C to the Plan Supplement; (ii) has been previously assumed by

the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by

order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after

the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; (iv)

is an Insurance Contract; or (v) is otherwise assumed pursuant to the terms of the Plan. This

Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections

29

pursuant to sections 365 and 1123 of the Bankruptcy Code, with such rejections to be effective
as of the Effective Date.

(b)      **Assumption of Executory Contracts**. On the Effective Date, each
Executory Contract listed on the Schedule of Assumed Executory Contracts in Exhibit C to the
Plan Supplement shall be assumed and shall vest in and be fully enforceable by the Plan
Administrator on behalf of the Liquidating Debtor or its assignee (if any) in accordance with its
terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court
authorizing or providing for its assumption or applicable federal law. Assumption of any
Executory Contract pursuant to the Plan or otherwise shall result in the full release and
satisfaction of any Cure Amount, Claims, or defaults, whether monetary or nonmonetary,
including defaults of provisions restricting the change-in-control or ownership-interest
composition or other bankruptcy-related defaults, arising under any assumed Executory Contract
at any time prior to the effective date of assumption or assumption and assignment.

(c)      **Cure Procedures and Payments Related to Assumption of
Executory Contracts**. The Cure procedures and any payments related to the assumption of any
Executory Contract shall be in accordance with Section 6.02 of the Plan and the Cure Notices
served upon counterparties to such Executory Contracts.

## Bar Dates and Other Deadlines

14.      **Administrative Claims Bar Date**. Except as otherwise provided herein or
in the Plan and as set forth in Sections 2.02 and 2.03 of the Plan, all requests for payment of an
Administrative Claim must be filed, in substantially the form of the Administrative Claim
Request Form contained in Exhibit J to the Plan Supplement, with the Claims and Solicitation
Agent and served on counsel for the Debtors, the Plan Administrator, and the Litigation Trustee
no later than the Administrative Claims Bar Date, which shall be thirty days after the Effective

Date of the Plan, unless otherwise ordered by the Bankruptcy Court (except with respect to

(a) Professional Claims, including Restructuring Expenses, (b) Administrative Claims Allowed

by a Final Order of the Bankruptcy Court on or before the Effective Date of the Plan,

(c) Administrative Claims that are not Disputed and arose in the ordinary course of business and

were paid or are to be paid in accordance with the terms and conditions of the particular

transaction giving rise to such Administrative Claim, or (d) Administrative Claims arising under

chapter 123 of title 28 of the United States Code). Holders of Administrative Claims that are

required to, but do not, file and request payment of such Administrative Claim(s) by the

applicable Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from

asserting such Administrative Claims against the Debtors or their property and such

Administrative Claims shall be deemed disallowed in full as of the Effective Date.

15.    **Administrative Claims Protocol.** On or before ten Business Days prior to

the Effective Date, the Debtors will provide the Creditors' Committee with a schedule of

estimated Administrative Claims, Priority Tax Claims and Other Priority Claims to be funded

from the Administrative and Priority Claims Reserve (the "**Administrative and Priority Claims**

**Schedule**"). On or before five Business Days prior to the Effective Date, the Creditors'

Committee will provide the Debtors with a schedule which lists the individual Administrative

Claims, Priority Tax Claims and Other Priority Claims set forth in the Administrative and

Priority Claims Schedule over which the Litigation Trustee shall reserve consent rights

(collectively, the "**Reserved Claims**"). With respect to any Reserved Claim and any other

Administrative Claim, Priority Tax Claim and Other Priority Claim that was not included in the

Administrative and Priority Claims Schedule, such claim shall only be Allowed (i) upon

agreement of the Plan Administrator and the Litigation Trust or (ii) as determined by Final Order

of this Court (the "**Administrative Claims Protocol**"). The Debtors have complied with each of

their obligations under the Administrative Claims Protocol as of the date of the Confirmation

Hearing.

16.     **Professional Claims**. In accordance with and pursuant to Section 2.03 of

the Plan, the amount of Professional Claims owing to the Professionals will be paid in Cash upon

approval of such Claims by the Bankruptcy Court; *provided* that, in accordance with Section

2.03 of the Plan, all final requests for payment of Professional Claims must be filed no later than

45 days after the Effective Date; *provided further* that, notwithstanding the foregoing, on the

Effective Date, the Debtors or the Plan Administrator, as applicable, shall pay all unpaid fees

earned and expenses incurred to the investment bankers retained by the Debtors, the Creditors'

Committee, and the Equity Committee; *provided* that the fees and expenses of Houlihan Lokey

Capital, Inc. shall be capped at $625,000; *provided further* that each of the foregoing investment

bankers shall file a final request for Professional Claims, and any such fees and expenses shall be

subject to clawback if not approved by the Bankruptcy Court  in accordance with Section 2.03 of

the Plan. Notwithstanding anything to the contrary in this Court's Order Granting Debtors'

Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 331, Bankruptcy Rule 2016,

and Local Bankruptcy Rule 2016-1 Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals [Docket No. 262], pursuant to Section 2.03 of the

Plan, all final requests for payment of Professional Claims (including any first and final fee

applications) must be filed no later than 45 days after the Effective Date.

17.     **Distribution Record Date**.  Notwithstanding anything in the Plan or this

Confirmation Order to the contrary, the Distribution Record Date for determining which Holders

of certain Allowed Claims are eligible to receive distributions under the Plan shall be the Confirmation Date.

## Plan Administrator and Litigation Trust

18.    **Plan Administrator Agreement**. The form of Amended Plan Administrator Agreement attached as Exhibit A to the Second Plan Supplement is hereby approved, and the Debtors are authorized to execute and to take any action necessary or appropriate to implement, effectuate, or consummate the Plan Administrator Agreement. The appointment of Portage Point Partners, LLC, as Plan Administrator is hereby approved.

19.    The Plan Administrator shall seek to preserve and protect all applicable privileges of the Liquidating Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) as set forth in more detail in Section 5.16 of the Plan. In addition, the duties to be exercised by the Plan Administrator on behalf of the Liquidating Debtor and the Estates pursuant to the Plan and the Plan Administrator Agreement, shall include, among others, (1) making distributions to Holders of Allowed Claims and Interests as provided for in the Plan, (2) administering, reconciling and resolving Administrative Claims, Professional Claims, Priority Tax Claims and Other Priority Claims, subject to the Administrative Claims Protocol set forth in Section 5.11(b) of the Plan, (3) filing tax returns and paying taxes, (4) administering the Debtors' 401(k) benefit plans, (5) defending the Debtors in the Securities Litigation and any other pending or future securities litigation against the Debtors and (6) dissolving the Liquidating Debtor. All material decisions of the Plan Administrator, including the settlement of the Securities Litigation, shall be subject to the approval of the Oversight Committee.

33

20.     The Plan Administrator or its designee is authorized to execute and file tax returns on behalf of the Debtors after the Effective Date.

21.     **Oversight Committee**. The appointment of (a) one representative from each of (i) 1992 MSF International Ltd., (ii) 1992 Tactical Credit Master Fund, L.P., and (iii) Wilmington Savings Fund Society, FSB, designees of the Creditors' Committee; and (b) Michael L. Meyer and Samuel Goldstein, designees of the Equity Committee, to the Oversight Committee is hereby approved. Each of the members of the Oversight Committee shall have all rights, powers, duties, and protections afforded the Oversight Committee and its members under the Plan and the Plan Administrator Agreement. The members of the Oversight Committee designated by the Creditors' Committee shall resign upon the earlier of (a) the payment in full of all Allowed Class 4 Claims and (b) the termination of the Plan Administrator Agreement and Litigation Trust Agreement in accordance with their terms. All members of the Oversight Committee shall resign upon the earlier of (a) the payment in full of all Allowed Claims and Interests and (b) the termination of the Plan Administrator Agreement and Litigation Trust Agreement in accordance with their terms.

22.     **Litigation Trust**. The formation, rights, powers, duties, structure, obligations, and other matters pertaining to the Litigation Trust shall be governed by Article V of the Plan and the amended Litigation Trust Agreement (which such agreement shall be substantially in the form of Exhibit B to the Second Plan Supplement) is hereby approved. [•] is hereby appointed as the Litigation Trustee.

23.     The Oversight Committee shall oversee the Litigation Trustee and the Litigation Trustee shall consult with, and seek the consent of, the Oversight Committee as to all material decisions. In furtherance of and consistent with the purpose of the Litigation Trust, the

34

Plan, and this Confirmation Order, subject to the terms and conditions contained in the Litigation

Trust Agreement, in the Plan, or in this Confirmation Order, the Litigation Trustee shall (a) hold

the Litigation Trust Assets for the benefit of Beneficiaries (as defined in the Litigation Trust

Agreement), (b) authorize and effectuate distributions of proceeds and other Litigation Trust

Assets, if any, in its commercially reasonable determination (in consultation with the Oversight

Committee), and (c) investigate, settle, compromise, object to, and litigate the Litigation Trust

Claims (as defined in the Litigation Trust Agreement) in its commercially reasonable

determination (in consultation with the Oversight Committee). The Litigation Trustee shall be

responsible for all decisions and duties with respect to the Litigation Trust and the Litigation

Trust Assets. In all circumstances, the Litigation Trustee shall act in the best interests of all

Beneficiaries and in furtherance of the purpose of the Litigation Trust, and shall use

commercially reasonable efforts to dispose of the Litigation Trust Assets and to make timely

distributions and not unduly prolong the duration of the Litigation Trust.

24.     **Transfer of Litigation Trust Assets**. On the Effective Date, (a) the

Litigation Trust Cash Contribution shall be transferred by the Debtors to the Litigation Trust;

*provided* that $50,000 of the Litigation Trust Cash Contribution shall be escrowed with the

Litigation Trustee to be used solely for the benefit of the Equity Committee designees on the

Oversight Committee to investigate and object to any settlement of Claims proposed by the

Litigation Trustee, and (b) all Avoidance Actions and Causes of Action belonging to the Debtors

that are neither (i) acquired by the Purchaser or otherwise released pursuant to the Asset

Purchase Agreement nor (ii) released pursuant to the Plan or the Final DIP Order shall be vested

in the Litigation Trust. The Litigation Trustee shall have the authority to determine, for each

pending derivative action on behalf of the Debtors, whether to dismiss such action or to be

35

deemed the plaintiff in such matter with respect to the pending derivative action on behalf of the

Debtors. The Litigation Trust will be controlled by the Oversight Committee and administered

by the Litigation Trustee. The Debtors, the Liquidating Debtor, and the Plan Administrator shall

have no direct or indirect control, influence or authority over the Litigation Trust, the Litigation

Trustee or the Oversight Committee or any of their respective decisions. The Litigation Trust

shall be a legally separate and distinct Entity from the Debtors or the Liquidating Debtor, and the

Litigation Trustee shall be a separate and distinct Entity from the Plan Administrator.

Notwithstanding anything to the contrary herein, the Oversight Committee and the Litigation

Trustee shall collectively have the exclusive control over all aspects of the Causes of Action and

Avoidance Actions that vest in the Litigation Trust, including the investigation, prosecution and

disposition of same, in accordance with the terms of the Litigation Trust Agreement, and the

Liquidating Debtor and the Plan Administrator shall have no rights, powers or duties with

respect to any aspect of any of the Causes of Action and Avoidance Actions that vest in the

Litigation Trust.

      25.    **Preservation of Privileges and Defenses**. On the Effective Date, all of the

Debtors' privileges and work product related to Causes of Action and Avoidance Actions that

vest in the Litigation Trust, including but not limited to any attorney-client privilege or work-

product privilege attaching to any documents or communications (whether written or oral), shall

be vested in the Litigation Trust, which—except as expressly set forth below—will have

exclusive authority to waive or not waive the Debtors' privileges in its sole discretion.

Notwithstanding the foregoing and for the avoidance of doubt, the privileges transferred to the

Litigation Trust do not include any privileges (including but not limited to attorney-client

privilege or work-product privilege) of the current and former individual directors and officers of

36

the Debtors, including but not limited to any such privilege attaching to any documents or

communications (whether written or oral) between the directors and officers of the Debtors and

Davis Polk & Wardwell LLP ("**Davis Polk**"). Each individual director or officer shall retain all

privileges and work product, including but not limited to any attorney-client privilege or work-

product privilege attaching to any personal documents or communications (whether written or

oral) between such director or officer, on the one hand, and Davis Polk, on the other hand.

Nothing in the Plan (including Section 5.16 thereto) or this Confirmation Order is intended to,

does, or may be construed to expand the privileges or other protections against disclosure, if any,

belonging to the Debtors as of the Effective Date, it being understood that the purpose of Section

5.16 of the Plan and the corresponding provisions in this Confirmation Order is to ensure that

any privileges and other protections against disclosure existing as of the Effective Date are

preserved and are not waived by the creation and vesting of certain of the Debtors' assets in the

Litigation Trust.

26.    Although the Liquidating Debtor shall retain the right to maintain or access

privileged documents and communications between the Debtors and Davis Polk relating to any

matter where Davis Polk was representing both the Debtors and individual directors or officers,

the Liquidating Debtor and the Plan Administrator shall not provide any such documents or

communications to the Litigation Trust. For the avoidance of doubt, any joint representation of

the Debtors and Debtors' officers and directors (including, but not limited to, representation in

connection with the Securities Action) shall not provide a basis for the Litigation Trust to seek to

compel the production of any documents or communications to the extent containing or

reflecting communications between Davis Polk on the one hand and the Debtors or the Debtors'

directors and officers on the other. Nor shall any joint communications from Davis Polk to both

37

the Debtors and the individual directors and officers be deemed to provide a basis for the

Litigation Trust to seek to compel the production of any documents or communications

containing or reflecting communications between Davis Polk on the one hand and the Debtors or

the Debtors' directors and officers on the other. Nor shall any production, inadvertent or

otherwise, by the Liquidating Debtor or the Plan Administrator of any documents or

communications (whether written or oral) between the directors and officers of the Debtors and

Davis Polk (if any) to the Litigation Trust, the Litigation Trustee, the Oversight Committee, or

any party or person associated with the Litigation Trust, the Litigation Trustee or the Oversight

Committee, constitute a waiver of such privileged information, which shall remain privileged to

the same extent, if any, such information was privileged on the Effective Date.

27.    The Plan Administrator will seek to preserve and protect all applicable

privileges and work product vested in the Liquidating Debtor (which for the avoidance of doubt

excludes the privileges and work product vested in the Litigation Trust). The Plan

Administrator's receipt of such information shall not waive any privileges and such privileges

are preserved. The Litigation Trust, the Liquidating Debtor and the individual directors and

officers of the Debtors shall remain in control of all of their respective privileges (subject to the

provisions of the foregoing paragraphs), and the Litigation Trust, the Liquidating Debtor, and the

individual directors and officers of the Debtors, each as applicable, retain the right to waive their

own privileges prospectively. For the avoidance of doubt, nothing herein or in the Plan shall be

deemed to permit any party to waive any privilege in connection with a joint representation

without the affirmative consent of all parties holding such privilege.

28.    **Injunction on Enforcement of Judgments**. The Litigation Trust shall not,

subject to Section 9.08 of the Plan, enforce any judgment or settlement obtained against the

Specified Individuals unless such judgment or settlement is actually paid from any available

insurance coverage under the D&O Policies; *provided* that such prohibition shall not apply to

any Specified Individual in the event such Specified Individual (a) fails to reasonably cooperate

with any D&O Insurer to the fullest extent requested by such D&O Insurer in the defense and/or

settlement of any Cause of Action brought against such Specified Individual or any other party,

(b) knowingly or unreasonably takes any action that has the effect of impairing, or knowingly or

unreasonably fails to take any action necessary to preserve, coverage under the D&O Policies for

any Cause of Action brought against such Specified Individual or any other party (provided that

a Specified Individual's election to satisfy these conditions and take steps to qualify such

Specified Individual for the protections of the injunction described above shall not under any

circumstances be deemed to be knowingly or unreasonably taking an action or failing to take an

action for purposes of this subsection (b)), (c) fails to satisfy any required co-insurance

obligations, if any, under the D&O Policies arising from any Cause of Action brought against

such Specified Individuals, or (d) asserts any Claim relating to any prepetition Indemnification

Obligations in violation of the Claims Assertion Protocol set forth in Section 9.14 of the Plan,

without prejudice to any subrogation or other rights of any D&O Insurer under the D&O Policies.

For the avoidance of doubt, each Specified Individual may, in his/her sole discretion, elect to

satisfy the foregoing conditions that qualify such Specified Individual to the protections of the

injunction described in this section and the decision or acts and/or omissions of one Specified

Individual shall have no impact on any other Specified Individual.

### Injunction, Release, and Exculpation Provisions

29.    **Injunction**. Effective as of the Effective Date, to the fullest extent

permissible under applicable law, and except as otherwise expressly provided in the Plan or this

Confirmation Order or for obligations required to be paid pursuant to the Plan or this

Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests or Causes of

Action that (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b)

have been released pursuant to Section 9.04 of the Plan; (c) have been released pursuant to

Section 9.05 of the Plan; (d) are subject to the exculpation pursuant to Section 9.06 of the Plan;

or (e) are otherwise stayed or terminated pursuant to the terms of the Plan, are permanently

enjoined and precluded, from and after the Effective Date, from taking any of the following

actions against, as applicable, the Debtors, the Liquidating Debtor, the Exculpated Parties, or the

Released Parties: (1) commencing or continuing in any manner any action or other proceeding of

any kind including on account of or in connection with or with respect to any such Claims,

Interests or Causes of Action that have been compromised or settled against the Debtors or any

Entity so released or exculpated (or the property or estate of the Debtors or any Entity so

released or exculpated) on account of or in connection with or with respect to any released,

settled, compromised or exculpated Claims, Interests or Causes of Action; (2) enforcing,

attaching, collecting, or recovering by any manner or means any judgment, award, decree, or

order against the Debtors or any Entity so released or exculpated (or the property or estate of the

Debtors or any Entity so released or exculpated) on account of or in connection with or with

respect to any released, settled, compromised or exculpated Claims, Interests or Causes of Action;

(3) creating, perfecting, or enforcing any Lien, claim or encumbrance of any kind against the

Debtors or any entity so released or exculpated (or the property or estate of the Debtors or any

Entity so released or exculpated) on account of or in connection with or with respect to any

released, settled, compromised or exculpated Claims, Interests or Causes of Action; (4) asserting

any right of setoff, subrogation, or recoupment of any kind against any obligation due to the

Debtors or any Entity so released or exculpated (or the property or estate of the Debtors or any

40

Entity so released or exculpated) on account of or in connection with or with respect to any released, settled, compromised or exculpated Claims, Interests or Causes of Action, except as set forth in Section 8.10 of the Plan, and notwithstanding an indication in a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff or subrogation pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or any Entity so released or exculpated (or the property or estate of the Debtors or any Entity so released or exculpated) on account of or in connection with or with respect to any released, settled, compromised or exculpated Claims, Interests or Causes of Action. Notwithstanding anything to the contrary in the foregoing or in the Plan, the injunction set forth above shall not enjoin the Securities Claims. For the avoidance of doubt, the Debtors are not receiving a discharge under section 524(a) of the Bankruptcy Code.

30.    **Debtor Release**. Pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Liquidating Debtor, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or assertable on behalf of the Debtors, the Liquidating Debtor or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law,

41

equity, or otherwise, that the Debtors, the Liquidating Debtor, or their Estates or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring and sale efforts, the Chapter 11 Cases, the Acceptable Sale, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination and filing of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, the DIP Credit Agreement, the Asset Purchase Agreement, the Sale Order or related agreements, instruments, or other documents, the pursuit of the Acceptable Sale, the pursuit of consummation of the Acceptable Sale, the pursuit of Confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan; *provided* that, nothing in the foregoing or in Section 9.04 of the Plan shall be construed to release the Released Parties from gross negligence, willful misconduct, or fraud as determined by a Final Order. Notwithstanding anything to the contrary herein or in the Plan, the foregoing release shall not affect the releases granted to the applicable entities pursuant to Sections 5.1.2 and 5.2 of the Final DIP Order. Notwithstanding anything to the contrary in the foregoing or in the Plan, the releases set forth above do not release any post-Effective Date obligation or liability of any Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

31.    Pursuant to Bankruptcy Rule 9019, the Court hereby approves the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, finds that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or the Liquidating Debtor or their respective Estates or the Litigation Trust asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property, released pursuant to the Debtor Release.

32.    **Third Party Release**. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Debtor, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring and sale efforts, the Chapter 11 Cases, the

43

Acceptable Sale, the purchase, sale, or rescission of the purchase or sale of any security of the

Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest

that is treated in the Plan, the business or contractual arrangements between any Debtor and any

Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the

negotiation, formulation, preparation, dissemination and filing of the Plan (including, for the

avoidance of doubt, the Plan Supplement), the Disclosure Statement, the DIP Credit Agreement,

the Asset Purchase Agreement, the Sale Order, or related agreements, instruments, or other

documents, the pursuit of the Acceptable Sale, the pursuit of consummation of the Acceptable

Sale, the pursuit of Confirmation of the Plan, the pursuit of consummation of the Plan, the

administration and implementation of the Plan, or upon any other act or omission, transaction,

agreement, event, or other occurrence taking place on or before the Effective Date of the Plan,

*provided* that, nothing in the foregoing or in Section 9.05 of the Plan shall be construed to release

the Released Parties from gross negligence, willful misconduct, or fraud as determined by a Final

Order; *provided*, *further*, that notwithstanding anything to the contrary herein or in the Plan, the

foregoing release shall not affect the releases granted to the applicable entities pursuant to

Sections 5.1.2 of the Final DIP Order; *provided*, *further*, that this release shall not (1) preclude

the United States Securities and Exchange Commission from enforcing its regulatory or police

powers or (2) operate to release any claims or causes of action held directly (but not derivatively)

by the United States Securities and Exchange Commission against any non-Debtor person or

non-Debtor entity; *provided*, *further*, that this release shall not release any Securities Claims.

Notwithstanding anything to the contrary in the foregoing or in the Plan, the releases set forth

above do not release any post-Effective Date obligation or liability of any Entity under the Plan

44

or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

33.     Pursuant to Bankruptcy Rule 9019, the Court hereby approves the Third Party Release set forth at Section 9.05 of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, finds that the Third Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of claims released by the Third Party Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property, released pursuant to the Third Party Release.

34.     **Exculpation and Limitation of Liability**. Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third Party Release, and notwithstanding anything herein or in the Plan to the contrary, each Exculpated Party is hereby released and exculpated from any claim, obligation, Cause of Action, or liability for any postpetition action taken or omitted to be taken during the period commencing on the Petition Date through and including the Effective Date in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Asset Purchase Agreement, the DIP Credit Agreement, the Chapter 11 Cases, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection

45

with or in contemplation of the restructuring of the Debtors, *provided* that, nothing in the

foregoing or in Section 9.06 of the Plan shall be construed to release the Exculpated Parties from

gross negligence, willful misconduct, or fraud as determined by a Final Order. Each Exculpated

Party has, and upon completion of the Plan shall be deemed to have, participated in good faith

and in compliance with the applicable laws with regard to the restructuring of Claims and

Interests in the Chapter 11 Cases, the negotiation, formulation, or preparation of the agreements,

instruments, or other documents pursuant to the Plan, and the solicitation and distribution of the

Plan and, therefore, is not, and on account of such distributions shall not be, liable at any time for

the violation of any applicable law, rule, or regulation governing the solicitation of acceptances

or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding

anything to the contrary in the foregoing or in the Plan, the exculpation set forth above does not

release any post-Effective Date obligation or liability of any Entity under the Plan or any

document, instrument, or agreement (including those set forth in the Plan Supplement) executed

to implement the Plan.

35.     **CRG Release**. As of the Effective Date, for good and valuable

consideration, the adequacy of which is hereby confirmed, including the contributions of the

Debtors and the Specified Individuals to facilitate and implement the Plan, to the fullest extent

permissible under applicable law, as such law may be extended after the Effective Date, each of

the CRG Parties, in its individual capacity, shall be deemed to have conclusively, absolutely,

unconditionally, irrevocably, and forever released, waived, and discharged each Specified

Individual and the Debtors from any and all Claims, Interests, obligations, rights, suits, damages,

Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or

unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such CRG Party

would have been legally entitled to assert, in its individual capacity, based on or in any way

relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or

out-of-court restructuring and sale efforts, the Chapter 11 Cases, the Acceptable Sale, the

purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject

matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the

Plan, the business or contractual arrangements between any Debtor and any CRG Party, the

restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation,

formulation, preparation, dissemination and filing of the Plan (including, for the avoidance of

doubt, the Plan Supplement), the Disclosure Statement, the DIP Credit Agreement, the Asset

Purchase Agreement, the Sale Order, or related agreements, instruments, or other documents, the

pursuit of the Acceptable Sale, the pursuit of consummation of the Acceptable Sale, the pursuit

of Confirmation of the Plan, the pursuit of consummation of the Plan, the administration and

implementation of the Plan, or upon any other act or omission, transaction, agreement, event, or

other occurrence taking place on or before the Effective Date of the Plan; *provided* that the

foregoing or Section 9.07 of the Plan shall not affect or impair the allowance and treatment of

Allowed Term Loan Claims as set forth in Section 3.02(c) of the Plan. Each CRG Party shall be

prohibited from assigning to any other Entity any Claims, Interests, obligations, rights, suits,

damages, Causes of Action, remedies, and liabilities released, waived or discharged pursuant to

Section 9.07 of the Plan. For the avoidance of doubt, nothing in the foregoing or in Section 9.07

of the Plan shall release any of the Debtors' Causes of Action against the Specified Individuals

that are vested in the Litigation Trust on the Effective Date.

## Notice and Other Provisions

36.     **Notice of Confirmation Order and Occurrence of Effective Date**. The

Plan Administrator shall file with this Court a notice of the occurrence of the Effective Date

47

within a reasonable time after the conditions in Section 10.01 of the Plan have been satisfied or

waived pursuant to Section 10.02 of the Plan. The Plan Administrator shall serve notice of entry

of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules

2002(f)(7), 2002(k), and 3020(c), on (a) known Holders of Claims and Interests, (b) parties that

requested notice in accordance with Bankruptcy Rule 2002, and (c) all other parties included in

the Debtors' creditor and notice party matrix, by causing a notice of this Confirmation Order and

the occurrence of the Effective Date in substantially the form of the notice annexed hereto as

**Exhibit B** (the "**Notice of Effective Date**"), which form is hereby approved, to be delivered to

such parties by first class mail, postage prepaid. The Notice of Effective Date shall also be

published in the national and international editions of *The New York Times*. Notice need not be

given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to

any Entity to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but

received such notice returned marked "undeliverable as addressed," "moved—left no forwarding

address," "forwarding order expired," or similar reason, unless the Debtors have been informed

in writing by such Person of that Person's new address. The notice described herein is adequate

and appropriate under the particular circumstances of the Chapter 11 Cases, and no other or

further notice is necessary.

37.     **Post-Effective Date Notice Pursuant to Bankruptcy Rule 2002**. After

the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002,

all creditors and other parties in interest (except those listed in the following sentence) must file a

renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002.

After the Effective Date, the Plan Administrator is authorized to limit the list of parties in interest

receiving notice of documents pursuant to Bankruptcy Rule 2002 to the Office of the United

States Trustee, Counsel to CRG, Counsel to the Plan Administrator, Counsel to the Litigation

Trustee, and those creditors who have filed such renewed requests (the "**Post-Confirmation**

**Master Service List**"); *provided, however*, that the Plan Administrator also shall serve those

parties directly affected by, or having a direct interest in, the particular filing in accordance with

Local Rule 2002-1(b). Notice given in accordance with the foregoing procedures shall be

deemed adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

38.     **Restructuring Expenses**. On the Effective Date, the Debtors, the

Liquidating Debtor or the Plan Administrator, as applicable, shall pay in full in Cash all

outstanding Restructuring Expenses not previously paid pursuant to an order of the Bankruptcy

Court in accordance with the terms of the applicable engagement letters entered into or

acknowledged by the Debtors or other applicable arrangements, without the need for any

application or notice to or approval by the Bankruptcy Court. Restructuring Expenses invoiced

after the Effective Date, covering the period prior to or on the Effective Date, shall be paid

promptly by the Plan Administrator from the Administrative and Priority Claims Reserve

following receipt of invoices therefor and the terms of the applicable documents giving rise to

such rights; *provided*, *however*, that the Debtors or the Plan Administrator, as applicable, reserve

their right to dispute the reasonableness of any such Restructuring Expenses, and any such

dispute that is not consensually resolved among the parties shall be resolved by the Bankruptcy

Court.

39.     **Plan Modifications**. Subject to certain restrictions and requirements set

forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (and those restrictions

on modifications set forth in the Plan) and any consent rights as set forth in the Plan, the Debtors,

may revoke or withdraw, alter, amend, or modify the Plan with respect to each Debtor one or

more times after Confirmation, and to the extent necessary, may institute proceedings in the

Bankruptcy Court to so alter, amend, or modify the Plan after Confirmation, or remedy any

defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this

Confirmation Order, in such matters as may be necessary to carry out the purposes and effects of

the Plan and this Confirmation Order, *provided* that any modifications or amendments that

impact the treatment of the Term Loan Claims shall require the consent of the Term Loan Agent

and any such modifications or amendments that impact the treatment of the DIP Claims shall

require the consent of the DIP Agent.

40.    **Failure to Consummate Plan and Substantial Consummation**. If the

Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan

(except for the Stipulation and Order and the Settlement Order), the assumption or rejection of

executory contracts or unexpired leases effected by the Plan, and any document or agreement

executed pursuant to the Plan, shall be null and void in all respects. In such event, nothing

contained in the Plan, the Disclosure Statement, or this Confirmation Order, and no acts taken in

preparation for consummation of the Plan, shall be deemed to (a) constitute a waiver or release

of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity; (b) to

prejudice in any manner the rights and defenses of the Debtors, the Holder of a Claim or Interest,

or any Entity in any further proceedings involving the Debtors; (c) constitute an admission,

acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; or (d) be

construed as a finding of fact or conclusion of law with respect thereto.

41.    **Dissolution of Statutory Committees**. On the Effective Date, any

statutory committee appointed in the Chapter 11 Cases, including the Creditors' Committee and

the Equity Committee, shall dissolve, and the members thereof shall be released from all rights

and duties from or relating to the Chapter 11 Cases in accordance with Section 12.04 of the Plan, *provided*, *however*, that the Creditors' Committee and Equity Committee will stay in existence solely for the limited purpose of filing and prosecuting final fee applications.

42.    **Exhibits**. Each reference to a document, agreement or summary description that is in the form attached as an Exhibit to the Plan in this Confirmation Order or in the Plan shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

43.    **Plan and Confirmation Order Mutually Dependent**. The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed nonseverable and mutually dependent.

44.    **Incorporation**. The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Plan be by this Confirmation Order confirmed in its entirety and be incorporated herein by reference.

45.    **Confirmation Order Supersedes**. Except as expressly provided in the Plan or this Confirmation Order, it is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

46.    **Governmental Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications

51

thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement,

and any documents, instruments, or agreements, and any amendments or modifications thereto.

47.    **Conflicts Between Confirmation Order and Plan**. The provisions of the

Plan and of this Confirmation Order shall be construed in a manner consistent with each other so

as to effect the purposes of each. Notwithstanding the foregoing, in the event the provisions of

the Plan and the Sale Order conflict with respect to the Acceptable Sale, the Sale Order shall

govern, and further, if there is determined to be any inconsistency between any Plan provision

and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the

extent of such inconsistency, the provisions of this Confirmation Order shall control.

48.    **Retention of Jurisdiction**. Notwithstanding the occurrence of the

Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, and

related to, the Chapter 11 Cases, the Plan, the Plan Administrator Agreement, and the Litigation

Trust Agreement (without prejudice to the rights, if any, of any party in interest to seek to

withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d) and related law with respect

to any issue or proceeding subject to mandatory or discretionary withdrawal) to the fullest extent

permitted by law, including, among other things, jurisdiction over the matters set forth in Article

XI of the Plan, which provisions are incorporated herein by reference.

49.    **Enforceability of Plan**. Pursuant to Bankruptcy Code sections 1123(a),

1141(a), and 1142, and the provisions of this Confirmation Order, the Plan shall be, and hereby

is, valid, binding, and enforceable, notwithstanding any otherwise applicable non-bankruptcy law.

The Debtors are authorized and directed to, and authorized and directed to take all actions

necessary or appropriate to, enter into, amend, modify, implement, and consummate, as

necessary, all agreements or documents created under or arising in connection with the Plan,

without further order of this Court, in accordance with the provisions of the Plan, and only

consistent therewith.

50.     **Final Order**. Notwithstanding the stay contemplated by Bankruptcy Rule

3020(e) and except as otherwise provided in Bankruptcy Code section 1141(d), immediately

after entry of this Confirmation Order, the Plan shall be binding upon and inure to the benefit of

the Debtors, all present and former Holders of Claims and Interests, whether or not such Holders

shall receive or retain any property or interest in property under the Plan, and their respective

successors and assigns, including, but not limited to, the Liquidating Debtor and all other parties

in interest in the Chapter 11 Cases. Accordingly, as permitted by Bankruptcy Rule 3020(e), the

fourteen (14) day period provided by such rule is hereby waived in its entirety.


Dated: New York, New York

     April ___, 2019


               _____
               HONORABLE JAMES L. GARRITY JR.
               UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate**

See Docket No. 685

**EXHIBIT B**

**Form of Notice of Effective Date**

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Lisa Laukitis
Christine A. Okike
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

– and –

Ron E. Meisler (admitted *pro hac vice*)
Christopher M. Dressel (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
155 North Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Neil M. Berger
Kyle J. Ortiz
One Penn Plaza
Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Fax: (212) 967-4258

*Counsel to Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **SYNERGY PHARMACEUTICALS INC.,** *et al.*, | **Case No. 18-14010 (JLG)** |
| Debtors.[1] | **Jointly Administered** |
|  | **Related Docket No. [•]** |

**NOTICE OF (I) ENTRY OF FINDINGS OF FACT, CONCLUSIONS OF LAW AND
ORDER CONFIRMING FOURTH AMENDED JOINT PLAN OF
REORGANIZATION OF SYNERGY PHARMACEUTICALS INC. AND ITS
DEBTOR AFFILIATE AND (II) OCCURRENCE OF EFFECTIVE DATE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Synergy Pharmaceuticals Inc. (5269); Synergy Advanced Pharmaceuticals, Inc. (4596). The address of the Debtors' corporate headquarters is 620 Lee Road, Chesterbrook, Pennsylvania 19087.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    **Plan Confirmation.** On [Month] [•], 2019, this Court entered an order (the "**Confirmation Order**") confirming the Fourth Amended Joint Plan of Reorganization of Synergy Pharmaceuticals Inc. and Its Debtor Affiliate (the "**Plan**") [Docket No. [•]].[2]

2.    **Copies of Plan and Confirmation Order.** The Confirmation Order included the Plan as Exhibit A. The Confirmation Order, the Plan, and the other documents filed in these cases, are available free of charge at https://cases.primeclerk.com/Synergy/Home-DocketInfo or for a nominal fee at https://ecf.nysb.uscourts.gov/ (with use of a PACER account).

3.    **Effective Date.** On [Month] [•], 2019, the Effective Date of the Plan occurred. All conditions precedent to the Effective Date set forth in Section 10.01 of the Plan have been satisfied or waived.

4.    **Professional Claims.**

    a.    *Final Fee Applications.* All final requests for payment of Professional Claims must be filed no later than 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

    b.    *Post-Effective Date Retention.* Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate, and the Plan Administrator shall be permitted to employ and pay professionals in its discretion.

5.    **Administrative Claims.** Except as otherwise provided in the Plan and as set forth in Section 2.02 and Section 2.03 of the Plan, all requests for payment of an Administrative Claim must be filed, in substantially the form of the Administrative Claim Request Form contained in the Plan Supplement, with the Claims and Solicitation Agent and served on counsel for the Liquidating Debtor, the Plan Administrator and the Litigation Trustee, no later than the Administrative Claim Bar Date, which shall be 30 days after the Effective Date. Any request for payment of an Administrative Claim pursuant to Section 2.01 of the Plan that is not timely filed and served shall be Disallowed automatically without the need for any objection from the Liquidating Debtor, the Plan Administrator or the Litigation Trustee. The Plan Administrator (and the Litigation Trustee, as applicable, in accordance with Section 5.11(b) of the Plan) may settle any Administrative Claim without further Bankruptcy Court approval. In the event that the Liquidating Debtor or the Plan Administrator (and the Litigation Trustee, as applicable, in accordance with Section 5.11(b) of the Plan) object to an Administrative Claim and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

---

[2]    Capitalized terms used but not defined herein have the meanings assigned to them in the Confirmation Order or, if not used therein, in the Plan.

6.      **Claims Objection Deadline.** "**Claims Objection Deadline**" means the later of (a) (i) as to Rejection Damages Claims, the first Business Day that is at least 180 days after such Rejection Damages Claim is timely filed pursuant to Section 6.01(b) of the Plan; (ii) as to late-filed proofs of Claim, the first Business Day that is at least 60 days after a Final Order is entered deeming the late-filed Claim timely filed; and (iii) as to all other Claims the first Business Day that is at least one year after the Effective Date; or (b) such later date as may be established by the Bankruptcy Court by motion of the Litigation Trustee.

7.      **Executory Contracts and Unexpired Leases to Be Rejected.** Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected in accordance with, and subject to, sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (i) is listed on the Schedule of Assumed Executory Contracts contained in the Plan Supplement; (ii) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; (iv) is an Insurance Contract; or (v) is otherwise assumed pursuant to the terms in the Plan. The Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements in the Plan.

8.      **Executory Contracts to Be Assumed.** Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, each Executory Contract that is listed on the Schedule of Assumed Executory Contracts contained in the Plan Supplement, shall be deemed assumed, in accordance with, and subject to, sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving such assumptions, pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. To the extent any provision in any Executory Contract assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Liquidating Debtors' assumption of such Executory Contract, then such provision shall be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Each Executory Contract assumed pursuant to Article VI of the Plan will revest in and be fully enforceable by the Plan Administrator on behalf of the Liquidating Debtor, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

9.      **Rejection Damages Bar Date.** Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date, the effective date of rejection, or the date notice of such rejection is transmitted by the Debtors or the Plan

Administrator, as applicable, to the counterparty to such Executory Contract or Unexpired Lease. Any proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases that are not timely filed shall be Disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors or the Liquidating Debtors, without the need for any objection by the Litigation Trustee or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

10.     **Post-Effective Date Notice Pursuant to Bankruptcy Rule 2002.** After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all creditors and other parties in interest (except those listed in the Confirmation Order) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: New York, New York
       [Month] [•], 2019

                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                            */s/ DRAFT*_____
                            Lisa Laukitis
                            Christine A. Okike
                            Four Times Square
                            New York, New York 10036-6522
                            Telephone: (212) 735-3000
                            Fax: (212) 735-2000

                            – and –

                            Ron E. Meisler (admitted *pro hac vice*)
                            Christopher M. Dressel (admitted *pro hac vice*)
                            Jennifer Madden (admitted *pro hac vice*)
                            155 North Wacker Drive
                            Chicago, Illinois 60606-1720
                            Telephone: (312) 407-0700
                            Fax: (312) 407-0411

                            – and –

                            TOGUT, SEGAL & SEGAL LLP
                            Albert Togut
                            Neil M. Berger
                            Kyle J. Ortiz
                            One Penn Plaza
                            Suite 3335
                            New York, New York 10119
                            Telephone: (212) 594-5000
                            Fax: (212) 967-4258

                            *Co-Counsel to Debtors*
                            *and Debtors-in-Possession*